IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - x
                            :
In re:                      : Chapter 11
                            :
IDLEAIRE TECHNOLOGIES CORP.,: Case No. 08-10960 (KG)
                            :
        Debtor.             :
                            :
- - - - - - - - - - - - - - x

**LIMITED OBJECTION OF TRAVELCENTERS OF AMERICA LLC TO ASSUMPTION AND ASSIGNMENT OF LEASE PURSUANT TO DEBTOR'S MOTION FOR (I) AN ORDER (A) APPROVING SALE PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING THE EXPENSE REIMBURSEMENT, (C) SCHEDULING AN AUCTION AND HEARING TO APPROVE THE TRANSACTION AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (D) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND/OR ASSIGNMENT OF EXECUTORY CONTRACTS; AND (II) AN ORDER (A) APPROVING THE PROPOSED SALE, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) GRANTING CERTAIN RELATED RELIEF**

TravelCenters of America LLC ("TravelCenters"), by and through its undersigned counsel, hereby asserts this limited objection to the Motion for (I) An Order (A) Approving Sale Procedures in Connection with Sale of Substantially All of the Debtor's Assets, (B) Approving the Expense Reimbursement, (C) Scheduling an Auction and Hearing to Approve the Transaction and Approving the Form and Manner of Notice Thereof, and (D) Establishing

1

Procedures Relating to the Assumption and/or Assignment of Executory Contracts; and (II) an Order (A) Approving the Proposed Sale, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (C) Granting Certain Related Relief (the "Sale Motion"), which the debtor and debtor in possession in the above-captioned case ("IdleAire" or the "Debtor") filed with the Court on May 12, 2008 (Docket No. 12). In support thereof, TravelCenters respectfully states as follows:

**BACKGROUND**

1. Through its subsidiaries, Petro Stopping Centers, L.P. ("Petro") and TA Operating LLC ("TA", and together with Petro, the "Landlords"), TravelCenters operates a number of travel centers at which long-haul truckers stop for extended rest periods mandated by applicable federal and state laws and regulations.

2. The Landlords and the Debtor, as lessee, are parties to an unexpired lease of non-residential real property consisting of multiple premises located in

various states throughout the United States (the "Leased Premises").[1]

3. The Leased Premises are used by the Debtor to install, support and operate its proprietary units that provide heating, air conditioning, electrical power, entertainment and communication services to truck cabs (the "System").

4. The applicable lease agreement is an agreement dated November 16, 2007 (the "Amended Agreement") which, among other things (i) terminated a prior Lease and Installation Agreement dated April 7, 2004 between Petro and IdleAire (the "Petro Agreement") and (ii) amended a prior Lease and Installation Agreement dated August 20, 2004 between TA and IdleAire (the "TA Agreement") to, among other things, include all travel centers operated by Petro and previously covered under the Petro Agreement. The operative language governing the Debtor's obligations is accordingly found

---

[1] Certain of the travel center properties are owned in fee by TA and Petro. However, the majority of the travel center properties are leased by TA (by sublease from its affiliate, TA Leasing LLC) and Petro from subsidiaries of Hospitality Properties Trust, a Maryland real estate investment trust. Pursuant to the terms of these leases, TA and Petro are required to cause to be discharged any lien attaching to the leased premises.

3

in the Amended Agreement and the TA Agreement (together, the "Lease").

    5.   The terms of the Lease specifically provide that "[l]essee shall immediately cause to be removed any mechanics liens, or other restrictions on Landlord's title in the Travel Centers, resulting from the installation or existence of the System at the Travel Centers." Lease at ¶ 6(b). The failure to meet this obligation constitutes a default under the Lease for which non-defaulting parties to the Lease are entitled to recover all of their damages and losses arising out of such default. Lease at ¶ 18(a).

**THE CHAPTER 11 CASE**

    6.   On May 12, 2008 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.

    7.   The Debtor continues to manage and operate its business as a debtor and debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

    8.   On May 21, 2008, the Office of the United States Trustee (the "U.S. Trustee") appointed an

4

Official Committee of Unsecured Creditors (the "Committee") in these chapter 11 cases pursuant to Bankruptcy Code Section 1102.

9. On May 12, 2008, the Debtor filed the Sale Motion.

10. On May 28, 2008, the Court entered the Order (A) Approving Sale Procedures in Connection with Sale of Substantially All of the Debtor's Assets, (B) Approving the Expense Reimbursement, (C) Scheduling an Auction and Hearing to Approve the Transaction and Approving the Form and Manner of Notice Thereof, and (D) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts (Docket No. 107) (the "Bid Procedures Order").

11. On June 5, 2008, the Debtor filed the executed Asset Purchase Agreement by and between IdleAire Technologies Corporation as Seller and IdleAire Acquisition Company, Inc. as Buyer dated as of June 4, 2008 (Docket No. 128) (the "Asset Purchase Agreement").

12. Article 1.3(b) of the Asset Purchase Agreement provides that the buyer shall assume and pay, perform and discharge when due, "all liabilities and

obligations under the Assigned Contracts [including real estate leases] arising after the Closing Date and the cure costs for such Assigned Contracts as set forth on Schedule 7.4 [of the Asset Purchase Agreement]".

13. On or about June 23, 2008, the Landlords each received a copy of the Notice of Debtor's Intent to Assume and Assign Certain Unexpired Leases and Executory Contracts and Setting Forth the Cure Amounts (the "Cure Notice"). The Cure Notice provides that any objection to the proposed assumption and assignment of any Assumed and Assigned Contract must be filed and served before 4:00 p.m. on July 3, 2008 (the "Objection Deadline").

14. The leases to be assumed pursuant to the Sale Motion are set forth on Schedule 1.1 to the Cure Notice. Among the leases the Debtor proposes to assume are:

| Date | Landlord Name | Truck Stop Name/ Office Location | Cure Amount |
|---|---|---|---|
| 4/7/2004 | Petro Stopping Centers LP | Multiple | $0 |
| 8/20/2004 | TA Operating Corporation | Multiple | $119,600 |

6

Schedule 1.1 therefore includes both the Petro Agreement and the TA Agreement which were terminated and amended, respectively, by the Amended Agreement.

**LIMITED OBJECTION**

15. Bankruptcy Code section 365 imposes specific duties upon both debtor assignors and non-debtor assignees with respect to the assumption and assignment of unexpired leases under such section. Section 365(f) of the Bankruptcy Code prohibits a debtor's assignment of an unexpired lease unless the debtor first assumes the lease in accordance with the requirements of section 365. 11 U.S.C. § 365(f)(2)(A). Bankruptcy Code section 365(b)(1) in turn specifically provides that if there has been a default in an unexpired lease of the debtor, such debtor cannot assume the lease unless the debtor first (i) cures, or provides adequate assurance that it will promptly cure the default; (ii) compensates, or provides adequate assurance that it will promptly compensate, the non-debtor party to the lease for any actual pecuniary loss resulting from the default; and (iii) provides adequate assurance of future performance under the lease. See 11

U.S.C. § 365(b)(1); see also In re Rickel Home Centers, Inc., 209 F.3d 291, 298 (3d Cir. 2000); In re Crown Books Corp., 269 B.R. 12, 15 (Bankr. D. Del. 2001).

16. Bankruptcy Code section 365(f) further provides that a debtor may not assign a lease unless adequate assurance of future performance under the lease by the proposed assignee is provided, regardless of whether there has been a default under the lease. 11 U.S.C. § 365(f)(2). The requirement of adequate assurance of future performance by an assignee has been held to afford "'needed protection to the non-debtor party because the assignment relieves the trustee and the bankruptcy estate from liability for breaches arising after the assignment.'" In re Fleming Cos., Inc., 499 F.3d 300, 305 (3d Cir. 2007) (quoting Cincola v. Scharffenberger, 248 F.3d 110, 120 (3d Cir. 2001)).

17. The Landlords do not object to the proposed cure amounts of $0 with respect to the Petro Agreement or $119,600 with respect to the TA Agreement (together, the "Proposed Cure Amount"), as set forth in Schedule 1.1 to the Cure Notice. However, as part of its cure obligations under Bankruptcy Code section 365(b)

8

and (f), the Debtor must be obligated to pay any additional amounts that may arise on account of mechanics liens of which the Landlords may not yet be aware and/or which may be filed after the Objection Deadline and prior to the closing date of the sale. Furthermore, under Bankruptcy Code section 365(f), the Landlords are entitled to adequate assurance of the assignee buyer's future performance under the Lease with respect to the lessee's obligation to remove any mechanics liens that may be filed after the sale closing date.

18. The mechanics lien laws of many states allow the deemed creation and/or perfection of mechanics liens by public recording without requiring any other notice to the landlord of the existence of such liens. See, e.g., Va. Code Ann. § 43-4 (providing that recording of memorandum of lien constitutes sufficient notice of mechanics lien under Virginia law). Thus, the Landlords may not have received notice of all outstanding mechanics liens that may have been filed against one or more of the Leased Premises.

19. Moreover, in some states a lien that is recorded or otherwise validly perfected subsequent to the completion of work may "relate back" to a time prior to the completion of the work. See, e.g., In re Cook, 384 B.R. 282, 288 (Bankr. N.D. Ala. 2008) (examining mechanics liens under Alabama law, which allows contractors to acquire an inchoate lien against property prior to perfection, which lien upon subsequent perfection relates back to the time materials were delivered or work was performed). As a result, one or more of the Leased Premises may be encumbered by inchoate liens that may be subsequently perfected after the sale closing date and deemed to relate back to the pre-closing period despite the fact that such liens will not be recorded until after the closing date. The Sale Order should accordingly provide for the proper allocation between the Debtor and the buyer of additional cure amounts with respect to liens that may be filed after the closing date but which may relate back to the pre-closing period.

20. The Landlords have not yet been able to determine whether any such additional mechanics liens or

threatened mechanics liens exist or have been filed, but assert that the Debtor is obligated to cure any such liens prior to assumption and assignment of the Lease. The Landlords accordingly hereby assert their right under Bankruptcy Code section 365(b) to enforce, as part of the cure amount, the lessee's obligation to remove mechanics liens under paragraph 6(b) of the Lease in the event that such liens exist or are filed between the Objection Date and the sale closing date, for which the Landlords have not received notice or are otherwise not currently aware.

21. Finally, with respect to any liens filed after the sale closing date that relate to any work begun or being performed pre-closing, the Landlords hereby submit that the cure and/or removal of such liens is either a pre-closing cure obligation of the Debtor pursuant to Bankruptcy Code section 365 or a post-closing obligation of the buyer under section 365(f) and Article 1.3(b) of the Asset Purchase Agreement, and that such obligations must be set forth explicitly in the Sale Order.

## RELIEF REQUESTED

22. The Landlords have no objection to the Proposed Cure Amount and to the assumption and assignment of the Lease, provided that:

A. The Debtor cures, or provides adequate assurance that it will promptly cure, the existing defaults under the Lease by paying the Proposed Cure Amount at the time the Lease is assumed in accordance with the Cure Notice and the Bid Procedures Order;

B. The Debtor reaffirms that the November 16, 2007 Amended Agreement terminating the Petro Agreement and amending the TA Agreement is being assumed and assigned pursuant to Schedule 1.1 of the Cure Notice and Schedule 7.4 of the Asset Purchase Agreement;

C. The Debtor or the buyer, as applicable, reaffirms the obligation under Bankruptcy Code section 365 and the Lease to cure or otherwise remove any mechanics liens that have been or may be filed through the sale closing date, including: (i) any outstanding liens of which the Landlords are not currently aware and (ii) any liens that may be filed prior to closing for which the Landlords may receive notice or otherwise

become aware of after the Objection Date and/or after closing;

D. The Debtor or the buyer reaffirms the obligation under Bankruptcy Code section 365 and the Lease to cure or otherwise remove any mechanics liens that may be filed after the closing date that relate to any work initiated by the Debtor prior to closing;

E. The Debtor and/or the buyer, as applicable, provide the Landlords with adequate assurance of future performance under the Lease pursuant to Bankruptcy Code sections 365(b)(1)(C) and (f)(2); and

F. The Debtor fully complies with all other applicable provisions of the Bankruptcy Code with respect to the Lease, including Bankruptcy Code section 365.

23. The Landlords reserve their right to amend, supplement or modify the objections set forth above for any reason prior to the Sale Hearing.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
July 2, 2008

*/s/ Anthony W. Clark*

Anthony W. Clark (I.D. No. 2051)
Christopher S. Chow (I.D. No. 4172)
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Counsel for TravelCenters of America LLC