13.17.	Counterparts.	This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same agreement.

## ARTICLE 14
### DEFINITIONS

14.1.	Certain Terms Defined.	In addition to such terms as are previously defined in this Agreement, the following terms as used in this Agreement shall have the following meanings:

"*Affiliate*" means, with respect to any Person, any other Person directly or indirectly controlling, controlled by or under direct or indirect common control with such first Person where "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management policies of a Person, through the ownership of voting securities, by contract, as trustee, executor or otherwise.

"*Alternative Transaction*" means (i) the acquisition of any shares of capital stock or any other voting securities or debt securities of Seller or any interests therein, (ii) the acquisition of all or a material portion of the assets and properties of Seller or interests therein, (iii) the merger, consolidation or combination of any person with Seller, (iv) the financing or refinancing of Seller, including, without limitation, any debtor-in-possession financing, (v) the liquidation, dissolution or reorganization of Seller or (vi) the acquisition, directly or indirectly, by Seller or its Affiliates of capital stock or assets and properties of any other Person or Persons.

"*Auction*" means the auction conducted by Seller pursuant to the Bidding Procedures Order.

"*Bankruptcy Code*" means Title 11 of the United States Code.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Bankruptcy Case originally administered in the United States Bankruptcy Court of the District of Delaware.

"*Business Day*" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by Law or other Governmental action to close.

"*Business Records*" means all books, files and records to the extent they apply exclusively to the Acquired Assets, including customer lists, historical customer files, reports, plans, data, accounting and tax records, test results, product specifications, drawings, diagrams, training manuals, engineering data, safety and Environmental Reports and documents, maintenance schedules, operating and production records, inventory records, business plans, and marketing and all other studies, documents and records but excluding any Retained Books and Records.

"*Clayton Act*" means Title 15 of the United States Code §§ 12-27 and Title 29 of the United States Code §§ 52-53, as amended.

"*Code*" means the Internal Revenue Code of 1986, as amended.

"*Consent*" means any consent, approval, authorization, qualification, waiver or notification of a Government or third party.

"*Contract*" means any written or oral contract, agreement, license, sublicense, lease, sublease, mortgage, instruments, guaranties, commitment, understanding, undertaking or other similar arrangement, whether express or implied.

"*Emissions Credits*" means transferable environmental attributes and other certificates including renewable energy certificates, certified emission reductions, verified emission reductions and mobile source emission reduction credits.

"*Environmental Laws*" means all currently existing and future federal, state, provincial, municipal, local and foreign statutes, ordinances, rules, Orders, regulations, remediation standards, and other provisions having the force of law for protection of the environment, including the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. Sec. 9601 *et seq.*, as amended, the federal Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 *et seq.*, as amended, and related state statutes.

"*Environmental Reports*" means any environmental sampling or report performed specifically to test compliance with any Environmental Laws, and any and all Phase I or II environmental assessments, in each case which Seller has received from an un-Affiliated third party within the last three (3) years with respect to the Real Property; provided, Environmental Reports shall not include any safety, health and environmental audit reports, or internal investigation reports, prepared under the direction of Seller's legal department and privileged under the attorney-client privilege, attorney work-product privilege, or state or federal environmental self-auditing privilege or policy.

"*ERISA*" means the Employee Retirement Income Security Act of 1974, as amended.

"*Federal Trade Commission Act*" means the Federal Trade Commission Act (15 U.S.C. § 41 *et seq.*), as amended, and the rules and regulations promulgated thereunder.

"*Final Order*" means any Order of a Government, the Bankruptcy Court or other court of competent jurisdiction after all opportunities for rehearing, reargument, petition for certiorari and appeal are exhausted or expired and any requests for rehearing have been denied, and that has not been revised, stayed, enjoined, set aside, annulled, reversed, remanded, modified or superseded, with respect to which any required waiting period has expired, and to which all conditions to effectiveness prescribed therein or otherwise by law or Order have been satisfied; provided, however, that no Order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such Order. In the case of the Sale Order, a Final Order shall also consist of an Order as to which an appeal, notice of appeal or motion for rehearing or new trial has been filed but as to which Buyer, in its sole discretion, elects to proceed with Closing.

"*Government*" means any agency, division, subdivision, audit group, procuring office or governmental or regulatory authority in any event or any adjudicatory body thereof, of the United States, any state thereof or any foreign government.

"*Hazardous Materials*" means and includes any hazardous or toxic substance or waste or any contaminant or pollutant regulated under Environmental Laws, including, but not limited to, "hazardous substances" as currently defined by the Federal Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended, "hazardous wastes" as currently defined by the Resource Conservation and Recovery Act, as amended, natural gas petroleum products or byproducts and crude oil.

"*HSR Act*" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (15 U.S.C. §§ 15c-15h, 18a), as amended.

"*Improvements*" means the buildings, improvements and structures now existing on the Real Property or demised under the Real Estate Leases, but only to the extent such buildings, improvements and structures constitute fixtures under applicable law.

"*Indenture*" means the Indenture dated as of December 30, 2005 by and between certain shareholders of Buyer, certain other lenders and Wells Fargo National Association.

"*Indenture Trustee*" means Wells Fargo National Association as appointed pursuant to the Indenture.

"*Knowledge of Seller*", "*Seller's Knowledge*" or any other similar knowledge qualification means the actual knowledge after due inquiry of Stephen Gray, Paul W. Boyd, Lynn R. Youngs, and John Calabrese.

"*Lien*" means any mortgage, pledge, charge, security interest, encumbrance, lien (statutory or other) or conditional sale agreement.

"*Material Adverse Effect*" means a state of facts, event, change or effect on the physical condition of the Acquired Assets, or the enforceability of any Assigned Contract, that results in a material adverse effect on the combined operations and value of the Acquired Assets.

"*Permitted Liens*" means: (i) all Liens in existence on the date of this Agreement set forth on Schedule 14.1 of the Disclosure Schedules; (ii) Liens for Taxes, assessments and Government or other similar charges that are not yet due and payable or that, although due and payable, are being contested in good faith; (iii) Liens related to obligations which are included in the Assumed Liabilities; (iv) Liens that will attach to the proceeds of this sale under this Agreement pursuant to section 363 of the Bankruptcy Code; (v) mechanics', materialmen's, warehouseman's and similar Liens; (vi) such covenants, conditions, restrictions, easements, encroachments or encumbrances, or any other state of facts, that do not materially interfere with the present occupancy of the Real Property or the use of such Real Property as it has been used by Seller prior to the Closing Date; (vi) zoning, building codes and other land use laws regulating the use of occupancy of Real Property or the activities conducted thereon which are imposed by any governmental authority having jurisdiction over Real Property; (vii) a lessor's interest in, and any mortgage, pledge, security interest, encumbrance, lien (statutory or other) or

conditional sale agreement on or affecting a lessor's interest in, property underlying any of the Real Estate Leases; (viii) restrictions and regulations imposed by any Government authority or any local, state, regional, national or international reliability council, or any independent system operator or regional transmission organization with jurisdiction over Seller or the Business; and (ix) exceptions, restrictions, easements, charges, rights-of-way and monetary and non-monetary encumbrances which are set forth in any license.

"*Person*" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or Government.

"*Prepetition Loan Agreement*" means that certain Credit Agreement, dated as of April 24, 2008, by and among Seller, the lenders from time to time party thereto, and Wells Fargo Bank, National Association, as Administrative Agent and Collateral Agent, pursuant to which, among other things, such lenders agreed to loan to Seller an amount up to $25,000,000.

"*Regulatory Approvals*" means state public utility commission and/or notifications of other related Government authorities with respect to the consummation of the transactions contemplated hereby.

"*Related Person*" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers, Affiliates or representatives of any such Person.

"*Retained Books and Records*" means (i) all corporate seals, minute books, charter documents, corporate stock record books, original tax and financial records and such other files, books and records to the extent they relate to any of the Excluded Assets or Excluded Liabilities or the organization, existence, capitalization or debt financing of Seller or of any Affiliate of Seller, (ii) all books, files and records that would otherwise constitute a Business Record but for the fact that disclosure of books, files or records could (w) violate any legal constraints or obligations regarding the confidentiality thereof, (x) waive any attorney client, work product or like privilege, (y) disclose information about Seller or any of its Affiliates that is unrelated to the Acquired Assets or (z) disclose information about Seller or any of its Affiliates pertaining to energy or project evaluation, energy or natural gas price curves or projections or other economic predictive models, or (iii) all books and records prepared in connection with or relating in any way to the transactions contemplated by this Agreement, including bids received from other parties and analyses relating in any way to the Acquired Assets and the Assumed Liabilities.

"*Sherman Act*" means title 15 of the United States Code §§ 1-7, as amended.

"*Tax Return*" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any Taxes (including estimated Taxes).

"*Taxes*" means all taxes, however denominated, including any interest, penalties or additions to tax that may become payable in respect thereof, imposed by any Government, which taxes shall include all income taxes, Transaction Taxes, payroll and employee withholding,

unemployment insurance, social security (or similar), sales and use, excise, franchise, gross receipts, occupation, real and personal property, stamp, transfer, workmen's compensation, customs duties, registration, documentary, value added, alternative or add-on minimum, estimated, environmental (including taxes under section 59A of the Code) and other obligations of the same or a similar nature, whether arising before, on or after the Closing Date.

14.2.    All Terms Cross-Referenced.  Each of the following terms is defined in the section set forth opposite such term:

| Term | Section |
|------|---------|
| Accepting Employee | 7.6(a) |
| Accounts Payable | 1.3(a) |
| Accounts Receivable | 1.1(k) |
| Action | 1.4(k) |
| Acquired Assets | 1.1 |
| Adjustment Date | 10.2 |
| Affiliate | 14.1 |
| Agreement | *Preamble* |
| Allocation Schedule | 10.5 |
| Alternative Transaction | 14.1 |
| Antitrust Approval | 9.2 |
| Antitrust Law | 9.2 |
| Assigned Contracts | 1.1(d) |
| Assumed Liabilities | 1.3 |
| Auction | 14.1 |
| Bankruptcy Case | *Background Information* |
| Bankruptcy Code | 14.1 |
| Bankruptcy Court | 14.1 |
| Benefits | 7.6(b) |
| Bidding Procedures | 8.2 |
| Bidding Procedures Order | 8.2 |
| Business | *Background Information* |
| Business Day | 14.1 |
| Business Records | 14.1 |
| Buyer | *Preamble* |
| Buyer Group | 13.5 |
| Claim Over | 13.5 |
| Claims | 1.1(l) |
| Clayton Act | 14.1 |
| Closing | 3.1 |
| Closing Date | 3.1 |
| Code | 14.1 |
| Confidentiality Agreement | 6.4 |
| Consent | 14.1 |
| Contract | 14.1 |
| DIP Facility | *Background Information* |
| Emissions Credits | 14.1 |
| Employee Benefits Plans | 4.11 |
| Entitled Real Property | 1.1(b) |
| Environmental Laws | 14.1 |
| Environmental Reports | 14.1 |
| Equipment | 1.1(c) |

ERISA ................................................................................................................... 14.1
Excluded Assets ..................................................................................................... 1.2
Excluded Liabilities ............................................................................................... 1.4
Expense Reimbursement .............................................................................. 12.5(c)(i)
Federal Trade Commission Act ............................................................................ 14.1
Final Order ............................................................................................................ 14.1
Government ........................................................................................................... 14.1
Hazardous Materials ............................................................................................. 14.1
HSR Act ................................................................................................................ 14.1
Improvements ........................................................................................................ 14.1
Indenture ............................................................................................................... 14.1
Indenture Trustee .................................................................................................. 14.1
Inventory ............................................................................................................ 1.1(e)
Intellectual Property .......................................................................................... 1.1(f)
Knowledge of Seller ............................................................................................. 14.1
Law ......................................................................................................................... 4.3
Leased Real Property ........................................................................................ 1.1(a)
Lender ...................................................................................... Background Information
Lien ....................................................................................................................... 14.1
Material Adverse Effect ........................................................................................ 14.1
Material Contracts ............................................................................................. 4.7(a)
Non-Recourse Person ........................................................................................... 13.5
Order ...................................................................................................................... 4.3
Organizational Documents .................................................................................... 4.3
Permits ............................................................................................................... 1.1(g)
Permitted Liens ..................................................................................................... 14.1
Person .................................................................................................................... 14.1
Petition Date ............................................................................ Background Information
Purchase Price ........................................................................................................ 2.1
Real Estate Leases ............................................................................................ 1.1(a)
Real Property ..................................................................................................... 1.1(b)
Regulatory Approvals ........................................................................................... 14.1
Related Person ...................................................................................................... 14.1
Retained Books and Records ................................................................................ 14.1
Sale Order .............................................................................................................. 8.3
Secured Notes ........................................................................................................ 2.1
Seller ............................................................................................................. Preamble
Seller's Knowledge ............................................................................................... 14.1
Sherman Act .......................................................................................................... 14.1
Straddle Period ...................................................................................................... 10.2
Tax Return ............................................................................................................. 14.1
Taxes ..................................................................................................................... 14.1
Termination Date ....................................................................................... 12.2(a)(iii)
Termination Order ....................................................................................... 12.2(a)(v)
Third Person .......................................................................................................... 13.5
Transaction Documents .......................................................................................... 4.2

Transaction Taxes ................................................................................................................. 10.1
WARN Act........................................................................................................................1.4(m)

*(Signatures are on the following page.)*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

IDLEAIRE TECHNOLOGIES CORPORATION

By:_____
Name: _____
Title: _____

IDLEAIRE ACQUISITION COMPANY, INC.

By:_____
Name: NICHOLAS J. SWENSON
Title: AUTHORIZED SIGNATORY

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

IDLEAIRE TECHNOLOGIES CORPORATION

By: James H. Price
Name: James H. Price
Title: Sr. Vice Pres. and General Counsel

IDLEAIRE ACQUISITION COMPANY, INC.

By: _____
Name: _____
Title: _____

# EXHIBIT A

## FORM OF BILL OF SALE

**See Attached**

## EXHIBIT A

## BILL OF SALE

This Bill of Sale is dated [_____], 2008 and made by IdleAire Technologies Corporation, a Delaware corporation (*"Seller"*) in favor of IdleAire Acquisition Company, Inc., a Delaware Corporation (*"Buyer"*).

Seller is a debtor in possession in chapter 11 proceedings before the United States Bankruptcy Court for the District of Delaware.

Seller is executing this Bill of Sale pursuant to Section 3.2(a)(i) of the Asset Purchase Agreement dated June [__], 2008 (the *"Purchase Agreement"*) by and between Seller and Buyer. Except for terms specifically defined in this Bill of Sale, all capitalized terms used in herein shall have the same meanings as such terms have when utilized in the Purchase Agreement.

For good and valuable consideration, the receipt and sufficiency of which Seller hereby expressly acknowledges, Seller hereby sells, transfers, assigns and delivers all of its right, title and interest in and to the Acquired Assets.

Notwithstanding anything to the contrary herein, Seller is executing and delivering this Bill of Sale in accordance with and subject to all of the terms and provisions of the Agreement.

*[Signature Page Follows]*

1

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed as of the date first written above.

**SELLER:**

IDLEAIRE TECHNOLOGIES CORPORATION

By: _____
Name: _____
Title: _____

**EXHIBIT B**

**FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT**

**See Attached**

**EXHIBIT B**

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

       This Assignment and Assumption Agreement (this *"Assignment Agreement"*) is entered into as of [        ], 2008, by IdleAire Acquisition Company, Inc., a Delaware Corporation (*"Buyer"*) and IdleAire Technologies Corporation, a Delaware corporation (*"Seller"*).

Buyer and Seller acknowledge as follows:

       A.     Seller and Buyer have heretofore entered into that certain Asset Purchase Agreement dated as of June [  ], 2008 (the *"Purchase Agreement"*). Except for terms specifically defined herein, the capitalized terms used in this Assignment Agreement shall have the same meanings as capitalized terms used in the Purchase Agreement.

       B.     Concurrently with the execution and delivery of this Assignment Agreement, Buyer and Seller are consummating the transactions contemplated by the Purchase Agreement.

       **NOW, THEREFORE,** for good and valuable consideration, the receipt and adequacy of which Buyer hereby acknowledges, Buyer and Seller hereby agree as follows:

       1. **Assignment**. Effective as of the Closing Date, Seller hereby assigns, sells, transfers and sets over (collectively, the *"Assignment"*) to Buyer all of its legal, beneficial and other right, title, benefit, privileges and interest in and to each of the Assigned Contracts and Assumed Liabilities, in accordance with the terms and conditions of the Asset Purchase Agreement.

       2. **Assumption**. Effective as of the Closing Date, Buyer hereby accepts the Assignment, and assumes, accepts and agrees to observe, pay and otherwise discharge when due each of the Assigned Contracts and Assumed Liabilities.

       3. **Amendments**. This Assignment Agreement may only be amended by a writing signed by both Buyer and Seller.

       4. **Delivery Pursuant to Purchase Agreement**. Notwithstanding anything to the contrary herein, Buyer and Seller are executing and delivering this Assignment Agreement in accordance with and subject to all of the terms and provisions of the Purchase Agreement.

       5. **Governing Law.** This Assignment shall be governed by and construed and enforced in accordance with the laws of New York, without giving effect to the conflicts of laws provisions thereof.

       6. **Counterparts**. This Assignment may be executed in separate counterparts, each of which shall be deemed to be an original, but both of which, taken together, shall be deemed one original document.

*[Signature Page Follows]*

**IN WITNESS WHEREOF,** Buyer and Seller have executed this Assignment and Assumption Agreement as of the day and year first set forth above.

**SELLER:**

IDLEAIRE TECHNOLOGIES CORPORATION

By: _____

Name: _____

Title: _____

**BUYER:**

IDLEAIRE ACQUISITION COMPANY, INC.

By: _____

Name: _____

Title: _____

**EXHIBIT C**

**FORM OF NON-FEE PROPERTY ASSIGNMENT AND CONVEYANCE AGREEMENT**

**See Attached**

## EXHIBIT C

## ASSIGNMENT AND ASSUMPTION OF REAL PROPERTY LEASE

This Assignment and Assumption of Real Property Lease (this *"Assignment"*) made and entered into as of [_____], 2008 by and between IdleAire Technologies Corporation (*"Assignor"*) and IdleAire Acquisition Corp., Inc., a Delaware Corporation (*"Assignee"*).

Assignor and Assignee acknowledge that:

A.      The Assignor is a debtor in possession in chapter 11 proceedings before the United States Bankruptcy Court for the District of Delaware.

B.      The Assignor (the *"Tenant"*) is the tenant of certain real property premises listed on Schedule A (the *"Facilities"*) under those certain leases listed on Schedule A (the *"Leases"*) by and between Tenant and each of the parties listed as landlord on the Leases.

C.      Assignor, as Seller, and Assignee, as Buyer, have heretofore entered into that certain Asset Purchase Agreement dated June [   ], 2008 (the *"Purchase Agreement"*). Except for terms specifically defined herein, the capitalized terms used in this Assignment shall have the same meanings as capitalized terms used in the Purchase Agreement.

           D.      Concurrently with the mutual execution and delivery of this Assignment, Assignor and Assignee are consummating the transactions contemplated by the Purchase Agreement. Assignor and Assignee are executing and delivering this Assignment in satisfaction of their respective obligations pursuant to Sections 3.2(a)(iv) and 3.3(c) of the Purchase Agreement.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and adequacy of which Assignor and Assignee hereby acknowledge, and intending to be legally bound hereby, Assignor and Assignee hereby agree as follows:

       1.      **Assignment.**  Assignor hereby sells, assigns and transfers to Assignee, all interest of Assignors, as tenant, in and to the Facilities and the Leases, which are listed on Schedule A.

       2.      **Assumption.**  Assignee hereby accepts the foregoing assignment of such Leases, and does hereby assume the duties and obligations of tenant under each Lease, thereunder accruing from and after the Closing Date, and does hereby agree to be bound by and to perform or cause to be performed, each and all of the terms, conditions, covenants and provisions to be done, kept and performed under each such Lease accruing from and after the Closing Date, to the same extent as if Assignee had been an original party thereto.

       3.      **Amendments.**  This Assignment may only be amended by a writing signed by both Assignor and Assignee.

       4.      **Delivery Pursuant to Purchase Agreement.**  Notwithstanding anything to the contrary herein, Assignor and Assignee are executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Purchase Agreement.

5.      **Governing Law.**  This Assignment shall be governed by and construed and enforced in accordance with the laws of New York, without giving effect to the conflicts of laws provisions thereof.

6.      **Counterparts.**  This Assignment may be executed in separate counterparts, each of which shall be deemed to be an original, but both of which, taken together, shall be deemed one original document.

*[Signature Page Follows]*

**IN WITNESS WHEREOF,** the parties have executed this Assignment as of the date first written above.

                                              **ASSIGNOR:**

                                              IDLEAIRE TECHNOLOGIES CORPORATION

                                              By: _____
                                              Name: _____
                                              Title: _____

                                              **ASSIGNEE:**

                                              IDLEAIRE ACQUISITION COMPANY, INC.

                                              By: _____
                                              Name: _____
                                              Title: _____

# EXHIBIT D

## FORM OF SELLER'S OFFICER'S CERTIFICATE

### See Attached

**EXHIBIT D**

**IDLEAIRE TECHNOLOGIES CORPORATION**

<u>**SECRETARY'S CERTIFICATE**</u>

The undersigned hereby certifies that he is the duly elected, qualified and acting Secretary of IdleAire Technologies Corporation, a Delaware corporation (the "**Company**"), and that as such he is authorized to execute and deliver this certificate in the name and on behalf of the Company in connection with the Asset Purchase Agreement, dated as of June [__], 2008, by and between the Company and IdleAire Acquisition Company, Inc. (the "**Purchase Agreement**"), and further certifies in his official capacity, in the name and on behalf of the Company, the items set forth below. Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Purchase Agreement.

1.      Attached hereto as <u>Exhibit A</u> is a true, correct and complete copy of the resolutions duly adopted by the Board of Directors of the Company on [_____], 2008, approving and ratifying the transactions contemplated by the Purchase Agreement. Such resolutions have not in any way been amended, modified, revoked or rescinded, have been in full force and effect since their adoption to and including the date hereof and are now in full force and effect.

2.      Attached hereto as <u>Exhibit B</u> is a true, correct and complete copy of the Amended and Restated Certificate of Incorporation of the Company, together with any and all amendments thereto currently in effect, and no action has been taken to further amend, modify or repeal such Restated Articles of Incorporation, the same being in full force and effect in the attached form as of the date hereof.

3.      Attached hereto as <u>Exhibit C</u> is a true, correct and complete copy of the Bylaws of the Company and any and all amendments thereto currently in effect, and no action has been taken to further amend, modify or repeal such Bylaws, the same being in full force and effect in the attached form as of the date hereof.

4.      Attached hereto as <u>Exhibit D</u> is a Certificate from the Secretary of the State of Delaware certifying that as of [_____], 2008, the Company is duly incorporated and in good standing under the laws of the State of Delaware.

5.    Each person listed below has been duly elected or appointed to the positions indicated opposite his name and is duly authorized to sign the Purchase Agreement and each of the other documents contemplated thereby on behalf of the Company, and the signature appearing opposite such person's name below is such person's genuine signature.

| **Name** | **Position** | **Signature** |
|---|---|---|
| Michael C. Crabtree | President and Chief Executive Officer | |
| Paul W. Boyd | Chief Financial Officer and Treasurer | |
| Tom Badgett | Secretary | |

IN WITNESS WHEREOF, the undersigned has hereunto set his hand as of this ___ day of _____, 2008.

By: _____
        Tom Badgett
        Secretary

I, Michael C. Crabtree, President and Chief Executive Officer of the Company, hereby certify that Tom Badgett is the duly elected, qualified and acting Secretary of the Company and that the signature set forth above is his true signature.

By: _____
        Michael C. Crabtree
        President and Chief Executive Officer

# EXHIBIT A

## Resolutions of the Board of Directors of the Company

**EXHIBIT B**

**Amended and Restated Certificate of Incorporation of the Company, as amended**

**EXHIBIT C**

**Bylaws**

**EXHIBIT D**

**Good Standing Certificate**

## EXHIBIT E

## FORM OF NON-FOREIGN STATUS CERTIFICATE

**See Attached**

## EXHIBIT E

## AFFIDAVIT OF NON-FOREIGN STATUS
## PURSUANT TO TREASURY REGULATION 1.1445-2(b)

Section 1445 of the Internal Revenue Code provides that a transferee (buyer) of a U.S. real property interest must withhold tax if the transferor (seller) is a foreign person. For U.S. tax purposes (including Section 1445), the owner of a disregarded entity (which has legal title to a U.S. real property interest under local law) will be the transferor of the property and not the disregarded entity. To inform the transferee (buyer) that withholding of tax is not required upon the disposition of a U.S. real property interest by IdleAire Technologies Corporation ("Transferor"), the undersigned hereby certifies the following on behalf of Transferor:

1. Transferor is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2. Transferor is not a disregarded entity as defined in Treasury Regulation Section 1.1445-2(b)(2)(iii);

3. Transferor's U.S. employer identifying number is [_____]; and

4. Transferor's office address is 410 N. Cedar Bluff Road, Suite 200, Knoxville, TN 37923.

Transferor understands that this certification may be disclosed to the Internal Revenue Service by the transferee and that any false statement I have made here could be punished by fine, imprisonment, or both.

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct and complete, and I further declare that I have authority to sign this document on behalf of Transferor.

IDLEAIRE TECHNOLOGIES CORPORATION

By: _____
Name: _____
Title: _____

# EXHIBIT F

# BIDDING PROCEDURES ORDER

## See Attached

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| IDLEAIRE TECHNOLOGIES CORP., | ) | Case No. 08- 10960 (KG) |
| | ) | |
| Debtor. | ) | **Related Docket No. 12** |

## ORDER (A) APPROVING SALE PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING THE EXPENSE REIMBURSEMENT, (C) SCHEDULING AN AUCTION AND HEARING TO APPROVE THE TRANSACTION AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (D) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

THIS MATTER is before the Court on the motion dated May 12, 2008 [Docket No. 12]

(the "Motion"),[1] of IdleAire Technologies Corporation (the "Debtor") for entry of an order (a)

approving sale procedures in connection with sale of substantially all of the Debtor's assets (the

"Bidding Procedures"), (b) approving the expense reimbursement, (c) scheduling an auction (the

"Auction") and hearing to approve the transaction and approving the form and manner of notice

thereof, and (d) establishing procedures relating to the assumption and assignment of executory

contracts. After due deliberation and having determined that the relief requested in the Motion is

in the best interests of the Debtor and its estate,

**THE COURT HEREBY FINDS THAT:**[2]

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning ascribed to them in either the Motion or that certain Term Sheet For the Acquisition of the Assets of IdleAire Technologies Corporation (the "Sale Term Sheet"), substantially in the form attached hereto as Exhibit D.

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  The statutory predicates for the relief requested herein are sections 105(a), 363(b) and (f), 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002(a)(2), 6003, 6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9007, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C.  Notice of the Motion, having been given to (i) lead counsel and local counsel for the DIP Lenders and the Majority Secured Notcholder Group; (ii) counsel for the DIP Agent; (iii) counsel for the Indenture Trustee; (iv) the United States Trustee for the District of Delaware; (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service; (vii) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Assets; (viii) the United States Department of Justice; (ix) the United States Environmental Protection Agency and any applicable state environmental agency; (x) the counterparties to each of the Assumed and Assigned Contracts; (xi) all other parties known to Debtor who have or may have asserted liens against any of the Acquired Assets; (xii) the Debtor's twenty (20) largest unsecured creditors; (xiii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (xiv) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets, is sufficient in light of the circumstances and the nature of the relief requested in the Motion.

D.  The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sale process, including without limitation, (i) approval of the Bidding Procedures and, under the circumstances described herein and in the

Sale Term Sheet, the Expense Reimbursement; (ii) approval and authorization to serve the Sale Notice (defined below); and (iii) determination of final Cure Amounts (defined below).

     E.     The Expense Reimbursement to be paid under the circumstances described herein as well as in the Sale Term Sheet to the Proposed Purchaser is (i) an actual and necessary cost and expense of preserving the Debtor's estate, within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) commensurate to the real and substantial benefit conferred upon the Debtor's estate by the Proposed Purchaser, (iii) reasonable and appropriate, in light of the size and nature of the proposed sale transaction and comparable transactions, the commitments that have been made and the efforts that have been and will be expended by the Proposed Purchaser, and (iv) necessary to induce the Proposed Purchaser to continue to pursue the sale transaction and to continue to be bound by the Sale Term Sheet and the contemplated Asset Purchase Agreement.

     F.     The Proposed Purchaser has provided a material benefit to the Debtor and its creditors by increasing the likelihood that the best possible price given the circumstances for the Acquired Assets will be received. Accordingly, the Bidding Procedures are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtor's estate.

     G.     The Bidding Procedures and the Sale Term Sheet were negotiated in good faith by the Debtor and the Proposed Purchaser.

     H.     The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Asset Sale, the Sale Hearing and the Auction.

     **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.       The Bidding Procedures, substantially in the form attached hereto as Exhibit A, are hereby approved and fully incorporated into this Order. The Debtor is authorized to undertake any and all actions necessary or appropriate to implement the Bidding Procedures.

2.       All objections, if any, to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled except as otherwise set forth herein.

3.       The Expense Reimbursement, as set forth in the Sale Term Sheet and this Order, is hereby approved, subject to the filing of an executed Asset Purchase Agreement by no later than June 4, 2008. If the Proposed Purchaser becomes entitled to receive the Expense Reimbursement in accordance with the terms of the Sale Term Sheet, the Asset Purchase Agreement and this Order, then the Proposed Purchaser shall be, and hereby is, granted an allowed administrative claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code in the Debtor's chapter 11 case in an amount equal to the Expense Reimbursement; provided, however, that the total amount of the Expense Reimbursement shall not exceed $500,000.

4.       The Debtor is authorized and directed to pay such Expense Reimbursement in accordance with the terms and conditions of the Sale Term Sheet and this Order. Any such fees, costs and expenses covered by the Expense Reimbursement shall be paid out of the proceeds of any Alternative Transaction. The Proposed Purchaser shall provide the U.S. Trustee and the official committee of unsecured creditors appointed in this case (the "Committee") with a copy of all invoices relating to the Expense Reimbursement and the U.S. Trustee and the Committee shall have ten (10) calendar days to file and serve an objection with the Court (the "Fee Objection") limited to the issue of the reasonableness of the disputed fees and expenses,

provided, however, that the Debtor shall timely pay in accordance with this Order the undisputed fees and expenses of any invoice to which a Fee Objection has been timely filed.

5.     If a Fee Objection is filed or the ten-day objection period described in the immediately preceding paragraph has not expired, the Expense Reimbursement shall be held in escrow by the Debtor until the Fee Objection has been resolved (only with respect to any disputed amounts) or, as the case may be, the ten-day notice period has expired.

6.     No person or entity, other than the Proposed Purchaser, shall be entitled to any expense reimbursement, break-up fees, "topping," termination or other similar fee or payment.

7.     The Notice of Auction and Sale Hearing, substantially in the form attached hereto as Exhibit B (the "Sale Notice") (a) is hereby approved and (b) shall be served within two (2) business days of entry of this Order, upon each of the following parties: (i) lead counsel and local counsel for the DIP Lenders and the Majority Secured Noteholder Group; (ii) counsel for the DIP Agent; (iii) counsel for the Indenture Trustee; (iv) the United States Trustee for the District of Delaware; (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service; (vii) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Assets; (viii) the United States Department of Justice; (ix) the United States Environmental Protection Agency and any applicable state environmental agency; (x) the counterparties to each of the Assumed and Assigned Contracts; (xi) all other parties known to Debtor who have or may have asserted liens against any of the Acquired Assets; (xii) the Debtor's twenty (20) largest unsecured creditors; (xiii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (xiv) all other entities known to have expressed interest in a transaction with respect to all or part of the Acquired Assets; and (xv) counsel to the Committee.

8.     As further described in the Bidding Procedures, in the event that the Debtor timely receives one or more Qualifying Bids, the Debtor shall conduct the Auction on a date to be determined by the Debtor, in consultation with the Proposed Purchaser, no later than the date that is two (2) business days after the Bid Deadline (the "Auction Date"), unless such date is extended by the Required Lenders (as defined in the Interim DIP Financing Order) in their sole discretion. The Debtor shall conduct the Auction at the offices of Holland & Knight LLP, 195 Broadway, New York, New York 10007.

9.     Pursuant to Local Rule 6004-1(c)(ii), (a) each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Asset Sale; (b) the Auction shall be conducted openly and all creditors shall be permitted to attend; and (c) the Auction will be transcribed or videotaped.

10.     The notice to counterparties to the Assumed and Assigned Contracts, substantially in the form attached hereto as Exhibit C (the "Cure Notice") (a) is hereby approved and (b) shall be served upon each counterparty to the Assumed and Assigned Contracts by no later than twenty (20) days prior to the Sale Hearing.

11.     Except as may otherwise be agreed to by the parties to an Assumed and Assigned Contract (with the consent of the Prevailing Bidder), on the Effective Date, the Prevailing Bidder shall cure those defaults under the Assumed and Assigned Contracts that need to be cured in accordance with section 365(b) of the Bankruptcy Code by (a) payment of the undisputed Cure Amounts, and/or (b) reserving amounts with respect to the disputed Cure Amounts. In the event of a dispute regarding the Cure Amount, any payments required, following entry of a Final Order resolving such dispute, shall be made as soon as practicable thereafter. If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding

anything to the contrary in any Assumed Contract or other documents as of the date of the Cure Notice.

12.    Objections, if any, to the proposed assumption and assignment of the Assumed and Assigned Contracts, including, but not limited to, objections relating to the Cure Amount and/or adequate assurances of future performance, must (a) be in writing; (b) state with specificity the nature of such objection and the alleged Cure Amount (with appropriate documentation in support thereof); (c) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of this Court; and (d) be filed with this Court and served upon (so as to be **received** by) the following parties (collectively, the "Notice Parties") on or before the date that is five (5) business days before the Sale Hearing (the "Objection Deadline"): (i) IdleAire Technologies Corporation, 410 N. Cedar Bluff Road, Suite 200, Knoxville, TN 37923, Attn: Stephen Gray (stephen.gray@crgpartners.com); (ii) Holland & Knight LLP, 10 St. James Avenue, Boston, MA 02116, Attn: John J. Monaghan, Esq. (john.monaghan@hklaw.com), lead counsel to the Debtor; (iii) Sullivan Hazeltine Allinson LLC, 4 East 8th Street, Suite 400, Wilmington, DE 19801, Attn: William D. Sullivan, Esq. (bsullivan@sha-llc.com), local counsel to the Debtor; (iv) Akin Gump Strauss Hauer & Feld LLP, 590 Madison Avenue, New York, NY 10022, Attn: Michael S. Stamer, Esq. (mstamer@akingump.com) and Scott L. Alberino, Esq. (salberino@akingump.com), lead counsel to the DIP Lenders and the Majority Secured Noteholder Group; (v) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, DE 19801, Attn: Robert S. Brady, Esq. (rbrady@ycst.com) and M. Blake Cleary, Esq. (mbcleary@ycst.com), local counsel to the DIP Lenders and the Majority Secured Noteholder Group; (vi) Ropes & Gray LLP, 45 Rockefeller Plaza, New York, NY 10111, Attn: Mark Somerstein (mark.somerstein@ropesgray.com), counsel to the DIP Agent; (vii) Kelley

Drye & Warren LLP, 101 Park Avenue, New York, NY 10178, Attn: Jennifer Christian, Esq. (jchristian@kelleydrye.com), counsel to the Indenture Trustee; (viii) the Office of the United States Trustee, J. 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19081, Attn: David L. Buchbinder, Esq. (David.L.Buchbinder@usdoj.gov). and (ix) Saul Ewing LLP, 222 Delaware Avenue, Suite 1200, P.O. Box 1266, Wilmington, DE 19899, Attn: Mark Minuti, Esq. (mminuti@saul.com), counsel to the Committee.

13.     Notwithstanding the foregoing paragraph, in the event the Proposed Purchaser is not the Prevailing Bidder, then objections, if any, to the proposed assumption and assignment of the Assumed and Assigned Contracts that relate to adequate assurance may be filed at any time prior to the commencement of the Sale Hearing.

14.     Any party failing to timely file an objection to a Cure Amount set forth in the Motion or the proposed assumption and assignment of an Assumed and Assigned Contract shall be forever barred from objecting to such Cure Amount and from asserting any additional cure or other amounts against the Debtor, its estate, or the Proposed Purchaser with respect to its executory contract(s) or unexpired lease(s) and will be deemed to consent to the Asset Sale and the proposed assumption and assignment of its executory contract(s) or unexpired lease(s).

15.     Where a party to an Assumed and Assigned Contract files a timely objection asserting a higher cure amount than the Cure Amount, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid under section 365 of the Bankruptcy Code with respect to such objection will be determined at the Sale Hearing or such other date and time as may be fixed by this Court. All other objections to the proposed assumption and assignment of the Assumed and Assigned Contracts will be heard at the Sale Hearing.

16.     The Sale Hearing will be conducted no later than two (2) business days following the conclusion of the Auction, unless such date is extended by the Required Lenders in their sole discretion. The Debtor will seek the entry of an order of this Court at the Sale Hearing approving and authorizing the Asset Sale to the Proposed Purchaser or such other party who is the Prevailing Bidder, on terms and conditions consistent with the Sale Term Sheet and Asset Purchase Agreement, as may be amended and modified.

17.     Objections, if any, to the relief requested in the Motion as it relates to the Asset Sale must:  (a) be in writing and filed with this Court; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; and (c) be served upon, so as to be **received** by, the Notice Parties on or before Objection Deadline.

18.     The Proposed Purchaser is authorized to make one or more credit bids at the Auction equal to any and all of the claims of and outstanding obligations owed to the Proposed Purchaser or the Investors under the DIP Financing and the Prepetition Secured Indebtedness (as defined in the Interim Financing Order), pursuant to section 363(k) of the Bankruptcy Code.  The Proposed Purchaser may, upon written direction given by the Investors to the Indenture Trustee pursuant to section 6.05 of the Indenture, cause the Indenture Trustee to credit bid, to the full extent permitted under section 363(k) of the Bankruptcy Code on behalf of all holders of the Notes, all or a portion of the aggregate principal amount of the Notes (as such term is defined in the Crabtree Declaration).  Nothing contained in this Order shall prejudice any rights of the Committee or the U.S. Trustee to seek to limit the ability of the Proposed Purchaser or any other party in interest to credit bid based upon a challenge in respect of the Prepetition Secured Indebtedness made in accordance with the Interim DIP Financing Order.

19.     Notwithstanding anything contained in the Bidding Procedures or this Order, in the event that (a) the Prevailing Bidder is not the Proposed Purchaser and (b) any claims or liens with respect to the Prepetition Secured Indebtedness are subject to an action set forth in paragraph 12 of the Interim Financing Order, then the Pre-Petition Liens and the Replacement Liens (as such terms are defined in the Interim Financing Order) shall attach to the cash proceeds from the Acquired Assets and such cash proceeds shall be held in escrow by the Debtor pending further order of this Court, provided, however, that this paragraph 19 shall not constitute, be deemed or be construed as a waiver of any rights and defenses of any party relating to section 363(f) of the Bankruptcy Code.

20.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise or any Local Rules of this Court, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

22.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

23.     This Court shall retain jurisdiction to resolve any dispute relating to the interpretation of the terms and conditions of the Sale Term Sheet, the Asset Purchase Agreement and this Order. To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

DATED: May 28, 2008

_____
UNITED STATES BANKRUPTCY JUDGE

## AMENDMENT TO ASSET PURCHASE AGREEMENT

This Amendment to Asset Purchase Agreement, dated as of July 10, 2008 (this "Amendment"), by and between IdleAire Acquisition Company, Inc., a Delaware corporation ("*Buyer*") and IdleAire Technologies Corporation, a Delaware corporation ("*Seller,* and together with Buyer, the "*Subject Parties*").

**WHEREAS**, the Subject Parties are parties to that certain Asset Purchase Agreement, dated as of June 4, 2008 (as heretofore amended or otherwise modified, the "*Agreement*").

**WHEREAS**, the Subject Parties have agreed to enter into this Amendment to amend and modify certain provisions of the Agreement.

**NOW, THEREFORE**, in consideration of the premises and the mutual benefits to be derived from this Amendment and the representations, warranties, covenants and agreements contained herein, the parties hereto hereby agree to amend the Agreement pursuant to Section 13.9 thereof as follows:

## ARTICLE 1
## DEFINITIONS

### 1.1    Defined Terms.

Capitalized terms that are not defined in this Amendment shall have the meanings given to such terms in the Agreement.

## ARTICLE 2
## AMENDMENTS

### 2.1    Amendments to the Agreement.

(a)    Section 1.1(j) is hereby amended to add the following at the end:

"but not including funds held in segregated accounts for payment of professional fees and sales taxes."

(b)    Section 1.1(l) is hereby amended and restated in its entirety to read as follows:

"(l) any and all rights, demands, claims, credits, allowances, rebates, causes of action, known or unknown, pending or threatened or rights of set-off (collectively, "Claims", of Seller arising out of or relating to events prior to the Closing Date (except to the extent relating to the Excluded Liabilities), but not including (i) all Claims arising under sections 510, 544, 545, 546, 548 through 551 and 553 of the Bankruptcy Code or under similar state Laws including fraudulent conveyance Claims, and all other causes of action of a trustee and debtor-in-possession under the Bankruptcy Code) and (ii) all Claims arising out of or relating in any way to the Bankruptcy Case or any of the transactions contemplated thereby or entered into as a consequence thereof including any claims (as defined in section 101(5)

of the Bankruptcy Code) filed, schedules or otherwise arising in the Bankruptcy Case;"

(c)     Section 1.2(h) is hereby renumbered to be Section 1.2(i) and a new Section 1.2(h) of the Agreement is hereby added as follows:

"(h) any and all Claims of Seller under the Executive Package insurance policy maintained by the Company with National Union Fire Insurance Company of Pittsburgh, Pennsylvania described on Schedule 4.12; and"

(d)     A new Section 1.3(i) is hereby added as follows:

"(i) any obligation to provide and any claims made pursuant to any COBRA coverage and any related administrative costs."

(e)     Section 1.4(n) is hereby amended and restated in its entirety to read as follows:

"(n) INTENTIONALLY OMITTED;"

(f)     The first sentence of Section 2.1 is hereby amended and restated in its entirety to read as follows:

"2.1     Consideration. The aggregate consideration for the sale and transfer of the Acquired Assets shall be $17,500,000 (the "*Purchase Price*"), which price is payable and deliverable at the Closing in accordance with Section 3.3."

(g)     The following provision is hereby added at the end of Section 7.4:

"; provided, however, in the event of an objection to the assumption by Seller and assignment to Buyer of any Assigned Contract, as a result of which the assumption and assignment of such agreement is not approved by order of the Bankruptcy Court until after the Closing Date, then Buyer shall cure any and all defaults under such Assigned Contracts that are required to be cured under the Bankruptcy Code promptly following entry of such order. Buyer, in its sole discretion, may remove a contract from the schedule of Assigned Contracts no later than ten (10) days after a Final Order determining the cure amount or any request for adequate assurance of future performance with respect to such Assigned Contract."

(h)     Section 7.8 is hereby amended to delete the last sentence in its entirety and to amend and restate that sentence as follows:

"Seller shall give written notice to Buyer prior to the submission of any motion in its Bankruptcy Case to reject any executory contract or unexpired leases; provided, that in no event shall Seller, from and after entry of a Final Order approving this Agreement, seek to reject any executory contract or unexpired lease associated with the business (including all Assigned Contracts) without Buyer's prior written consent."

(i)      Section 10.1 is hereby amended and restated in its entirety to read as follows:

"10.1   Taxes Related to Purchase of Assets. In the event that any transfer Tax, sales Tax, real estate Tax, stamp Tax or similar Tax (collectively, "Transaction Taxes") shall be payable in connection with the transactions contemplated by this Agreement, such Transaction Taxes shall be paid by Buyer. In no event shall any party to this Agreement be responsible for the income taxes of any other party that arise as a consequence of the transactions consummated hereunder."

(j)      Section 11.3(c) is hereby amended and restated in its entirety to read as follows:

"(c) INTENTIONALLY OMITTED."

(k)      Section 11.3(g) is hereby deleted in its entirety.

(l)      Section 12.2(a)(x) is hereby deleted in its entirety.

## ARTICLE 3

### WAIVER AND ACKNOWLEDGMENT

**3.1**    **Waiver**. Buyer hereby waives the condition precedent specified in Section 11.3(d) of the Agreement solely with respect to Consents from any Government or governmental entity.

**3.2**    **Acknowledgment**. In accordance with Section 7.6(a) of the Agreement, Buyer will offer employment to all non-MEIP employees of the Company, other than Michael Crabtree.

## ARTICLE 4
## MISCELLANEOUS

**4.1**    **No Other Amendments; Reservation of Rights; No Waiver.** Other than as otherwise expressly provided herein, this Amendment shall not be deemed to operate as an amendment or waiver of, or to prejudice, any right, power, privilege or remedy of any Subject Party under the Agreement or any other Transaction Document, nor shall the entering into of this Amendment preclude any Subject Party from refusing to enter into any further amendments with respect to the Agreement or any other Transaction Document. Other than as otherwise expressly provided herein, this Amendment shall not constitute a waiver of compliance with any covenant or other provision in the Agreement or any other Transaction Document or of the occurrence or continuance of any present or future default.

**4.2**    **Ratification and Confirmation.** Except as expressly set forth in this Amendment, the terms, provisions and conditions of the Agreement are hereby ratified and confirmed and shall remain unchanged and in full force and effect without interruption or impairment of any kind.

**4.3**    **Governing Law.** This Agreement shall be construed, performed and enforced in accordance with, and governed by, the Laws of the State of New York (without giving effect to

the principles of conflicts of Laws thereof), except to the extent that the Laws of such State are superseded by the Bankruptcy Code.

**4.4    Headings.**  The article and section headings contained in this Amendment are inserted for convenience only and will not affect in any way the meaning or interpretation of this Amendment.

**4.5    Counterparts.**  This Amendment may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement may be delivered by exchange of copies of the signature page by facsimile transmission.

**4.6    Severability.**  The provisions of this Amendment will be deemed severable and the invalidity or unenforceability of any provision will not affect the validity or enforceability of the other provisions hereof; provided that if any provision of this Amendment, as applied to any party or to any circumstance, is judicially determined not to be enforceable in accordance with its terms, the parties agree that the court judicially making such determination may modify the provision in a manner consistent with its objectives such that it is enforceable, and/or to delete specific words or phrases, and in its modified form, such provision will then be enforceable and will be enforced.

**4.7    Amendment.**  This Amendment may not be amended or modified except in the manner specified for an amendment of or modification to the Agreement in <u>Section 13.9</u> of the Agreement.

**4.8    Entire Agreement.**  The Agreement as amended by this Amendment, together with the Exhibits and Schedules thereto and the certificates, documents, instruments and writings that are delivered pursuant thereto, constitutes the entire agreement and understanding of the parties in respect of the subject matter of the Agreement as amended by this Amendment and supersedes all prior understandings, agreements or representations by or among the parties, written or oral, to the extent they relate in any way to the subject matter of the Agreement as amended by this Amendment.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, the parties have caused this Amendment to Asset Purchase Agreement to be executed as of the date first written above.

**IDLEAIRE TECHNOLOGIES CORPORATION**

By: _____

    Name:

    Title:

**IDLEAIRE ACQUISITION COMPANY, INC.**

By: _____

    Name:

    Title: