# IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| IDLEAIRE TECHNOLOGIES CORP., | ) Case No. 08-10960 (KG) |
| | ) |
| | ) |
| Debtor. | ) |
| | ) *Re: Dkt #13 &42* |

## ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, (C) EXEMPTING SUCH SALE AND ASSIGNMENT FROM ANY STAMP TAX OR SIMILAR TAX, AND (D) GRANTING RELATED RELIEF.

This matter is before the Court on the motion (the "Sale Motion")[1] [Docket No. 12], dated May 12, 2008, of IdleAire Technologies Corp., as a debtor and debtor in possession ("IdleAire" or the "Debtor,"), for entry of an order, pursuant to sections 105(a), 363, 365, 503, 507, 1123 and 1142 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014, (A) approving the Asset Purchase Agreement (as amended by the First Amendment thereto dated July 10, 2008 and as further amended from time to time, the "APA"), substantially in the form attached hereto as Exhibit A, by and between the Debtor and IdleAire Acquisition Company, Inc. (the "Purchaser"), and such other agreements to be entered into and among the parties as contemplated therein; (B) authorizing (i) the sale (the "Sale") of the Acquired Assets comprising all or substantially all of the Debtor's assets free and clear of all liens, claims, encumbrances, and other interests (collectively, the "Liens"), other than any Permitted Liens and Assumed Liabilities under the APA; and (ii) the assumption and assignment of certain executory

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning as set forth in the APA (defined herein) and the Sale Motion, as applicable.

1

contracts and unexpired leases in connection therewith ("<u>Assigned Contracts</u>"); and (C) granting certain related relief; and it appearing that the Court has jurisdiction over this matter; and the Court having heard statements of counsel and the evidence presented in support of the relief requested by the Debtor in the Sale Motion and at a hearing before the Court on July 11, 2008 (the "<u>Sale Hearing</u>"); and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and, except as provided herein, all objections to the Cure Notice and the Sale Motion having been withdrawn, overruled and/or considered, and after due deliberation thereon,

## THE COURT HEREBY FINDS AND DETERMINES THAT:[2]

### Jurisdiction, Final Order and Statutory Predicates

A.      This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363(b), (f), and (m), 365, 503, 507, 1123, 1142 and 1146(a) of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014.

## Notice of the Sale, Auction and the Cure Amounts

D.     Actual written notice of the Sale Hearing, the Auction, the Sale Motion, the Sale, and the assumption and assignment of the Assigned Contracts, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to: (i) lead counsel and local counsel for the DIP Lenders and the Majority Secured Noteholder Group; (ii) counsel for the DIP Agent; (iii) counsel for the Indenture Trustee; (iv) the United States Trustee for the District of Delaware; (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service; (vii) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Assets; (viii) the United States Department of Justice; (ix) the United States Environmental Protection Agency and any applicable state environmental agency; (x) the counterparties to each of the Assigned Contracts; (xi) all other parties known to Debtor who have or may have asserted liens against any of the Acquired Assets; (xii) the Debtor's twenty (20) largest unsecured creditors; (xiii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (xiv) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets; (xv) all persons or entities known or reasonably believed to have expressed an interest in acquiring the Acquired Assets; (xvi) counsel for the official committee of unsecured creditors appointed in this case (the "Committee") and (xvii) the Purchaser and its counsel.

E.    In accordance with the Bid Procedures Order, the Debtor has served a notice of cure amounts (the "Cure Notice") upon each counterparty to an Assigned Contract that the Debtor seeks to assume and assign to the Purchaser on the Closing Date. The service of such Cure Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a Cure Amount for the respective Assigned Contracts. Counterparties to the Assigned Contracts have had an opportunity to object to the Cure Amount set forth in the Cure Notice.

F.    As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, the Sale Hearing, and the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtor also has complied with all obligations to provide notice of the Sale Motion, the Auction, the Sale Hearing, and the Sale required by the Bid Procedures Order. The foregoing notice described in paragraphs D and E was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the Sale or the assumption and assignment of the Assigned Contracts is required.

G.    The disclosures made by the Debtor concerning the APA, the Auction, the assumption and assignment of the Assigned Contracts, the Sale, and the Sale Hearing were good, complete and adequate.

## Good Faith of Purchaser

H.    The Purchaser is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

I.    Purchaser is purchasing the Acquired Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to

the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (a) Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Acquired Assets; (b) Purchaser complied with the provisions in the Bid Procedures Order; (c) Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; (d) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (e) Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (f) no common identity of directors or controlling stockholders exists between the Purchaser and the Debtor; and (g) the negotiation and execution of the APA and any other agreements or instruments related thereto was at arm's-length and in good faith.

## Highest and Best Offer

J.       The Debtor conducted an Auction process in accordance with, and has otherwise complied in all respects with, the Bid Procedures Order. The Auction process set forth in the Bid Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Acquired Assets.

K.       The APA constitutes the highest and best offer for the Acquired Assets, and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Debtor's determination that the APA constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtor's business judgment.

L.     The APA represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of this chapter 11 case. No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtor's estate than the Purchaser.

M.     Approval of the Sale Motion and the APA and the consummation of the transactions contemplated thereby is in the best interests of the Debtor, its creditors, its estate and other parties in interest.

N.     The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale. The Debtor is authorized pursuant to sections 105(a), 363, 365, 1123 and 1142 of the Bankruptcy Code to, among other things, enter into the APA, sell the Acquired Assets free and clear of all Liens and assume and assign the Assigned Contracts pursuant to the terms of the APA and this Order.

## No Fraudulent Transfer

O.     The consideration provided by the Purchaser pursuant to the APA for its purchase of the Acquired Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

P.     The Purchaser is not a mere continuation of the Debtor or its estate and there is no continuity between the Purchaser and the Debtor. The Purchaser is not holding itself out to the public as a continuation of the Debtor. The Purchaser is not a successor to the Debtor or its estate and the Sale does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtor.

## Validity of Transfer

Q.    The Debtor has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtor to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA.

R.    The transfer of each of the Acquired Assets to the Purchaser will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will, as of the Closing Date, vest the Purchaser with all right, title, and interest of the Debtor to the Acquired Assets free and clear of all Liens accruing, arising or relating to any time prior to the Closing Date, except for any Permitted Liens and Assumed Liabilities under the APA.

## Section 363(f) Is Satisfied

S.    The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby if the Sale of the Acquired Assets to the Purchaser, the assumption, assignment and sale of the Assigned Contracts to the Purchaser, and the assumption of the Assumed Liabilities by the Purchaser were not (except as otherwise provided in the APA with respect to the Assumed Liabilities and Permitted Liens) free and clear of all Liens of any kind or nature whatsoever, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the APA and with respect to the Assumed Liabilities and the Permitted Liens), be liable for any of such Liens.

T.    The Debtor may sell the Acquired Assets free and clear of all Liens (except for any Permitted Liens and Assumed Liabilities under the APA) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Liens against the Debtor, its estate or any of the Acquired Assets who did not

object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.

## Assumption and Assignment of the Assigned Contracts

U. The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the APA and is in the best interests of the Debtor and its estate, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.

V. Except as set forth herein, the respective amounts set forth on Exhibit B attached hereto are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assigned Contracts (the "Cure Amounts").

W. Except as set forth herein, the Debtor has (directly or through Purchaser): (i) cured and/or provided adequate assurance of cure of any default existing prior to the Closing Date under any of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

X. Except as set forth herein, the Purchaser has provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

## Compelling Circumstances for an Immediate Sale

Y. To maximize the value of the Acquired Assets and preserve the viability of the business to which the Acquired Assets relate, it is essential that the Sale of the Acquired Assets

8

occur within the time constraints set forth in the APA. Time is of the essence in consummating the Sale.

Z.      Given all of the circumstances of this chapter 11 case and adequacy and fair value of the purchase price under the APA, the proposed Sale of the Acquired Assets to Purchaser constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

## General Provisions

1.      The relief requested in the Sale Motion is granted and approved, and the Sale contemplated thereby and by the APA is approved as set forth in this Order.

2.      Except as provided herein, all objections, including (i) the Objection of the Official Committee of Unsecured Creditors to the Sale Motion with respect to the Bidding Procedures [Docket No. 84] and (ii) the objections with respect to the assumption and assignment of certain unexpired leases and executory contracts and setting cure amounts, filed by (a) Enterprise Fleet Services of Tennessee (the "EF Objection") [Docket No. 230], (b) TravelCenters of America LLC (the "TA Objection") [Docket No. 237], (c) Eaton Electrical, Inc. (the "Eaton Objection") [Docket No. 239], (d) AT&T Corp. (the "AT&T Objection") [Docket No. 240], (e) Jaco Electronics Inc. (the "Jaco Objection") [Docket No. 241], (f) DIRECTV, Inc. (the "DIRECTV Objection") [Docket No. 242], (g) Oracle USA, Inc. (the "Oracle Objection") [Docket No. 246] and (h) CalArk International Inc. (the "CalArk Objection") [Docket No. 247], and together with the EF Objection, the TA Objection, the Eaton Objection, the AT&T Objection, the Jaco Objection, the Oracle Objection and the DIRECTV Objection, the "Objections"), and the relief requested therein that has not otherwise been affirmatively withdrawn, waived, or

settled, and all reservations of rights included therein, are hereby specifically overruled or denied on the merits, *except that the Eaton Objection, the Jaco Objection, the Oracle Objection, and the CalArk Objection shall be preserved in accordance with the terms of this Order.* To the extent any of the Objections were settled, the terms of this Order reflect the resolution of same. All other objections to the Sale Motion or the relief requested therein that have not been identified above or withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are, except as provided in other orders of the Court, hereby overruled on the merits.

## Approval of the APA

3.     The APA and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

4.     Pursuant to sections 105, 363(b), 1123, and 1142 of the Bankruptcy Code, the Debtor is authorized and directed to take any and all actions necessary or appropriate to (i) consummate the Sale of the Acquired Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the APA, (ii) close the Sale as contemplated in the APA and this Order, and (iii) execute and deliver, perform under, consummate, implement and close fully the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such other ancillary documents.

5.     This Order shall be binding in all respects upon the Debtor, its estate, all creditors of (whether known or unknown), and holders of equity interests in the Debtor, any holders of Liens against or on all or any portion of the Acquired Assets, all counterparties to the Assigned Contracts, the Purchaser and all successors and assigns of the Purchaser. This Order and the APA

shall inure to the benefit of the Debtor, its estate, its creditors, the Purchaser and their respective successors and assigns.

## Transfer of the Acquired Assets

6. Pursuant to sections 105(a), 363(b), 363(f), 365, 1123 and 1142 of the Bankruptcy Code, the Debtor is authorized to transfer the Acquired Assets on the Closing Date. Upon the closing, the Purchaser shall take title to and possession of the Acquired Assets subject only to the Permitted Liens and Assumed Liabilities, and such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets and, upon the Debtor's receipt of the Purchase Price, shall be free and clear of all Liens except any Permitted Liens and Assumed Liabilities under the APA.

7. Except for the alleged setoff and/or recoupment rights asserted by holders of Excluded Contracts (as defined below) and except as expressly permitted or otherwise specifically provided by the APA or this Order, all persons and entities holding claims against the Debtor or Liens or interests in the Acquired Assets (other than Permitted Liens and the Assumed Liabilities) arising under or out of, in connection with, or in any way relating to the Debtor, the Acquired Assets, or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the Acquired Assets, such persons' or entities' interests in and to the Acquired Assets. On the Closing Date, each creditor is directed to execute such documents and take all other actions as may be necessary to release Liens (except Permitted Liens) on the Acquired Assets, if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

8. Any amounts that may become payable by the Debtor to the Purchaser or a third party in accordance with the terms of the APA shall be an allowed administrative claim in an

amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code.

9.      All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Acquired Assets to the Purchaser in accordance with the terms of the APA and this Order.

10.     All entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Purchaser or its assignee at the Closing.

11.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel the Liens and other encumbrances of record except the Permitted Liens.

12.     If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, the Acquired Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to the Acquired Assets, the Debtor is hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

13.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

## Assigned Contracts

14. Except as set forth herein, the Debtor is authorized and directed at the Closing, to assume and assign each of the Assigned Contracts to the Purchaser free and clear of all Liens. The payment of the applicable Cure Amounts (if any) shall (a) effect a cure of all defaults existing thereunder as of the Closing Date, (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default, and (c) together with the assumption of the Assigned Contracts by the Debtor and the assignment of the Assigned Contracts to the Purchaser, constitute adequate assurance of future performance thereof. The Debtor shall then have assumed the Assigned Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtor of such Assigned Contracts shall not be a default thereunder. After the payment of the relevant Cure Amounts, neither the Debtor nor the Purchaser shall have any further liabilities to the non-Debtor parties to the Assigned Contracts other than the Purchaser's obligations under the Assigned Contracts that become due and payable on or after the Closing Date. Notwithstanding the foregoing, (a) any obligations with respect to any Assigned Contract that become due and owing after May 12, 2008 through the Closing Date shall be paid in the ordinary course of the Debtor's business in accordance with invoice and/or payment terms and

(b) to the extent that such post-petition obligations have not been satisfied by the Closing Date, these obligations shall be satisfied by the Purchaser in accordance with the Asset Purchase Agreement.

15. Any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Agreement, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor, and assignment to the Purchaser of the Assigned Contracts has been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtor under the Assigned Contracts.

16. Upon the Closing and the payment of the relevant Cure Amounts, if any, the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Assigned Contracts and the Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

17. Upon the payment of the applicable Cure Amount, if any, and subject to the terms of the stipulation of the parties to any Assigned Contract filed with the Court, if any, (a) each Assigned Contract shall constitute a valid and existing interest in the property subject to such Assigned Contract, (b) none of the Debtor's rights will have been released or waived under any such Assigned Contracts, (c) the Assigned Contracts will remain in full force and effect, and (d)

no default shall exist under the Assigned Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

18. Except as set forth herein, the Purchaser has provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

19. There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to the Purchaser or the Debtor as a result of the assumption and assignment of the Assigned Contracts.

20. Except as set forth herein, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all parties to the Assigned Contracts are forever barred and permanently enjoined from raising or asserting against the Debtor or Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing.

21. The Lodging and Institutions SMATV Viewing Agreement between DIRECTV, Inc. ("DirectTV") and IdleAire Technologies Corporation (the "DIRECTV Agreement") shall be assumed and assigned pursuant to the terms of this Order; provided, however, that an additional Cure Amount allegedly owing to DirectTV in the amount of $234,840.00 remains disputed. Notwithstanding anything contained in this paragraph, nothing in this Order shall alter the rights of DirectTV, the Debtor or the Purchaser with respect to the DIRECTV Systems (as defined in the DirectTV Objection).

22. Notwithstanding anything contained herein or in the Cure Notice, upon the assumption and assignment pursuant to the terms of this Order of that certain lease dated November 16, 2007 (the "TA Lease"), among Petro Stopping Centers, L.P. ("Petro"), TA

Operating LLC ("TA" and together with Petro, the "TA Landlords") and IdleAire Technologies Corporation, the Purchaser shall be obligated, under section 365 of the Bankruptcy Code and the TA Lease, to cure or otherwise remove any mechanics' liens that have been or may be filed through and after the Closing Date, including, without limitation (a) any outstanding liens of which the TA Landlords are not currently aware, (b) any liens that may be filed prior to the Closing Date and (c) any liens that may be filed after the Closing Date that relate to work initiated by the Debtors prior to the Closing Date.

23.     Notwithstanding anything contained herein or in the Cure Notice, the agreements, contracts and/or leases (collectively the "Excluded Contracts") with the following counter-parties shall not be deemed to be Assigned Contracts until entry of a further order of this Court: Cutler-Hammer, Inc. and/or Eaton Electrical, Inc., Jaco Electronics Inc., CalArk International Inc., and Oracle USA, Inc. The Debtor, the Purchaser and each of the counter-parties to the Excluded Contracts are deemed to have reserved all of their rights, as raised in the respective Objections, to contest the Cure Amount and/or the treatment of their respective contracts or leases. The Purchaser shall be under no obligation to acquire any of the Excluded Contracts.

24.     The Court will consider all pending Objections with respect to the Excluded Contracts at a hearing set for July 30, 2008, which may be adjourned from time to time by the Debtor and the Purchaser, with the consent of the counter-party to the Excluded Contract for which such Objection is proposed to be continued. If, however, there is an agreement reached involving any Excluded Contract, the Debtor shall submit a proposed form of order or stipulation for entry and approval by this Court, which will set forth the agreed upon terms of assumption and assignment of an Excluded Contract and request that the Excluded Contract be deemed an Assigned Contract.

25. Notwithstanding anything contained in this Order or the Cure Notice, the Debtor (with the consent of Purchaser) or Purchaser, as applicable, reserves the right either to reject or nullify the assumption of an Assigned Contract which is an Excluded Contract no later than ten (10) days after a Final Order determining the Cure Amount or any request for adequate assurance of future performance with respect to an Excluded Contract. Nothing contained herein shall limit the right of the Purchaser under section 7.8 of the APA to remove contracts from the Assigned Contracts list.

## Other Provisions

26. Effective upon the Closing Date, and except for the alleged setoff and/or recoupment rights asserted by counterparties to the Excluded Contracts and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter, all persons and entities who have held, hold or may hold any Claim (as defined under section 101(5) of the Bankruptcy Code) are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Acquired Assets, with respect to any (a) Lien (other than a Permitted Lien) arising under, out of, in connection with or in any way relating to the Debtor, the Purchaser, the Acquired Assets, or the operation of the Acquired Assets prior to the Closing of the Sale, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Lien or other encumbrance against the Purchaser, its successors, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any

obligation due the Purchaser or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

27.     Except for the alleged setoff and/or recoupment rights asserted by counterparties to the Excluded Contracts and except for the Permitted Liens and the Assumed Liabilities, the Purchaser shall not have any liability of the Debtor or its estates arising under or related to the Acquired Assets. Without limiting the generality of the foregoing, the Purchaser shall not be liable for any claims against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing. The Purchaser has given substantial consideration under the APA for the benefit of the holders of Liens. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against the Debtor or the Acquired Assets.

28.     The transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts), unless such authorization and consummation of such Sale are duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

29.     Notwithstanding any obligations imposed by section 11.2(e) of the Asset Purchase Agreement, the shareholders of the Purchaser shall execute, and use commercially reasonable efforts to cause the Indenture Trustee on behalf of the holders of the Secured Notes to execute, on the Closing Date, releases of any and all claims, debts, demands or obligations of any name or nature they, in any capacity, hold, may hold or allege to hold as of the Closing Date against any of the Debtor's directors and officers relating to acts or omission in their capacities as directors and officers of the Debtor, provided, however, that the foregoing release shall only affect those claims, debts, demands, obligations, remedies and liabilities in excess of the policy limits of any applicable director and officer insurance policies (the "Limited D&O Release"). The Limited D&O Release is not, and shall not (i) be construed as, a waiver or release of any and all claims, debts, demands or obligations of any name or nature any of the shareholders, in any capacity, or their Affiliates, hold, may hold or allege to hold as of the Closing Date against the Debtor, the bankruptcy estate and property of the estate, and (ii) limit or prejudice the rights of any of the shareholders, in any capacity, or their Affiliates to participate in distributions from the bankruptcy estate, including without limitation, distributions on account of recoveries from

claims asserted by any estate representative against directors and officers of the Debtor. The officers and directors will fully cooperate with the insurance carriers to the extent required under such policies and any applicable law. Notwithstanding any provisions of this Order or the Asset Purchase Agreement to the contrary, nothing contained therein shall in any way limit or abrogate the insurance coverage, or rights to recover insurance proceeds, including without limitation director and officer insurance and any other insurance, available to any such officers and directors of the Debtor for the settlement or satisfaction of any judgment. If any insurance carrier denies coverage for such claims, the directors and officers shall use commercially reasonable efforts to contest such denial, including by commencement and pursuit of litigation.

30. Nothing contained in any order of any type or kind entered in (i) this chapter 11 case or (ii) any related proceeding subsequent to entry of this Order shall conflict with or derogate from the provisions of the APA or the terms of this Order.

31. Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Order shall be effective immediately upon entry and the Debtor and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

32. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

33. There are no brokers involved in consummating the Sale and no brokers' commissions are due, except that the Debtor has retained Gordian Group, LLC and will pay Gordian Group, LLC such fees as are approved by the Bankruptcy Court.

34. For purposes of section 363(b)(1) of the Bankruptcy Code, the Debtor has not, in connection with offering a product or service, disclosed to one or more individuals a policy

prohibiting the transfer of "personally identifiable information" (as defined in 11 U.S.C. § 101(41A)) about individuals to persons that are not affiliated with the Debtor.

35. Notwithstanding anything to the contrary in this Order or the APA, to the extent any of the Acquired Assets consist of an interest in a consumer credit transaction subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations), Purchaser shall remain subject to the same claims and defenses that are related to such consumer credit transaction or such consumer credit contract to the same extent as Purchaser would be subject to such claims and defenses of the consumer if such interest had not been purchased pursuant to section 363, as provided for in section 363(o) of the Bankruptcy Code.

36. The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

37. The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court.

38. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

39. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

21

40. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this chapter 11 case, the terms of this Order shall govern.

41. To the extent there are any inconsistencies between the terms of this Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Order shall control.

42. Notwithstanding anything to the contrary contained herein, the Bidding Procedures Order remains in full force and effect and shall be binding on the Debtor and the Purchaser in all respects.

43. Notwithstanding anything contained in this Order, to the extent there is any conflict or inconsistency between any terms of this Order, on the one hand, and any terms of the settlement and compromise reached with the Committee under the Final Order (I) Authorizing Debtor (A) to Obtain Post-Petition Financing Pursuant to to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3),364(d)(1), and364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, entered by the Court on June 27, 2008 [Docket No. 228] (the "Final DIP Order"), on the other hand, the terms of the Final DIP Order shall, to the extent necessary to resolve such conflict or inconsistency, govern.

DATE: July 1st , 2008

SO ORDERED:

_____
UNITED STATES BANKRUPTCY JUDGE