**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| IDLEAIRE TECHNOLOGIES CORPORATION, | : Case No. 08-10960 (KG) |
| | : |
| Debtor. | : |
| | : |
| WAUSAU BUSINESS INSURANCE | : |
| COMPANY and EMPLOYERS INSURANCE | : |
| OF WAUSAU COMPANY | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Adv. Pro. No. _____ (KG) |
| | : |
| IDLEAIRE TECHNOLOGIES CORPORATION, | : |
| NANCY YOUNGER and ESTATE OF | : |
| WILLIAM YOUNGER | : |
| | : |
| Defendants. | : |

## COMPLAINT

COMES NOW, Wausau Business Insurance Company and Employers Insurance of Wausau Company ("Plaintiffs" or "Insurers"), and files this Complaint pursuant to Bankruptcy Rule 7001(9) seeking declaratory relief with respect to rights and obligations of the Insurers under primary and excess general liability insurance policies issued to the Debtor, stating to the Court as follows:

### Parties And Jurisdiction

1.      Defendant IdleAire Technologies Corporation ("IdleAire" or "Debtor") is a Delaware corporation and the debtor in this case.

2. Defendants Nancy Younger and Estate of William Younger (the "Youngers" or "Movants") are residents of Tennessee and are the movants in the related Motion for Relief.

3. Plaintiffs are insurance companies organized under the laws of Wisconsin and authorized to do business in the State of Delaware.

4. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 seeking a declaration of the parties' rights and obligations under contracts of insurance issued by Plaintiffs to Debtor with regard to a lawsuit filed in Tennessee State Court seeking damages due to seepage of carbon monoxide into the cab of claimants' truck allegedly causing injuries, including the death of one of the claimants.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Bankruptcy Code § 157.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Insurance Policies

7. For the period from January 1, 2007 to January 1, 2008, Plaintiff Wausau Business Insurance Company issued to IdleAire a Commercial Package Policy, Policy No. YYK-Z41-435246-027, containing a Commercial General Liability coverage part ("the CGL Policy"). The policy provides general liability coverage on an occurrence basis with limits of $1 million per occurrence and $2 million in the aggregate (other than products-completed operations). A separate $2 million aggregate limit is available for products-completed operations claims. Among other provisions, it contains a Total Pollution Exclusion Endorsement. A true and correct copy of the CGL Policy is attached to this Complaint as Exhibit A.

8.     Plaintiff Employers Insurance of Wausau Company issued for the period from January 1, 2007 to January 1, 2008 an Umbrella Excess Liability policy (the "UEL Policy") to IdleAire, Policy No. THC-Z41-435246-057.   The UEL policy provides Excess Follow Form Liability coverage under Coverage A.  The UEL also itself contains a pollution exclusion.  The UEL policy has limits of $10 million per occurrence and in the aggregate.  A true and correct copy of the UEL Policy is attached to this Complaint as Exhibit B.

9.     The CGL Policy and the UEL Policy contain aggregate limits, and are subject to exhaustion by individual claims such that coverage and payment of one claim may make coverage unavailable with respect to another potential claimant. These policies together provide no more than $12 million in aggregate limits for covered claims.

10.     The CGL Policy, to which the UEL Policy partially follows form, provides that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. . . . [The insurer's] right and duty to defend ends when we have used up the applicable limit of insurance," which is up to the per occurrence and aggregate limits.

11.     The CGL Policy's Total Pollution Exclusion Endorsement states, in part, that:

> This insurance does not apply to:
>
> f. (1) The "contamination" of any "environment" by "pollutants"
> that are introduced at anytime, anywhere, in any way.
>
> (2) Any "bodily injury," "personal and advertising injury" or
> "property damage" arising out of such "contamination."
>
> . . . .

Subparagraph (2) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Definition 15. of SECTION V - DEFINITIONS is deleted and replaced by the following:

15.    "Pollutant" means any irritant, including noise or sound, or any solid, liquid, gaseous or thermal "contaminant", including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

As used in this endorsement, the following terms have the following meanings:

"Contamination" means any unclean or unsafe damaging or injurious or unhealthful condition arising out of the presence of "pollutants," whether permanent or transient in any "environment."

"Environment" includes any person, any man-made object or feature, animals, mops and vegetation, land, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated, including, but not limited to any of the above, owned, controlled or occupied by the insured.

CGL Policy, Total Pollution Exclusion Endorsement.

12.    The UEL Policy provides a Pollution Exclusion, which states, as amended, that:

This insurance does not apply to:

1.    Pollution

a.    "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged, potential or threatened discharge, dispersal,

seepage, migration, release, escape or presence of "pollutants" at any time and whether occurring indoors or outdoors; or

b.     "Pollution cost or expense".

c.     This exclusion does not apply if injury or damage arises or is sustained as described below in paragraphs (1), (2), (3) or (4) and if valid "scheduled underlying insurance" applies or would have applied but for the exhaustion of the limits of "scheduled underlying insurance":

(1)     "Bodily injury", "property damage" or "personal and advertising injury" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or "autos" or their parts, when such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. However, this exception to the exclusion does not apply if:

(a)     The "bodily injury", "property damage" or "personal and advertising injury" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids whether or not the injury or damages were intended or foreseeable; or

(b)     The fuels, lubricants or other operating fluids are intended to be discharged, dispersed or released as part of any operations being performed by any insured, or its contractor or subcontractor, including the operation of "mobile equipment" or "autos", whether or not the injury or damages were intended or foreseeable;

(2)     "Bodily injury", "property damage" or "personal and advertising injury)" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor;

(3)     "Bodily injury", "property damage" or "personal and advertising injury" arising out of heat, smoke or fumes from a "hostile fire"; or

(4)     "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

UEL Policy, Section IV(A)(1).

13.     The CGL Policy provides under "Duties In The Event Of Occurrence, Offense, Claim Or Suit," in relevant part, that:

      a.     [The insured] must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. . . .

      b.     If a claim is made or "suit" is brought against any insured, [the insured] must: . . .

      (2)    Notify [the insurer] as soon as practicable.

     [The insured] must see to it that we receive written notice of the claim or "suit" as soon as practicable.

CGL Policy, Section IV(2) (the "CGL Policy's Notice Provision").

14.     The CGL Policy provides under "Duties In The Event Of Occurrence, Offense, Claim Or Suit," in relevant part, that:

      c.     [The insured] and any other involved insured must. . . .

      3.    Cooperate with [the insurer] in the investigation or settlement of the claim or defense against the "suit"; and

CGL Policy, Section IV(2) (the "CGL Policy's Cooperation Clause").

15.     The CGL Policy provides under "Duties In The Event Of Occurrence, Offense, Claim Or Suit," in relevant part, that:

      d.     No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligations, or incur any expense, other than for first aid, without [the insurer's] consent.

CGL Policy, Section IV(2) (the "CGL Policy's Voluntary Payment Clause").

16.     The UEL Policy provides under "Duties In The Event Of Occurrence, Claim Or Suit," in relevant part, that:

      1.    [The insurer] must be notified as soon as practicable of an "occurrence" that may result in a claim or "suit" under this policy.
     . . .

2.      If a claim is made or "suit" is brought against any insured, which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

UEL Policy, Section V(G) (the "UEL Policy's Notice Provision").

3.      [The insured] and all other insureds must:

c.      . . . Cooperate with us in the investigation, settlement or defense of the claim or "suit"

UEL Policy, Section V(G) (the "UEL Policy's Cooperation Clause").

4.      No insured will, except at their own expense, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without our consent.

UEL Policy, Section V(G) (the "UEL Policy's Voluntary Payment Clause").

## The Underlying Matter Against IdleAire

17.     Nancy Younger and the Estate of William Younger filed a wrongful death action against IdleAire Technologies Corporation ("IdleAire" or "Debtor") on or about April 30, 2008 in the Circuit Court for Knox County, Tennessee, captioned Younger v. IdleAire Technologies Corp., No. 1-183-08 (Tenn. Cir. Ct., Knox County) (the "Underlying Matter").

18.     The complaint alleges injuries, including the eventual death of William Younger, from carbon monoxide poisoning allegedly caused by the malfunctioning of an IdleAire HVAC delivery system while the Youngers were sleeping in the cab of their truck at a truck stop in Knoxville, Tennessee on or about July 12, 2007. The complaint asserts causes of action for strict product liability, negligent failure to warn, breach of express and implied warranties, and negligence and seeks compensatory damages of $18 million, discretionary costs, and attorneys' fees.

19.     Before their suit, the Youngers asserted a claim against IdleAire, and IdleAire provided notice of the Youngers' claim to Insurers by telephone notification and

correspondence dated January 18, 2008. Subsequently, the Youngers filed suit against IdleAire, and the insurers first received notice from IdleAire of the Youngers' action on May 1, 2008. Insurers denied coverage for the claim by letter dated February 14, 2008. The coverage disclaimer was reiterated by letter dated April 14, 2008.

20.     On May 12, 2008, IdleAire filed a Chapter 11 Voluntary Petition in the this Court, captioned <u>In re IdleAire Technologies Corporation</u>, No. 08-10960(KG) (Bankr. D. Del.). IdleAire continues to operate its business and assets as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

21.     The Underlying Matter has been stayed pursuant to the automatic stay issued by this Court.

22.     The Movants have filed a Motion for Relief from Stay in this Court, seeking relief from the automatic stay to allow the Underlying Matter to proceed in Tennessee State Court. Movants' motion erroneously alleges that "Debtor's insurer will pay for Debtor's defense and will pay any judgment up to the limits of liability."

23.     If the Youngers were awarded the relief sought against IdleAire and if they were entitled to collect that judgment from the Insurers, this would completely exhaust the CGL Policy's and UEL Policy's coverage limits, leaving no protection for IdleAire and no source of compensation for other claimants in the event of future claims within the Policies' coverage.

## Count I – Declaratory Judgment As To No Coverage Due To Pollution Exclusions

24.     Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1 through 23 of this Complaint.

25.     Plaintiff's policies do not afford coverage for the Underlying Matter. Specifically, coverage is barred, *inter alia*, by the CGL Policy's Total Pollution

Exclusion Endorsement and the UEL Policy's Pollution Exclusion because bodily injuries caused by exposure to pollutants, which by definition includes carbon monoxide fumes, are excluded under the policies.

26. IdleAire and the Youngers contend that the CGL Policy and UEL Policy provides defense and indemnity coverage to IdleAire in the Underlying Matter. An actual controversy exists, and Plaintiffs have no adequate remedy at law to resolve the controversy.

### Count II - Declaratory Judgment As To No Coverage

### Due To Breach of Notice Provisions

27. Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1 through 26 of this Complaint.

28. IdleAire is not entitled to coverage for the Underlying Matter under either of the Plaintiffs' policies. Specifically, coverage is barred by the CGL Policy's Notice Provision and by the UEL Policy's Notice Provision to the extent IdleAire failed to provide prompt notice to Plaintiffs. Further, on information and belief, IdleAire took steps with respect to the Underlying Matter that prejudiced Plaintiffs prior to providing notice of the Youngers' claim.

29. IdleAire and the Youngers contend that the CGL Policy and UEL Policy provide coverage for the Underlying Matter. An actual controversy exists, and Plaintiffs have no adequate remedy at law to resolve the controversy.

### Count III - Declaratory Judgment As To No Coverage

### Due To Breach of Cooperation Clauses

30. Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1 through 29 of this Complaint.

31.     IdleAire is not entitled to coverage for the Underlying Matter under either of the Plaintiffs' policies. Specifically, coverage is barred to the extent IdleAire breached the CGL Policy's Cooperation Clause and the UEL Policy's Cooperation Clause. On information and belief, IdleAire took steps with respect to the Underlying Matter in violation of the Cooperation Clauses in the Policies.

32.     IdleAire and the Youngers contend that the CGL Policy and UEL Policy provide coverage to IdleAire for the Underlying Matter. An actual controversy exists, and Plaintiffs have no adequate remedy at law to resolve the controversy.

## Count IV - Declaratory Judgment As To No Coverage

## Due To Breach of Voluntary Payments Clauses

33.     Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1 through 32 of this Complaint.

34.     IdleAire is not entitled to coverage for the Underlying Matter under either of the Plaintiffs' policies. Specifically, coverage is barred to the extent IdleAire breached the CGL Policy's Voluntary Payments Clause and the UEL Policy's Voluntary Payments Clause. On information and belief, IdleAire may have voluntarily assumed obligations with respect to the Underlying Matter without the Insurers' consent.

35.     IdleAire and the Youngers contend that the CGL Policy and UEL Policy provide coverage to IdleAire for the Underlying Matter. An actual controversy exists, and Plaintiffs have no adequate remedy at law to resolve the controversy.

## Count V – Other Coverage Defenses

36.     Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1 through 35 of this Complaint.

37.     Provisions of the policies other than those enumerated above may bar or limit coverage for the Underlying Matter.

38.     Nothing in this Complaint should be construed as a waiver by Insurers of any other coverage defenses under the Policies, and Insurers reserve the right to raise all other terms and conditions of the Policies as defenses to coverage as may be appropriate upon further investigation and discovery.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Wausau Business Insurance Company and Employers Insurance of Wausau Company request that this Court enter judgment against Debtor IdleAire and the Youngers:

(a)     Determining as to the first cause of action that neither defense nor indemnity coverage is available under either the CGL Policy or the UEL Policy based on the pollution exclusions contained therein.

(b)     Determining as to the second cause of action that neither defense nor indemnity coverage is available under either the CGL Policy or the UEL Policy based on the notice provisions contained therein.

(c)     Determining as to the third cause of action that neither defense nor indemnity coverage is available under either the CGL Policy or the UEL Policy based on the cooperation clauses contained therein.

(d)     Determining as to the fourth cause of action that neither defense

nor indemnity coverage is available under either the CGL Policy or the UEL

Policy based on the voluntary payment clauses contained therein.

(e)     For such other relief as the Court may deem just and proper.


Dated: August 13, 2008                    BAYARD, P.A.
       Wilmington, Delaware

Charlene D. Davis (No. 2336)
Eric M. Sutty (No. 4007)
Mary E. Augustine (No. 4477)
222 Delaware Avenue
Suite 900
Wilmington, DE  19801
(302) 655-5000

-and-

Laura A. Foggan, Esquire
Karalee C. Morell, Esquire
Parker J. Lavin, Esquire
WILEY REIN LLP
1776 K Street NW
Washington, DC  20006
(202) 719-7000

Counsel for Wausau Business Insurance
Company and Employers Insurance of
Wausau Company