# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re:

IDLEAIRE TECHNOLOGIES
CORPORATION,
           Debtor.

Chapter 11
Case No. 08-10960 (KG)

Hearing Date: August 19, 2008 @ 11:00 a.m.

## DEBTOR'S OPPOSITION TO MOTION OF NANCY YOUNGER AND THE ESTATE OF WILLIAM YOUNGER FOR RELIEF FROM THE AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

IdleAire Technologies Corporation ("IdleAire" or the "Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 case, hereby opposes the Motion of Nancy Younger and the Estate of William Younger (collectively, the "Movants") for Relief from the Automatic Stay Under Section 362 of the Bankruptcy Code filed on or about July 28, 2008 (the "Motion"). The Movants ask that this Court grant it relief from stay so that they may proceed with a product liability action commenced against the Debtor in the Circuit Court for Knox County in the State of Tennessee, Docket No. 1-183-08 (the "State Court Action") in May, 2008 to liquidate their personal injury claims. Given that the Debtor's insurer has twice denied coverage with respect to the Movants' claims, the Debtor will be forced to expend a substantial sum to defend the State Court Action, or at minimum, in litigating coverage with the insurer, whether the Movants agree to limit their recovery to the extent of any available insurance proceeds or otherwise. As such, and given the imminent closing of a sale of the Debtor's assets and conversion of this case to one under Chapter 7, it would be inappropriate to grant the Motion at this time and burden a Chapter 7 Trustee with the cost of defending the State Court action without giving the Trustee the opportunity to present his or her own challenge to the Motion. The Debtor submits that the Motion

should be denied, without prejudice to the Movants' right to seek relief from stay at a future point in the case, in order to preserve estate resources and to maintain the status quo until a Trustee is appointed. In support of this objection, the Debtor states the following:

## BACKGROUND

### The Chapter 11 Case

1. On or about May 12, 2008 (the "Petition Date"), IdleAire filed a voluntary petition pursuant to Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") commencing the above captioned case. The Debtor is operating as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. On or about May 21, 2008, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

3. Prior to the bankruptcy, the Debtor worked with its professionals to determine the most appropriate strategy to preserve the Company's value given a projected liquidity crisis. Ultimately, the Company elected to pursue a going-concern sale of its business assets and retained an investment banker to assist with the marketing of the Company for sale.

4. Negotiations ensued with interested parties, and the Company accepted a stalking-horse bid from IdleAire Acquisition Company, LLC ("IdleAire Acquisition Co."), an entity comprised of certain members of the Debtor's primary secured creditor. That same entity agreed to provide financing to the Company pending a closing of the sale.

5.  On or about May 28, 2008, the Court approved bidding procedures designed to maximize the value received for the Debtor's business in connection with sale of substantially all of the Debtor's assets. At the conclusion of an auction held on July 9, 2008, the Debtor considered all competing offers and selected the highest and best offer, which was submitted by IdleAire Acquisition Co. The Debtor presented the winning bid to the Court at a hearing held on or about July 11, 2008, and the Court subsequently authorized the sale of substantially all of the Debtor's assets to IdleAire Acquisition Co. on July 14, 2008. *See Order (A) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, (C) Exempting Such Sale and Assignment from any Stamp Tax or Similar Tax, and (D) Granting Related Relief* [Docket No. 277] (the "Sale Order").

6.  The closing with respect to the asset sale to IdleAire Acquisition Co. is tentatively scheduled to occur mid-August, 2008. Once the sale has been consummated, the Debtor will no longer have any employees and will take the necessary steps to wind down its affairs and convert its case to one under Chapter 7 of the Bankruptcy Code.

### The Motion and Litigation

7.  The Movants commenced the State Court Action on April 30, 2008, claiming damages from injuries allegedly caused from use of the Debtor's product on or about July 12, 2007, as a result of the alleged "malfunctioning and defective manufacture and design of the Debtor's HVAC system." *Motion* at ¶ 9. The Movants seek compensatory damages in an amount not to exceed eighteen million dollars. *See State Court Action Complaint, Exhibit A to the Motion.* As of the Petition Date, the State Court Action remained in the earliest stages of

litigation as the answer had not yet come due, discovery had not commenced, and no trial date had been scheduled.

8. During the relevant policy period from January 1, 2007 to January 1, 2008, associated with the claimed date of injury, the Debtor was insured, in pertinent part, under both a Commercial General Liability ("CGL") policy with a coverage limit in the amount of $1,000,000 per occurrence and an Umbrella Excess Liability ("UEL") policy with a coverage limit in the amount of $10,000,000 per occurrence (collectively, the "Insurance Policies") issued by Wausau Business Insurance Company (the "Insurer").

9. Upon notice of the Movants' claims, the Insurer declined to provide defense costs and/or to cover any loss to the Debtor through settlement or judgment.

10. Through the Motion, the Movants seek relief from the automatic stay to liquidate their product liability claims against the Debtor and its Insurer in the State Court Action. The Movants state the intention of not executing any judgment obtained from the State Court Action upon the Debtor, except to the extent of available insurance proceeds, and that if insurance coverage is insufficient, the Movants intend to seek further relief to collect any potential judgment against the Debtor in this forum.

11. The Movants conclude that "[b]ecause Debtor's insurer will pay for Debtor's defense and will pay any judgment up to the limits of liability, allowing the Movant's suit to go forward will not increase the financial pressures on the Debtor." *Motion* at ¶ 18.

12. As will be demonstrated below, "cause" does not exist to warrant lifting the automatic stay to proceed with the State Court Action at this time, and the Motion for Relief should be denied.

# ARGUMENT

13. Section 362(d)(1) provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--(1) for cause ..." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not specifically define "cause" and courts must instead determine whether "cause" exists in a particular case based on the totality of the circumstances. *See, e.g., In re Wilson,* 116 F.3d 87, 90 (3d Cir. 1997). "[C]ourts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant". *In re Continental Airlines, Inc.,* 152 B.R. 420, 424 (D. Del. 1993).

14. The automatic stay is one of the fundamental protections provided to debtors by the Bankruptcy Code. *See, e.g., Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection,* 474 U.S. 494, 503 (1986). As explained by the Court of Appeals for the Third Circuit, the underlying purpose of the automatic stay is to "prevent certain creditors from gaining preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Industries, Inc.,* 946 F.2d 1031, 1036 (3rd Cir. 1991).

15. In conjunction with examination of the underlying policies of the automatic stay, Courts will also consider three factors in examining the competing interests of the parties to determine whether the requisite cause exists: (1) the prejudice suffered by the debtor and debtor's estate if the stay is lifted to allow the continuation of a civil law suit; (2) the balancing of hardship between the parties; and (3) the probable success on the merits if the stay is lifted. *See In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993); *Matter of Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). "The most important factor in determining whether to grant relief from the automatic stay to permit litigation to proceed against a debtor in another forum is the effect on such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984).

16. In the present case, granting relief from the automatic stay and allowing the continuation of the State Court Action will impose a substantial hardship upon the Debtor and the estate and impede the administration of the estate. As the Insurer has declined to defend the State Court Litigation, if the Motion is allowed, the Debtor will be forced to incur the cost of defense of the State Court Litigation as well as the cost of litigating with the Insurer regarding whether the Insurer improperly denied coverage under the policy. This case is therefore distinguishable from cases such as *In re Holtkamp*, 669 F.2d 505, 508-09 (7th Cir.1982), which have been cited by the Movants.

17. Given the status of the case, the winding down of the Debtor's operations, and the imminent conversion to a Chapter 7 liquidation, the Debtor submits that it would be inappropriate to allow the Motion at this time. Allowance of the Motion would clearly result in the unnecessary expenditure of finite estate resources, prejudicing the estate and its creditors and the Chapter 7 Trustee. *See, e.g., Continental Airlines*, 152 B.R. at 424 (stay should not be lifted if the debtor will be prejudiced). To the contrary, given the early stage of the State Court Action, the delay associated with conversion and appointment of a Chapter 7 Trustee will not prejudice the Movants.

18. Accordingly, the Debtor respectfully requests that the Motion be denied, without prejudice, or continued generally until after such time as the case is converted to Chapter 7 and a Chapter 7 Trustee is appointed.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

# RELIEF REQUESTED

**WHEREFORE**, the Debtor respectfully requests the Court deny the Movants' request for relief from the automatic stay without prejudice and grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       August 14, 2008

Respectfully submitted,

*/s/ William A. Hazeltine*

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
Elihu E. Allinson, III (No. 3476)
SULLIVAN HAZELTINE ALLINSON LLC
4 East 8th Street, Suite 400
Wilmington, DE 19801
6Telephone: (302) 428-8191
Facsimile: (302) 428-8195

-and-

John J. Monaghan (Mass Bar #546454)
Lynne B. Xerras (Mass Bar #632441)
Diane N. Rallis (Mass Bar #652203)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Telephone: (617) 523-2700
Facsimile: (617) 523-6850

ATTORNEYS FOR THE DEBTOR AND
DEBTOR IN POSSESSION

# 5519807_v2

# CERTIFICATE OF SERVICE

I, William A. Hazeltine, hereby certify that on the 14th day of August, 2008, I caused a copy of the foregoing *Debtor's Opposition to the Motion of Nancy Younger and the Estate of William Younger for Relief from the Automatic Stay Under Section 362 of the Bankruptcy Code* to be served upon the party listed below via hand delivery.

John C. Phillips, Jr., Esquire
Phillips, Gold & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

Under penalty of perjury, I declare the foregoing to be true and correct.

*August 14, 2008* /s/ *William A. Hazeltine*
Date William A. Hazeltine