# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | : Chapter 7 |
| IDLEAIRE TECHNOLOGIES CORPORATION, | : Case No. 08-10960 (KG) |
| | : |
| Debtor. | : Hearing Date: 4/13/2010 @ 02:00 PM |
| | : Objection Deadline: 4/6/2010 |

## SECOND RENEWED MOTION OF NANCY YOUNGER AND THE ESTATE OF WILLIAM YOUNGER FOR RELIEF FROM STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

Nancy Younger and the Estate of William Younger ("Mr. and Mrs. Younger" or the "Youngers"), through their undersigned counsel, Phillips, Goldman & Spence, P.A., hereby move this Court for entry of an Order pursuant to Section 362(d) of the Bankruptcy Code granting them relief from the automatic stay. In support of their motion, the Youngers state the following:

### JURISDICTION

1. This Court has jurisdiction over the present motion pursuant to 28 *U.S.C.* §§ 157 and 1334. This matter is a core proceeding pursuant to 28 *U.S.C.* § 157(b)(2)(G). Venue of this motion is proper in this district pursuant to 28 *U.S.C.* §§ 1408 and 1409. The statutory predicate for the relief requested is 11 *U.S.C.* § 362(d).

### FACTS

2. On or about July 12, 2007, Nancy Younger and her now deceased husband, William Younger, were parked in their truck, which they used for long distance hauling, at a truck stop in Knoxville, Tennessee. The Youngers were long distance truckers, and were sleeping in their cab using the truck stop as a rest stop.

3. Affixed to the Youngers' truck was an IdleAire HVAC delivery system product, which had been purchased by the Youngers, as advertised by Debtor, to provide heating, cooling and ventilation in the cab of their truck without the necessity of leaving the engine running.

4. Although Debtor advertised, sold and warranted the product, including the unit sold to the Youngers, as a system that would remove 100% of the emissions associated with extended diesel idling (including carbon monoxide), the unit on the Youngers' truck failed due to design and manufacturing defects and system malfunctions.

5. On or about July 12, 2007, the Youngers were using Debtor's product as instructed when, without warning, they were overcome by carbon monoxide gas that was drawn into the cab of their truck through Debtor's HVAC system from diesel emissions of nearby idling trucks parked in their vicinity at the truck stop. Carbon monoxide is odorless, tasteless, and colorless such that the Youngers had no means of detecting its presence, particularly in light of Debtor's representations and warranties that its HVAC system would remove 100% of all noxious emissions from diesel idling, including carbon monoxide. The concentration levels of the carbon monoxide and the length of the Youngers' unknowing exposure thereto rendered them unconscious and, over time, worked a severe assault to their brains, lungs and hearts.

6. Debtor's product, as sold to the Youngers, was unreasonably dangerous and defectively designed, manufactured, and installed, and was provided with unreasonably inadequate instructions and warnings.

7. As a direct and proximate result of the Youngers' exposure to carbon monoxide and/or other noxious fumes and gases present in the cab of their truck due to the malfunctioning and defective manufacture and design of Debtor's HVAC system, the Youngers eventually

sustained severe and permanent injuries, including permanent brain damage. Mr. Younger's injuries eventually resulted in his death.

8. As a result of her injuries, Mrs. Younger was eventually permanently and totally disabled, and unable to work. She has required, and will continue to require, medical treatment and attendant care.

9. Mr. Younger eventually suffered severe and debilitating injuries which resulted in his death, giving rise to a claim against Debtor for wrongful death and for his suffering prior to his death. Also, as a result of his injuries, Mr. Younger required extensive medical treatment prior to his death, for which the Youngers remain liable.

10. The negligent conduct of Debtor caused by its failure to exercise due care in the design, manufacture, testing, analysis, assembly, marketing, sale, provision of adequate instructions and warnings of the HVAC system was clearly in violation of Tennessee law.

11. On or about April 30, 2008, the Youngers commenced an action in the Circuit Court for Knox County in the State of Tennessee, styled; *Nancy Younger, individually and as surviving spouse of William Younger, Deceased, and the estate of William Younger, through surviving spouse Nancy Younger, v. IdleAire Technologies Corporation, a for profit corporation*, Case No. 1-183-08 (the "State Court Action").

12. The Debtor has insurance coverage through Wausau Business Insurance Company and Employers Insurance of Wausau Company (collectively, the "Wausau Insurers"), under Commercial General Liability Policy No. YYK-Z41-435246-027 in the amount of $ 1,000,000 per occurrence, and Excess/Umbrella Commercial Liability Policy No. THC-Z41-435246-057 in the amount of $10,000,000.

## PROCEDURAL BACKGROUND

13. On May 12, 2008, Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

14. On May 21, 2008, an Official Committee of Unsecured Creditors was appointed by the U.S. Trustee. The Committee retained counsel.

15. On May 6, 2009, the Debtor's case was converted to a case under Chapter 7 and Alfred Giuliano has been appointed the Chapter 7 trustee.

16. On July 28, 2008, the Youngers filed in this proceeding a Motion for Relief from Stay (the "First Motion for Relief from Stay") [Dkt. No. 304] seeking relief from the automatic stay for the purpose of liquidating their claims against Debtor in the State Court Action, but with the stipulation that recovery of any judgment obtained in that litigation would be pursued only against Debtor's liability insurance with the Wausau Insurers.

17. On August 13, 2008, the Wausau Insurers initiated Adversary Proceeding No. 08-51227 (the "Adversary Proceeding") by filing with this Court a Complaint against the Youngers and Debtor in which they sought a declaration that the insurance policies they issued to Debtor provide no coverage for the Youngers' tort claims against Debtor. The Wausau Insurers also simultaneously filed an Opposition to the First Motion for Relief from Stay [Dkt. No. 326] in which they requested that relief from stay not be granted until the coverage issues raised in the Adversary Proceeding had been resolved.

18. On August 14, 2008, Debtor filed an Opposition to the First Motion for Relief from Stay [Dkt. No. 327] on the grounds that, if the requested relief were granted, Debtor would suffer substantial hardship in the form of costs associated with litigating the State Court Action and litigating coverage issues with the Wausau Insurers.

19. On September 26, 2008, Debtor's counsel submitted a Certification of Counsel attaching a Stipulation (the "Stipulation") [Dkt No. 373] which "resolved" the First Motion for Relief from Stay and the Opposition thereto filed by Debtor and the Wausau Insurers. In the Stipulation, which had been circulated among counsel for Debtor and the Wausau Insurers, among others, the parties agreed, in relevant part, that:

- The Debtor assigned to the Youngers all rights and claims it has or may have against the Wausau Insurers in connection with insurance coverage for the claims asserted in the State Court Action;

- The Youngers would assume the defense of Debtor in the Adversary Proceeding;

- Debtor withdrew its Opposition to the First Motion for Relief from Stay; and

- The Youngers' sole right of enforcement of any judgment or settlement with Debtor arising from the State Court Action would be only from Debtor's liability insurance with the Wausau Insurers.

20. On September 29, 2008, this Court entered an Order approving the Stipulation [Dkt No. 380].

21. On October 27, 2008, the Wausau Insurers filed, in the Adversary Proceeding, a Motion for Summary Judgment as to the unavailability of coverage under their policies. On December 3, 2008, Debtors and the Youngers opposed that motion and filed a Cross Motion for Summary Judgment as to coverage.

22. After conducting a hearing on the matter, this Court denied the Wausau Insurers' Motion for Summary Judgment and granted the Youngers' Cross Motion for Summary Judgment on February 18, 2009, finding that the pollution exclusions contained in the subject policies were inapplicable. See Opinion and Order the Adversary Proceeding at Dkt. No. 28.

23. On March 2, 2009, the Wausau Insurers filed a Motion for Leave to Appeal the Court's February 18, 2009 Order and expressed their intention to appeal the adverse rulings on

coverage to the District Court and the U.S. Third Circuit Court of Appeals, and to thereafter seek certification to the Tennessee Supreme Court. Clearly, these appeals will take years to process.

24. On June 2, 2009, the Youngers filed a Renewed Motion for Relief from Stay [Dkt. No. 487].

25. On June 24, 2009, the Wausau Insurers filed their Objection to the Youngers' Renewed Motion for Relief from Stay [Dkt. No. 503].

26. On June 30, 2009, the Youngers filed a Reply in Support of their Renewed Motion for Relief from Stay [Dkt. No. 505].

27. After hearing argument on the motion, this Court decided to hold the Youngers' Renewed Motion for Relief from Stay in abeyance until such time as the Court had conducted an expedited trial and ruled upon the remaining declaratory judgment issues raised by the Wausau Insurers in the Adversary Proceeding, all of which related to Debtor's alleged breached of certain provisions in the Wausau Insurers' policies. By Order dated August 21, 2009 [Dkt No. 534], the Court stated:

> [I]f the Court determines that Wausau's coverage defenses are valid, there will be no funding for any verdict in favor of the Youngers. At the same time, the Court is mindful that "justice delayed is justice denied" and if coverage exists, the Youngers may be entitled to proceed with the Tennessee Action given the injuries suffered and the delay that has already occurred. The Court is not deciding those issues at this time. Rather, the Court will expedite the trial on the Breach Issues and, if the Youngers prevail will then reexamine whether to grant the Stay Relief Motion....

28. This Court held an expedited trial on November 2, 2009 and, on February 17, 2010, issued Findings of Fact and Conclusions of Law and an Order finding in favor of the Youngers on all of the remaining declaratory judgment issues raised by the Wausau Insurers in the Adversary Proceeding [Dkt. Nos. 178 & 179]. The Findings of Fact and Conclusions of Law and Order make clear that coverage exists under the Wausau Insurers' policies for the Youngers'

6

claims in the State Court Action and that, if the Youngers establish liability in the State Court Action, the Wausau Insurers are obligated to provide indemnity.

## MODIFICATION OF THE AUTOMATIC STAY IS WARRANTED TO PERMIT THE YOUNGERS TO LIQUIDATE THEIR CLAIMS AGAINST DEBTOR

29. The Youngers now seek relief from the automatic stay so they can proceed to liquidate their claims against the Debtor in the State Court Action. As set forth in the attached proposed order and the Stipulation (which this Court approved on September 29, 2008), the relief requested herein would not entitle the Youngers to execute against the Debtor's assets on any ultimate judgment except to the extent of available insurance coverage. The Youngers have expressly waived their right to receive any distribution from the Debtor or its Estate. Significantly, subject to the conditions set forth in the Stipulation (which the Youngers have expressly accepted and this Court has expressly approved), Debtor withdrew its objection to the relief from stay the Youngers now seek in the instant motion.

30. Section 362(d)(1) of the Bankruptcy Code provides that:

> (d) On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay —
> (1) for Cause, including the lack of adequate protection of an interest in property or such party in interest . . . .

11 *U.S.C.* § 362(d)(1).

31. Relief from the automatic stay is permitted under 11 *U.S.C.* § 362(d)(1) for cause. The United States District Court for the District of Delaware set out its analysis for determining whether there is cause to lift a stay in *American Airlines, Inc. v. Continental Airlines, Inc. (In Re Continental Airlines, Inc)*, 152 B.R. 420, 424 (D. Del. 1993). This Court must consider the

policies underlying the stay and the competing interests of the debtor and the movant. *Id.* Weighing the competing interests of the parties involves considering the prejudice to the debtor if the stay is lifted, the balance of the hardships on the parties, and the likelihood of success on the merits if the stay is lifted. *Id.*

32. According to the District Court in *American Airlines*, the automatic stay serves three policies: relieving the debtor of the financial pressures that caused the bankruptcy; protecting the bankruptcy estate from unnecessary lawsuits; and implementing a system that treats all creditors fairly. 152 B.R. at 426. Lifting the stay in this case would not contravene these policies. Because the Youngers would pursue only the Wausau Insurers to pay any judgment against Debtor in the State Court Action, allowing the Youngers' suit to go forward will not increase the financial pressures on Debtor. Moreover, allowing the Youngers' suit to proceed will not result in unnecessary litigation. Their claims are unliquidated personal injury claims, and there will have to be a jury trial in either the Circuit Court for Knox County in the State of Tennessee or the Federal District Court for the District of Delaware to determine the amount of the liability. 28 *U.S.C.* 157(b)(5); *Pettibone Corporation v. Easley*, 935 F.2d 120, 123 (7th Cir. 1991). Finally, allowing the Youngers to pursue their claims in state court will not give them an unfair advantage over other creditors. The State Court Action will have no impact on the bankruptcy, as the Youngers have waived their right to collect any funds from the Debtor's Estate.

33. In the State Court Action, the Youngers are pursuing common law negligence and products liability claims against Debtor. The Tennessee courts created these causes of action and are best suited to apply them to the facts surrounding the Youngers' injuries and Mr. Younger's death. Allowing the Youngers to proceed in the Tennessee State Court would not adversely

impact the Debtor's Estate because they have, pursuant to the Stipulation, expressly waived their right to receive any distribution from Debtor or its Estate. Allowing the Youngers' claims to proceed would also honor their choice of a forum.

34. Case law also emphasizes that relief from the stay in this case will promote judicial efficiency. In *Gray v. Rounseville, (In Re Rounseville)*, 20 B.R. 892, 893 (Bankr. D.R.I. 1982), the bankruptcy court concluded that lifting the stay was "in the best interest of the efficient administration of the [bankruptcy] case." The court based its decision on the fact that some forum was going to have to address the issues, and the state court could hear the case without undue delay. Allowing the Tennessee Circuit Court to liquidate the Youngers' tort claims will promote judicial economy, for that court is best suited to adjudicate those state law claims.

35. The first and second prongs of the test for weighing the competing interests of the parties involve evaluating any prejudice or hardship to Debtor from lifting the stay. These issues obviously will not affect Debtor because, as set forth *supra*, it withdrew its objection to the Youngers' request for relief from stay in exchange for measures designed to remove any threat of such prejudice or hardship. Since dissipation of Debtor's assets and distraction from its bankruptcy proceeding are not concerns in this instance, Debtor will not suffer any prejudice or hardship from lifting the stay.

36. Conversely, the Youngers have incurred actual medical and out-of-pocket expenses which are enormous compared to their means. They have experienced severe mental anguish, pain, suffering, death and loss of spouse, which claims must also be liquidated and paid. In contrast to Debtor, the Youngers will suffer severe prejudice if the Court declines to lift the stay because the Wausau Insurers intend to pursue – over the course of **years** – multiple appeals

of this Court's February 18, 2009 and February 17, 2010 rulings, which surely will further delay the discovery and trial of their tort claims.[1]

37. On a more personal and practical level, Mrs. Younger is prejudiced by each and every day that passes without the opportunity to vindicate her rights and the rights of her deceased husband in Tennessee State Court. She is already seriously injured and unable to independently perform most of life's basic functions as a result of the carbon monoxide poisoning, and her quality of life is deteriorating rapidly due to lack of funds for medical care that could at least slow her decline. The Wausau Insurers have vast amounts of time and money at their disposal, but would rather spend that time and money to further delay the resolution of this matter through multiple appeals than to pay the Youngers or litigate liability in this matter. Obviously, the Wausau Insurers' goal is to browbeat and outlast Mrs. Younger, whose life will be shortened and made more difficult than the carbon monoxide poisoning has already made it if the Wausau Insurers are allowed to further protract this litigation and delay resolution of her tort claims.

38. In addition to considering the prejudice suffered by the debtor and the movant, a court considering a motion for relief from stay must consider the movant's likelihood of success on the merits, but the bar is quite low. In *American Airlines*, 152 B.R. at 426, the District Court stated that "even a slight probability of success on the merits may be sufficient to support lifting the stay in an appropriate case." Similarly, the Seventh Circuit held in *International Business Machines v. Fernstrom Storage and Van Company (In Re Fernstrom Storage and Van*

---

[1] Refusing to lift the stay will further prejudice the Youngers because it will result in duplicative litigation and may result in moving the litigation to Delaware. The Bankruptcy Court for the District of Delaware has concluded that the risk of duplicative litigation poses a hardship to a plaintiff. *Izzarelli v. Rexene Products Company (In Re Rexene Products Company)*, 141 B.R. 574, 577 (Bankr. D. Del. 1992). *See also, Murray Industries, Inc. v. Aoristic Chemical Corporation (In Re Murray Industries, Inc.)*, 121 B.R. 635, 637 (Bankr. M.D. Fla. 1990)(holding the same).

*Company)*, 938 F.2d 731, 737 (7th Cir. 1991), that it was sufficient that the movant's suit was not frivolous. And in *Rexene*, the court stated that "the required showing is very slight." 141 B.R. at 578. The *Rexene* court further stated that "[o]nly strong defenses to state court proceedings can prevent a bankruptcy from granting relief from the stay in cases where, as here, we believe that the decision-making process should be relegated to bodies other than this court." *Id.* (quoting *Fonseca v. Philadelphia Housing Authority (In Re Fonseca)*, 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990)).

39. As the evidence at the November 2, 2009 trial demonstrated, the Youngers clearly have much more than a slight probability of success on the merits of their tort claims. In addition, there is no question that they suffered an injury. Mr. Younger is deceased as a result of the injuries he sustained from the incident. Mrs. Younger has suffered permanent injuries which have confined her to a wheelchair, prevent her from maintaining employment or living independently and require attendant medical care and therapy.

40. Now that the availability of coverage under the Wausau Insurers' policies has been confirmed in the Adversary Proceeding, the Youngers need to liquidate any recovery to which they are determined to be entitled so that it can be funded from the insurance proceeds. The alternative is to require the Youngers to wait indefinitely and without any legal or equitable reason while the Wausau Insurers litigate every possible coverage issue of which they can conceive and exhaust multiple levels of all appeals. This would be particularly inequitable in this instance since the Wausau Insurers had the opportunity but declined to intervene in the State Court Action to obtain a coverage determination from the Tennessee State Court and, now that this Court has found against them, have expressed an intention to take a multi-step appeal to the Third Circuit Court of Appeals in order to ask that Court to certify the question of coverage to

the Tennessee Supreme Court. Having foregone the more expeditious route for obtaining such a ruling, the Wausau Insurers, not Mrs. Younger, should bear any adverse consequences arising from that decision.

41.  In sum, all of the factors enunciated by the Delaware District Court in *American Airlines* favor lifting the stay. Lifting the stay will not contravene any of the policies underlying the stay, for it will not result in unnecessary litigation or an increase in the financial pressure on Debtor and will not treat creditors unfairly. The Youngers' claims are covered by insurance which will cover the costs of defending the suit and paying the judgment. Moreover, the Youngers have expressly waived their right to receive any distribution directly from Debtor or the Estate. As a result, lifting the stay will not increase the financial pressure on Debtor. Lifting the stay also will not subject Debtor to unnecessary litigation because the Youngers will have to liquidate their claims in some forum regardless of whether it is the Tennessee Circuit Court or the United States District Court. Furthermore, the competing interests of Debtor and the Youngers clearly favor lifting the stay. Neither Debtor nor its Estate will suffer prejudice or hardship from lifting the stay, while maintaining the stay will cause irreparable prejudice and hardship to the Youngers. Moreover, as the evidence at the November 2, 2009 trial clearly demonstrated, the Youngers have an excellent chance of prevailing on the merits. Recognizing all of the above, Debtor previously withdrew any objection to the very relief from stay the Youngers now seek.

## THE WAUSAU INSURERS ARE WITHOUT STANDING TO OPPOSE THE REQUESTED RELIEF FROM THE AUTOMATIC STAY

42. Any protestations by the Wausau Insurers as to the Youngers' request for relief from stay should fall on deaf ears since the Wausau Insurers are without standing to oppose the that request.

43. The purpose of the automatic stay is "to afford the debtor a 'breathing spell' by halting the collection process. It enables the debtor to attempt a repayment or reorganization plan with an aim toward satisfying existing debt." In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 100 (3d Cir. 2008) (quoting In re Siciliano, 13 F.3d 748, 750 (3d Cir.1994)). It also is intended to forestall depletion of the debtor's assets due to legal costs incurred to defend proceedings against it, to prevent certain creditors from gaining a preference for their claims and to generally avoid interference with the debtor's orderly liquidation or rehabilitation. See Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982). Because the Wausau Insurers are not the Debtor or creditors of the Debtor in this Bankruptcy proceeding (they are merely the Debtor's liability and excess insurers) and the Youngers are not seeking to recover Estate assets, the relief from stay requested by the Youngers' does not implicate or threaten any legally protected interest of the Wausau Insurers. With no legally protected interest at stake, the Wausau Insurers are without standing to oppose the Youngers' request for relief from stay.

44. The decision of the Bankruptcy Court for the Eastern District of New York in In re Grace Industries, Inc. is instructive in this regard. In Grace, the debtor was sued in various state court matters and, in several instances, consented to relief from the automatic stay to permit the plaintiffs in those matters to pursue their claims in state court, but with the proviso that any

recovery be limited to the proceeds from the debtor's available liability insurance coverage. 341 B.R. 399, 401 (Bankr. E.D.N.Y. 2006). The liability insurer commenced an adversary proceeding in the bankruptcy court seeking, among other things, a declaration that it had no obligation under the policy to provide the debtor with such coverage. Id. In support, the insurer argued that the debtor breached the policy's cooperation clause by agreeing to lift the automatic stay to the extent of available insurance coverage. Id. at 404. The Bankruptcy Court disagreed:

> The automatic stay does not shield issuers of liability insurance policies from making payments which would otherwise be due under the policy by reason of the insured's bankruptcy. The purpose of the automatic stay is to protect property of the estate from being seized by individual creditors, so that assets will be available for proper distribution to the creditor body. Where, as here, the plaintiffs have agreed that they will not seek any recovery from estate assets, there is no basis for continuing the automatic stay. Put differently, **where a plaintiff seeks relief from the stay to pursue a claim in another forum, the interests or desires of the insurance company which provides coverage of the claim are not considered in determining whether the stay should be lifted.**

Id. at 405 (emphasis added) (internal citation omitted).

45. Several other courts have concluded that, when a state court litigant seeks relief from the automatic stay to pursue a judgment against a debtor that it intends satisfy exclusively from the debtor's liability insurance, the liability insurer is **without standing** to oppose such relief. See, e.g., In the Matter of New Era, Inc., 135 F.3d 1206, 1210 (7th Cir. 1998) ("Nor would [the liability insurer] have had standing to submit even a timely opposition to the lifting of the stay, since the stay is for the protection of the debtor and its creditors.") (citing *Collier on Bankruptcy* ¶ 362.03 (15th ed., Lawrence P. King ed.1996)); In re Malone Properties, Inc., 1992 WL 611459, *3 (Bankr. S.D. Miss. June 17, 1992) (attached as Exhibit A) (finding that debtor's liability insurer had no standing to appear at hearing on motion to lift stay because any policy defenses it had to coverage "would not... have been an appropriate matter to raise at a hearing on the motion to lift stay"); see also In re Clemmer, 178 B.R. 160, 167 (Bankr. E.D. Tenn. 1995)

14

(finding that debtor's liability insurer did not have standing to challenge state court plaintiff's alleged violation of automatic stay by garnishing annuity funds payable to debtor by insurer).

46. As set forth *supra*, Debtor assigned to the Youngers its rights under the Wausau Insurers' policies, and the Youngers agreed to defend Debtor in the Adversary Proceeding and expressly waived their right to receive any distribution from Debtor or its Estate, thereby foreclosing the Youngers from satisfying any judgment in the State Court Action directly against the assets of Debtor or its Estate. As such, Debtor withdrew its objection to the relief from stay the Youngers now seek in the instant motion, and none of Debtor's creditors have objected to the relief from stay.

47. Unlike Debtor, Debtor's creditors or any other parties entitled to receive assets of the Estate, the Wausau Insurers simply cannot be heard to complain about the requested relief from stay because they "have no horse in this race." Moreover, the Wausau Insurers would not suffer any prejudice if the State Court Action were allowed to proceed now since any expenses in connection with litigating that action would be incurred by persons **other than the Wausau Insurers** – *i.e.*, the parties to the Tennessee State Court Action and the Tennessee State Court itself. While it is true that the Wausau Insurers can choose to provide or not provide a defense to their insured (*i.e.*, the Debtor) in the State Court Action as they see fit in order to best protect their business interests, having to make that choice does not constitute prejudice or implicate their legally protected interests, as allowing that action to proceed would in no way increase the Wausau Insurers' coverage obligations under their policies or otherwise expose them to risks they did not already assume when they issued those policies.

WHEREFORE, the Youngers respectfully request that this Court enter an order modifying the automatic stay to allow them to prosecute their claims against Debtor IdleAire Technologies Corporation in order to liquidate their claims as stated in their Tennessee Circuit Court Action and collect from any applicable insurance the liquidated value of their claims.

Respectfully submitted,

JOHN C. PHILLIPS, JR, ESQUIRE (#110)
DAVID A BILSON, ESQUIRE (#4986)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
Counsel to Nancy Younger and the Estate of William Younger

Dated: March 10, 2010