**EXHIBIT 2**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| IDLEAIRE TECHNOLOGIES CORPORATION, ) | Case No. 08-10960 (KG) |
| ) | |
| Debtor. ) | Objection Deadline: 8/13/08 |
| ) | Hearing Date: 8/19/08 @ 11:00 A.M. |

## MOTION OF NANCY YOUNGER AND THE ESTATE OF WILLIAM YOUNGER FOR RELIEF FROM STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

Nancy Younger and the Estate of William Younger, ("Mr. and Mrs. Younger", or "Movants"), through their undersigned counsel, Phillips, Goldman & Spence, P.A., hereby move this Court for entry of an order pursuant to Section 362(d) of the Bankruptcy Code granting them relief from the automatic stay. In support of their motion, Movants state the following:

### JURISDICTION

1. This Court has jurisdiction over the present motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). Venue of this motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested is 11 U.S.C. § 362(d).

### PROCEDURAL BACKGROUND

2. On May 12, 2008, (the "Petition Date"), the above-referenced debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3. On May 21, 2008, an Official Committee of Unsecured Creditors (the "Committee") was appointed by the U.S. Trustee. The Committee has retained counsel.

# FACTS

4. On or about July 12, 2007, the Movants, Nancy Younger and her now deceased husband, William Younger were parked in their truck, used for long distance hauling, at a truck stop in Knoxville, Tennessee. Mr. and Mrs. Younger were long distance truckers, and were sleeping in their cab using the truck stop as a rest stop.

5. Affixed to the Youngers' truck was the IdleAire HVAC delivery system product, which had been purchased by the Movants, as advertised by the Debtor, to provide heating, cooling and ventilation in the cab of their truck without the necessity of leaving the engine running.

6. Although the Debtor advertized, sold and warranted the product, including the unit sold to the Movants, as a system that would remove 100% of the emissions associated with extended diesel idling (including carbon monoxide), the unit on the Movants' truck failed due to design and manufacturing defects and system malfunctions.

7. On or about July 12, 2007, the Movants were using the Debtor's product as instructed when, without warning, they were overcome by carbon monoxide gas that was sucked into the cab of their truck through Debtor's HVAC system from diesel emissions of nearby idling trucks parked in their vicinity at the truck stop. Carbon monoxide is odorless, tasteless, and colorless such that the Movants had no means of detecting its presence, particularly in light of Debtor's representations and warranties that its HVAC system would remove 100% of all noxious emissions from diesel idling, including carbon monoxide. The concentration levels of the carbon monoxide and the length of Mr. and Mrs. Younger's unknowing exposure thereto rendered them unconscious and worked serve assault to their brains, lungs and hearts.

8. Debtor's product, as sold to the Movants, was unreasonably dangerous and defectively designed, manufactured, and installed, and was provided with unreasonably inadequate instructions and warnings.

9. As a direct and proximate result of the Movants' exposure to carbon monoxide and/or other noxious fumes and gases in the cab of their truck due to the malfunctioning and defective manufacture and design of the Debtor's HVAC system, Mr. and Mrs. Younger sustained severe and permanent injuries, including permanent brain damage. Mr. Younger's injuries eventually resulted in his death.

10. As a result of her injuries, Mrs. Younger is permanently and totally disabled, and unable to work. She has required, and will continue to require, medical treatment and attendant care.

11. As a result of his injuries, Mr. Younger suffered severe and debilitating injuries which eventually resulted in his death, giving rise to a claim against the Debtor for wrongful death and for his suffering prior to his death. Also, as a result of his injuries, Mr. Younger required extensive medical treatment prior to his death, for which the Movants' remain liable.

12. The negligent conduct of the Debtor caused by its failure to exercise due care in the design, manufacture, testing, analysis, assembly, marketing, sale, provision of adequate instructions and warnings of the Excel HVAC system, were clear and concise violations of Tennessee law.

13. On or about April 30, 2008, the Movants commenced an action in the Circuit Court for Knox County in the State of Tennessee, styled; *Nancy Younger, individually and as surviving spouse of William Younger, Deceased, and the estate of William Younger, through surviving spouse Nancy Younger, v. IdleAire Technologies Corporation, a for profit corporation,*

4

Case No. 1-183-08 (the "State Court Action"). A copy of the Summons and Complaint are attached hereto as Exhibit "A".

14. Upon information and belief, the Debtor had insurance coverage through the Wausau Insurance Companies, under its Commercial General Liability Policy No. YYK-Z41-435246-027 in the amount of $ 1,000,000 per occurrence and its Excess/Umbrella Commercial Liability Policy No. THC-Z41-435246-057 in the amount of $10,000,000. Copies of the declaration sheets for the policies are attached hereto as Exhibit "B".

### MODIFICATION OF THE AUTOMATIC STAY IS WARRANTED TO PERMIT THE MOVANTS TO LIQUIDATE THEIR CLAIMS AGAINST THE DEBTOR

15. Movants seek relief from the automatic stay for the purpose of liquidating their claims against the Defendant and its insurance companies in the State Court Action. The relief requested herein would not entitle the Movants to execute upon any ultimate judgment against the Debtor, except to the extent of available insurance coverage. To the extent the Movants reduce their claims to a judgment, the Movants will only seek further relief from this Court as necessary to collect upon that judgment should there not be sufficient available insurance coverage.

16. Section 362(d)(1) of the Bankruptcy Code provides that:

> (d) On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay —
> (1) for Cause, including the lack of adequate protection of an interest in property or such party in interest . . ..

11 U.S.C. § 362(d)(1).

17. Relief from the automatic stay is permitted under 11 U.S.C. § 362(d)(1) for sufficient cause. The United States District Court for the District of Delaware set out its analysis for determining whether there is cause to lift a stay in American Airlines, Inc. v. Continental Airlines, Inc. (*In Re* Continental Airlines, Inc), 152 B.R. 420, 424 (D. Del. 1993). This Court must consider the policies underlying the stay and the competing interests of the debtor and the movant. Id. Weighing the competing interests of the parties involves considering the prejudice to the Debtor if the stay is lifted, the balance of the hardships on the parties, and the likelihood of success on the merits if the stay is lifted. Id.

18. According to the District Court in American Airlines, the automatic stay serves three policies: relieving the debtor of the financial pressures that caused the bankruptcy; protecting the bankruptcy estate from unnecessary lawsuits; and implementing a system that treats all creditors fairly. 152 B.R. at 426. Lifting the stay in this case would not contravene these policies. The financial pressures that forced Debtor into bankruptcy do not stem from the Movants' suit. Because Debtor's insurer will pay for Debtor's defense and will pay any judgment up to the limits of liability, allowing the Movants' suit to go forward will not increase the financial pressures on Debtor. Similarly, allowing the Movants' suit to proceed will not result in unnecessary litigation. Movants' claims are unliquidated personal injury claims, and there will have to be a jury trial in the Circuit Court for Knox County in the State of Tennessee or the Federal District Court for the District of Delaware to determine the amount of the liability. 28 U.S.C. 157(b)(5); *Pettibone Corporation v. Easley*, 935 F.2d 120, 123 (7th Cir. 1991). Finally, allowing Movants to pursue their claims in state court will not give them an unfair advantage

6

over other creditors. To the extent that Debtor's insurance does not satisfy the judgment, Movants will return to this Court where they will compete with all of the other unsecured creditors.

19.     The legislative history of the 1978 Bankruptcy Act emphasizes that allowing a state court to liquidate a claim is consistent with the policies underlying the automatic stay:

> Undoubtedly the court will lift the stay for proceedings before specialized or nongovernmental tribunals to allow those proceedings to come to a conclusion. Any party desiring to enforce an order in such a proceeding would thereafter have to come before the bankruptcy court to collect assets. Nevertheless, it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

S. Rep. No. 95-989, 1978 U.S.C.C.A.N. 5787, 5836. This legislative history recognizes that some claims are best resolved in a forum other than the bankruptcy court as long as that resolution does not adversely impact the bankruptcy estate. *Holtkamp v. Littlefield (In Re Holtkamp)*, 669 F.2d 505, 508 (7th Cir. 1982); *Izzarelli v. Rexene Products Company (In Re Rexene Products Company)*, 141 B.R. 574 (Bankr. D. Del. 1992) (quoting similar language from H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977)); *Mattingly v. Newport Offshore, Ltd. (In Re Newport Offshore, Ltd.)*, 59 B.R. 283, 285-86 (Bankr. D. R.I. 1986); *Carter v. Larkham (In Re Larkham)*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983). In the present case, the Movants are pursuing common law negligence and products liability claims against Debtor. The Tennessee courts created these causes of action and are best suited to determining their application to the facts surrounding Mr. and Mrs. Younger's injuries and Mr. Younger's death. Allowing the Movants to proceed in the Tennessee State Courts would not adversely impact the bankruptcy estate because the Movants would have to come before this Court before executing on Debtor's

property. Allowing Movants' claims to proceed would also honor Movants' choice of a forum and free the bankruptcy and district courts to deal with other matters regarding the reorganization of Debtor in this case.

20. Case law also emphasizes that relief from the stay in this case will promote judicial efficiency. In *Gray v. Rounseville, (In Re Rounseville)*, 20 B.R. 892, 893 (Bankr. D.R.I. 1982), the bankruptcy court concluded that lifting the stay was "in the best interest of the efficient administration of the [bankruptcy] case." The court based its decision on the fact that some forum was going to have to address the issues, and the state court could hear the case without undue delay. Id. Likewise, the Tenth Circuit stated in *Transamerica Insurance Company v. Olmstead (In Re Olmstead)*, 608 F.2d 1365, 1368 (10th Cir. 1979), that "[i]t is obvious ... that the Bankruptcy Court will save considerable time, effort, and money by awaiting the outcome of the liability proceeding...." And in *Mattingly v. Newport Offshore, Ltd. (In Re Newport Offshore, Ltd.)*, 59 B.R. 283, 285 (Bankr. D.R.I. 1986), the court stated, "We also agree ... that 'enhanced efficiency would lie in allowing the case to be heard in the forum with original jurisdiction to hear state law claims,' and that '[t]here are no goals or purposes of the Bankruptcy Code which are furthered by retention of this case in this court.'" Finally, in *Carter v. Larkham (In Re Larkham)*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983), the court stated that "permitting the liability issues to be decided in another tribunal would not dismember the bankruptcy estate and appears to be consistent both with the congressional intent underlying the Bankruptcy Act of 1978 and with the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*"[1] Allowing the Tennessee Circuit Court to liquidate Movants' claims will promote

---

[1] The Supreme Court held in *Northern Pipeline* that only Article III courts, not bankruptcy courts, could decide cases involving private rights. *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 67-72, 91-92 102 S. Ct. 2858, 2869-72, 2881-82 73 L. Ed. 2d 598 (1982).

8

judicial economy, for the Tennessee Circuit Court is best suited to adjudicate Movants' state law claims. It will also free this Court to concentrate its resources on bankruptcy issues.

21. The first and second prongs of the test for weighing the competing interests of the parties involve evaluating any prejudice or hardship to the Debtor from lifting the stay. Litigation can cause a debtor prejudice if the litigation dissipates the debtor's assets or distracts the debtor from the bankruptcy proceedings. Since neither of these concerns is present in this case, Debtor will not suffer any prejudice nor hardship from lifting the stay.

22. When an insurer assumes the cost of defense and will indemnify the debtor, there is no prejudice to the debtor or the debtor's estate. *Holtkamp v. Littlefield (In Re Holtkamp)*, 669 F.2d 505, 508-09 (7th Cir. 1982); *Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A. (In Re Donington, Karcher, Salmond, Ronan & Rainone, P.A.)*, 194 B.R. 750, 761 (D. N.J. 1996). Moreover, a court can further ensure that the debtor will not suffer any prejudice by requiring the plaintiff to return to the bankruptcy court before enforcing a judgment against the debtor's property as opposed to insurance proceeds. *International Business Machines v. Fernstrom Storage and Van Company (In Re Fernstrom Storage and Van Company)*, 938 F.2d 731, 736 (7th Cir. 1991); *Edmonson v. America West Airlines (In Re America West Airlines)*, 148 B.R. 920, 923-25 (Bankr. D. Ariz. 1993); *In Re Rexene Products Company*, 141 B.R. 574, 577 (Bankr. D. Del. 1992); *Carter v. Larkham (In Re Larkham)*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983). In the current case, Debtor's insurer will assume the cost of the defense and will indemnify the Debtor for any judgment up to the limit of liability in its policy. In the event that Debtor's insurance is not sufficient, the Movants would return to this Court, file their claim, and compete with all of the other unsecured creditors. As a result, lifting the stay will not cause any prejudice or hardship to Debtor.

23. Lifting the stay in the present case would not result in any further diversion of the attention of the parties critical to the bankruptcy proceedings. The Movants' claims are unliquidated claims for personal injury. Section 157(b)(5) of Title 28 of the United States Code provides that personal injury tort claims shall be tried in the district court where the claims arose or where the bankruptcy is pending. The Debtor will have to deal with a trial in one forum or another. As a result, lifting the stay will not result in any further diversion of attention than would otherwise occur.

24. Movants have incurred actual medical and out-of-pocket expenses which are enormous compared to their means. The Movants have experienced severe mental anguish, pain, suffering death and loss of spouse, which claims must also be liquidated and paid. In contrast to Debtor, the Movants will suffer prejudice if the Court declines to lift the stay. The passage of time will make it more difficult for the Movants to prove their case, for witnesses and evidence will disappear over time. Moreover, refusing to lift the stay will result in duplicative litigation because the Movants will then have to try their case in the United States District Court. Trying the case in the district court would also mean trying the case in front of a judge who is not as familiar with the facts and applicable common law as would be the Tennessee Circuit Court judge currently presiding over the case.

25. Refusing to lift the stay will further prejudice the Movants because it will result in duplicative litigation and may result in moving the litigation to Delaware. The Bankruptcy Court for the District of Delaware has concluded that the risk of duplicative litigation poses a hardship to a plaintiff. *Izzarelli v. Rexene Products Company (In Re Rexene Products Company)*, 141 B.R. 574, 577 (Bankr. D. Del. 1992). *See also, Murray Industries, Inc. v. Aoristic Chemical*

*Corporation (In Re Murray Industries, Inc.)*, 121 B.R. 635, 637 (Bankr. M.D. Fla. 1990)(holding the same).

26. A movant must show some likelihood of success on the merits, but the bar is quite low. In *American Airlines, Inc. v. Continental Airlines, Inc. (In Re Continental Airlines, Inc.)*, 152 B.R. 420, 426 (Dist. Del. 1993), the district court stated that "even a slight probability of success on the merits may be sufficient to support lifting the stay in an appropriate case." Similarly, the Seventh Circuit held in *International Business Machines v. Fernstrom Storage and Van Company (In Re Fernstrom Storage and Van Company)*, 938 F.2d 731, 737 (7th Cir. 1991), that it was sufficient that the movant's suit was not frivolous. And in *Rexene*, the court stated that "the required showing is very slight." 141 B.R. at 578. The *Rexene* court further stated that "[o]nly strong defenses to state court proceedings can prevent a bankruptcy from granting relief from the stay in cases where, as here, we believe that the decision-making process should be relegated to bodies other than this court." Id. (quoting *Fonseca v. Philadelphia Housing Authority (In Re Fonseca)*, 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990)).

27. The Movants clearly have much more than a slight probability of success on the merits of their claims. There is no question regarding whether the Movants suffered an injury. Mr. Younger is deceased as a result of the injuries he sustained from the incident. Mrs. Younger has suffered permanent injuries which prevent her from maintaining employment and require attendant medical care.

## CONCLUSION

28. All of the factors enunciated by the Delaware District Court in *In Re* Continental Airlines and previously relied upon by the Court in *Rexene* favor lifting the stay. Lifting the stay will not contravene any of the policies underlying the stay, for it will not result in unnecessary

litigation or an increase in the financial pressure on Debtor and will not treat creditors unfairly. Movants' claims, upon information and belief, are covered by insurance which will cover the costs of defending the suit and paying the judgment. As a result, lifting the stay will not increase the financial pressure on Debtor. Lifting the stay will not subject Debtor to unnecessary litigation because the Movants will have to liquidate their claims in some forum regardless of whether it is the Tennessee Circuit Court or the United States District Court. Similarly, lifting the stay will not impact other creditors, for the Movants agree that their claims should be treated like any other unsecured claims to the extent that it they not covered by insurance. Furthermore, the competing interests of Debtor and the Movants also favor lifting the stay. Neither Debtor nor its bankruptcy estate will suffer prejudice or hardship from lifting the stay, while maintaining the stay will cause prejudice and hardship to the Movants. Moreover, Movants have an excellent chance of prevailing on the merits.

**WHEREFORE**, Movants respectfully request that this Court enter an order (i) modifying the automatic stay to allow them to prosecute their claims against IdleAire Technologies Corporation in order to liquidate their claims as stated in their Tennessee Circuit Court Action and collect from any applicable insurance the liquidated value of their claims.

PHILLIPS, GOLDMAN & SPENCE, P.A.

_____
JOHN C. PHILLIPS, JR, ESQUIRE (#110)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
Counsel to Nancy Younger and the Estate of
William Younger

Dated: July 28, 2008