# EXHIBIT 5

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> IDLEAIRE TECHNOLOGIES CORPORATION, <br><br> Debtor. | Chapter 11 <br><br> Case No. 08-10960 (KG) <br><br> Hearing Date: August 19, 2008 at 11:00 a.m. <br> Objection Deadline: August 13, 2008 <br><br> Re: Docket No. 304 |

## OPPOSITION TO MOTION OF NANCY YOUNGER AND THE ESTATE OF WILLIAM YOUNGER FOR RELIEF FROM STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

COMES NOW, Wausau Business Insurance Company and Employers Insurance of Wausau Company ("Plaintiffs" or "Insurers"), by its undersigned counsel, and files this Opposition to the Motion of Nancy Younger and the Estate of William Younger for Relief from the Automatic Stay Under Section 362 of the Bankruptcy Code [Docket No. 304] (the "Motion"). In support of this Opposition, Insurers respectfully state to the Court as follows:

## FACTS

1. For the period from January 1, 2007 to January 1, 2008, Plaintiff Wausau Business Insurance Company issued to IdleAire Technologies Corporation ("IdleAire" or "Debtor") a Commercial Package Policy, Policy No. YYK-Z41-435246-027, containing a Commercial General Liability coverage part ("the CGL Policy"). The policy provides general liability coverage on an occurrence basis with limits of $1 million per occurrence and $2 million in the aggregate (other than products-completed operations). A separate $2 million aggregate limit is available for products-completed operations claims. Among other provisions, it contains a Total Pollution Exclusion Endorsement that bars coverage

for the Movants' claims. A copy of the CGL Policy is attached to Insurers' Adversary Proceeding Complaint (the adversary proceeding is filed simultaneously herewith).

2. Plaintiff Employers Insurance of Wausau Company issued for the period from January 1, 2007 to January 1, 2008 an Umbrella Excess Liability policy (the "UEL Policy") to IdleAire, Policy No. THC-Z41-435246-057. The UEL policy provides Excess Follow Form Liability coverage under Coverage A. The UEL also itself contains a pollution exclusion that bars coverage for the Movants' claims against IdleAire. The UEL policy has limits of $10 million per occurrence and in the aggregate. A copy of the UEL Policy is attached to Insurers' Adversary Proceeding Complaint (the adversary proceeding is filed simultaneously herewith).

3. The CGL Policy and the UEL Policy contain aggregate limits. Therefore, they are subject to exhaustion by individual claims such that any payment under the policy's terms may make coverage unavailable with respect to another potential claimant. The CGL policy provides a $1 million aggregate limit per occurrence, $2 million in aggregate limits for all claims (other than products-completed operations), and a separate $2 million aggregate limit for products-completed operations claims. The UEL Policy provides $10 million in aggregate limits.

4. Nancy Younger and the Estate of William Younger ("Movants" or "the Youngers") filed a wrongful death action against IdleAire on or about April 30, 2008 in the Circuit Court for Knox County, Tennessee, captioned *Younger v. IdleAire Technologies Corp.*, No. 1-183-08 (Tenn. Cir. Ct., Knox County) (the "Younger Action"). The Younger Action against IdleAire is stayed pursuant to 11 U.S.C. § 362(a).

5. The complaint alleges injuries, including the eventual death of William Younger, from carbon monoxide poisoning allegedly caused by the defective design and malfunctioning of an IdleAire HVAC delivery system while the Youngers were sleeping in the cab of their truck at a truck stop in Knoxville, Tennessee on or about July 12, 2007. It asserts causes of action for strict product liability, negligent failure to warn, breach of express and implied warranties, and negligence, and seeks compensatory damages of $18 million, discretionary costs, and attorneys' fees.

6. Before their suit, the Youngers asserted a claim against IdleAire, and IdleAire provided notice of the Youngers' claim to Insurers by telephone notification and correspondence dated January 18, 2008. Subsequently, the Youngers filed suit against IdleAire, and the insurers first received notice from IdleAire of the Youngers' Action on May 1, 2008. Insurers denied coverage for the claim by letter dated February 14, 2008. The coverage disclaimer was reiterated by letter dated April 14, 2008.

7. On May 12, 2008, IdleAire filed a chapter 11 voluntary petition in the this Court, captioned *In re IdleAire Technologies Corporation*, No. 08-10960 (KG) (Bankr. D. Del. 2008). Movants' claim was listed with Debtor's Petition on its "List of Creditors Holding 20 Largest Unsecured Claims" as contingent, unliquidated and disputed and with an estimated value of $18 million. To date, Movants have not filed a Proof of Claim.

8. Movants now seek relief from the automatic stay to allow the Younger Action to proceed in Tennessee State Court, erroneously alleging that "Debtor's insurer will pay for Debtor's defense and will pay any judgment up to the limits of liability." Actually, this is not a circumstance where insurance is paying the Debtor's defense or indemnity costs. Insurers have denied coverage for the Youngers' claim and, prior to the

filing of the Petition in this case and the resulting automatic stay, had determined that they had no duty to provide defense or indemnity coverage to IdleAire in connection with the Younger Action.

9. Insurers now have filed an adversary proceeding before this Court, seeking a declaration that they owe no duty to defend or indemnify Debtor with respect to the Movants' claims. A copy of the Insurers' Adversary Proceeding Complaint is attached hereto as Exhibit 1.

10. Resolving whether insurance coverage exists for the Youngers' suit within the context of the bankruptcy through an adversary proceeding is necessary to protect the Debtor, the interests of other potential creditors, and as a matter of judicial efficiency. Movants are seeking $18 million in compensatory damages in the Younger Action. *See* List of Creditors Holding 20 Largest Unsecured Claims (listing value of the Younger claim at $18 million, the third largest unsecured claim); Movants' Motion, Ex. A at 4-5 (seeking compensatory damages in the amount of $18 million). The CGL and UEL policies collectively have total aggregate limits of $12 million. If the Movants succeeded on their liability claims and their judgment were paid with proceeds of the Policies, such claims would exceed the aggregate limits of the CGL and UEL Policies and would thus exhaust coverage, leaving any other potential claimants with no recourse under the policies.

## ARGUMENT

11. Insurers object to Movants' request for relief from the automatic stay. Insurers urge this Court to deny – or at least defer – the Motion. First, this Court should resolve important insurance coverage issues posed by the Youngers' claim in an

adversary proceeding here. The Insurers have filed a complaint initiating an adversary proceeding simultaneously with this Objection. Insurers will show that their Policies do not cover IdleAire for the costs of defense and any potential judgment in the Younger Action. These questions must be resolved first because, if no coverage exists, it would be pointless for the Youngers to proceed with their tort action because there would be no available IdleAire assets.

12. Both principles of fairness and judicial economy weigh in favor of resolution of the insurance coverage issues first. As noted, if there is no coverage, there would be no reason for the Movants' action against IdleAire to proceed at this time because, as the Movants themselves appear to acknowledge, the only possible source of recovery would be from insurance proceeds. *See, e.g.*, Ex. A to Voluntary Petition (listing assets well below the debts owed to secured creditors); United States Trustee's Motion For Entry of An Order Directing the Appointment of a Chapter 11 Examiner Pursuant to 11 U.S.C. § 1104 at ¶¶ 6, 11 (detailing assets well below secured liabilities). To avoid prejudice to both IdleAire and Insurers (and any other potential creditors who might have claims that would fall under IdleAire's insurance), and to avoid unnecessary expenses in the personal injury action, this Court should resolve all issues relating to IdleAire's bankruptcy, including the applicability of IdleAire's insurance policies to the Youngers' claim.

### The Court Must Weigh A Variety of Factors in Determining Whether Relief From the Stay is Warranted.

13. Section 362(d) of the Bankruptcy Code provides that, at the request of an interested party, the court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause," which leaves courts

to "consider what constitutes cause based on the totality of the circumstances in each particular case."[1] Courts also "generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant." *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del.1993).

14. This Court consistently has considered three key factors: (1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted. *Id.*; *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992); *In re 15375 Memorial Corp.*, 382 B.R. 652, 686 (Bankr. D. Del. 2008) and 386 B.R. 548 (Bankr. D. Del. 2008); *In re W.R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, at *2 (Bankr. D. Del. Apr. 13, 2007); *In re Unidigital, Inc.*, 2000 WL 33712306 (Bankr. D. Del. Dec. 8, 2000); *In re Integrated Health Servs., Inc.*, 2000 WL 33712483 (Bankr. D. Del. Aug. 11, 2000).[2]

---

[1] *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) (citing *In re Trident Assocs.*, 52 F.3d 127 (6th Cir.1995)); *In re Peregrine Systems, Inc.*, Nos. 02-12740, 02-12741, & 04-1325, 2005 WL 2401955, at *3 (D. Del. Sept. 25, 2005); *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) ("'Cause' is not defined in the Code; it must be 'determined on a case-by-case basis.'") (citations omitted); *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del.1993) ("There is no rigid test for determining whether sufficient cause exists to modify an automatic stay."); *accord Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994); *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992) (citing *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985)); *Nationsbank, N.A. v. LDN Corp. (In re LDN Corp.)*, 191 B.R. 320, 323 (Bankr. E.D. Va. 1996); *In re Murray Indus., Inc.*, 121 B.R. 635 (Bankr. M.D. Fla. 1990).

[2] Other jurisdictions have considered a longer list of factors, including in relevant part: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the debtor's insurer has assumed full responsibility for defending it; (4) whether the action primarily involves third parties; (5) whether litigation in another forum would prejudice the interests of other creditors; (6) the interests of judicial economy and the expeditious and economical resolution of litigation; (7) whether the parties are ready for trial in the other proceeding; and (8) the impact of the stay on the parties and the balance of the harms. *W.R. Grace*, 2007 WL 1129170, at *2 n.6 (citing *In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. 111, 130 (Bankr. D. N.J.2003)); *see also In re Sonnax Indus.*, 907

15.  Because of the prejudice if the stay were lifted and the balance of hardships between the respective parties, this Court should deny – or at least defer – the Motion. Whether insurance coverage exists for the Youngers' claim should be resolved by this Court before the Court determines whether to allow the tort claim to proceed.

### Lifting the Stay Would Prejudice All Parties.

16.  Movants suggest that lifting the stay would have no impact on IdleAire or the bankruptcy estate, erroneously suggesting that "Debtor's insurer will pay for Debtor's defense and will pay any judgment up to the limits of liability," Movants Motion at 6, and thus, "allowing the Movants' suit to go forward will not increase the financial pressures on Debtor." *Id.* Insurers have not assumed responsibility for defending IdleAire, an important factor in balancing the equities of a lift stay motion. *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (quoting 2 *Collier on Bankruptcy* ¶ 362.07(3)); *see also In re Wintroub*, 283 B.R. 743, 745 (B.A.P. 9th Cir. 2002); *In re Marvin Johnson's Auto Service, Inc.*, 192 B.R. 1008, 1014 (Bankr. N.D. Ala. 1996); *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984). If the stay were lifted, IdleAire would be required to expend resources in defending the claim, risk a default judgment, and/or seek court guidance on whether Insurers have any obligation to respond. Under such circumstances, to protect IdleAire's assets, Movants' request for relief from the stay should be denied, at least until the Adversary Proceeding initiated by Insurers is resolved.

---

F.2d 1280, 1286 (2d Cir. 1990). Other factors not implicated by this matter include: (1) whether the other proceeding involves the debtors as a fiduciary; (2) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (3) whether the judgment claim arising from the other action is subject to equitable subordination; (4) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor. *W.R. Grace*, 2007 WL 1129170, at *2 n.6 (citing *Mid-Atlantic Handling Sys.*, 304 B.R. at 130; *see also In re Sonnax Indus.*, 907 F.2d at 1286.

17. Clearly, cases where coverage is disputed and the duty to defend has been denied present very different circumstances from those where the insurer has assumed responsibility for the defense of an action against the Debtor. As *In re Edgeworth*, 993 F.2d 51, 54 (5th Cir. 1993), noted in granting a motion to lift the stay, if the facts were that the Debtor "will be required to pay the costs of his defense against appellants' suit or that the insurance company denied coverage or is defending under a reservation of rights[, s]uch threats to [the Debtor's] pocketbook might require a different result under § 524." *Accord In re Columbia Gas Transmission Corp.*, 219 B.R. 716, 720 (S.D.W.V. 1998) (quoting *Edgeworth*). Where, as here, insurance is in dispute, a claimant should not be granted relief from the stay to pursue tort claims outside of the bankruptcy.

18. Moreover, lifting the stay without first resolving the coverage issues would not speed resolution of the Youngers' claim. Instead, it would prejudice all parties. It would harm IdleAire by forcing it to expend funds to defend the Younger action while coverage issues remain unresolved, or expose it to a default judgment. It would deprive the Insurers of judicial guidance on whether they may have coverage obligations for the claims before the Youngers' suit proceeds. And it could cause the Youngers to expend resources to pursue their suit against IdleAire only to later face the prospect of no recovery. It also would waste judicial resources. The better solution is to first resolve the insurance coverage issues through the Insurers' adversary proceeding here, which may moot any tort litigation if there is no available source of recovery.

19. Moreover, this is the proper forum to provide guidance on the insurance coverage issues. There is important value in resolving coverage issues first. "If coverage exists there would be no reason to prevent the injured parties from pursuing their claims

against [the Debtor] because the burden of defending and satisfying any judgment would fall upon [the insurer]. On the other hand, a determination that there is no coverage would dispose of the actions against [the insured]." *Peerless Insurance Co. v. Rivera*, 208 B.R. 313, 316 (D.R.I. 1997). In addition, "[o]rdinarily, the subject of insurance coverage may not be injected into tort actions because the law recognizes its potential to taint the determination with respect to liability." *Rivera*, 208 B.R. at 316; *see also* F. R. Evid. 411; *Cochran v. Dube*, 330 A.2d 76, 78 (R.I. 1975) ("The rule is intended to discourage inquiry into a defendant's indemnity in a manner calculated to influence the jury.").

20. Here, resolution of the coverage issues in an adversary proceeding is especially appropriate. If there is no coverage, then resolution of the Younger Action essentially becomes moot. Given the Debtor's available assets and its secured liabilities, it is clear that the only possible source of recovery for the Younger claim would be insurance proceeds. *See, e.g.*, Ex. A to Voluntary Petition (listing assets well below the debts owed to secured creditors); United States Trustee's Motion For Entry of An Order Directing the Appointment of a Chapter 11 Examiner Pursuant to 11 U.S.C. § 1104 at ¶¶ 6, 11 (detailing assets well below secured liabilities). If the Court were to find that coverage somehow exists notwithstanding the policies' pollution exclusions, then the Younger action could proceed after this Court addresses the adversary proceeding on the coverage issues. However, because any such action is likely to be moot, it is most efficient and beneficial to have the coverage issues resolved first, before incurring the expense and burden of a trial on the Youngers' claim.

21. This Court also should note the possibility of other creditors with interests in the insurance proceeds. The Youngers seek $18 million in their claim against IdleAire, an amount in excess of the total aggregate insurance limits. *See* List of Creditors Holding 20 Largest Unsecured Claims (listing value of the Younger claim at $18 million, the third largest unsecured claim); Movants' Motion, Ex. A at 4-5 (seeking compensatory damages in the amount of $18 million). The policy terms make clear that, regardless of the number of claims made or "suits" brought or the number of persons making claims, the insurers will pay no more than the limits of the insurance. *See* CGL Policy, Section III (attached as Exhibit A of Exhibit 1); UEL Policy, Section IV (attached as Exhibit B of Exhibit 1). This means that, if the Youngers were permitted to collect from the insurance coverage for their claims as they suggest, the entire limit of the policies could be exhausted, leaving no protection for IdleAire and no remaining source of compensation for any other claimant. Because of this circumstance, it is important for this Court to address the coverage issues before any tort claim proceeds to ensure that the interests of IdleAire and any other potential claimant in the proceeds of the insurance policies are considered and protected.

22. Accordingly, the purpose of the automatic stay, which is to even the playing field among all available creditors, supports this Court determining whether IdleAire's policies respond to the Youngers' claim. *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citations omitted) (recognizing that the purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to

avoid interference with the orderly liquidation or rehabilitation of the debtor."). If the Youngers' claim was successful, and their judgment against IdleAire was satisfied through insurance proceeds, then the aggregate limits of the policies would be exhausted, leaving nothing for the defense or indemnity of claims from other potential or future claimants. This Court itself has acknowledged the impact that aggregate limits can have on the rights of respective creditors. *In re Memorial Corp.*, 382 B.R. 652, 690 (Bankr. D. Del. April 16, 2008) (in considering whether to grant a lift stay motion, the Court recognized that lifting the stay and allowing litigation to proceed would not impact other creditors because the policies that were the primary source of recovery for the claims contained no aggregate coverage limits).

23. Here, to protect the interest of IdleAire and any other potential claimant, the equitable solution is to resolve coverage issues in the context of the bankruptcy. Because the policies are occurrence-based, there is the possibility of future claimants who would seek recovery due to an occurrence during the policy period, especially since it appears IdleAire would have no assets other than insurance available to meet such claims. *See* Lee R. Russ & Thomas F. Segalla, 1 *Couch on Ins.* § 1:5 (3d Ed. 2008) ("In an occurrence policy, coverage is effective if a negligent or omitted act occurred during the period of the policy, whatever the date of claim against the insured."). Accordingly, before allowing the Younger Action that seeks to exhaust the policy limits to proceed, this Court should establish whether they make a proper claim for coverage.

24. Given the potential prejudice to numerous parties, the Court should decline to lift the stay for the Younger action to proceed at least until the coverage issues are determined through an the Insurers' adversary proceeding.

### Relief from the Automatic Stay Will Not Promote Judicial Efficiency.

25. The interests of judicial economy also support denying the Motion. The Younger Action has not progressed in any way, having been stayed almost immediately after the initial complaint was filed.

26. If there is no coverage for Movants' claims against IdleAire, then there is little point in allowing the Younger Action to proceed. Proceeding with the tort action now would be a waste of judicial time and resources. It is more efficient to address coverage issues first in an adversary proceeding, which could save resources of the parties and the Court by avoiding altogether tort litigation where there may be no source for recovery.

27. In considering the "public interest in the fair and efficient administration of justice," the *Rivera* Court recognized that "[a]llowing the declaratory judgment action to proceed also could make it unnecessary to litigate the tort claims." *Rivera*, 208 B.R. at 318 (D.R.I. 1997). "[A]n early determination of coverage would enhance the prospects of settling those claims. On the other hand, an early determination that no coverage exists would be dispositive of the direct actions against [the insurer] and would eliminate the need to litigate questions of liability and/or damages in those cases." *Id.* Here, early resolution of the coverage issues through an adversary proceeding would promote the fair and efficient administration of justice.

### Refusing to Lift the Stay Would Not Create Duplicative Litigation.

28. This Court has recognized "the risk of duplicative litigation" as a potential hardship on a non-bankrupt party. *Izzarelli*, 141 B.R. at 577. However, there is no real risk of duplicative litigation here. As noted above, the Younger Action was stayed by the

filing of the bankruptcy petition before virtually any activity had occurred other than the filing of the complaint. Therefore, nothing has happened yet that could potentially be duplicated later. More importantly, Insurers are not seeking to have the Bankruptcy Court address issues of tort liability that would be addressed in the Younger Action. Rather, Insurers are seeking to resolve the entirely separate, but crucial, threshold issue of whether the CGL and UEL policies provide coverage to IdleAire for the claims at issue in the Younger Action. Far from creating duplicative litigation, Insurers' approach in fact seeks to *avoid* unnecessary litigation by first resolving the crucial coverage issues presented in connection with the Debtor's petition.

## CONCLUSION

29. Considering the totality of circumstances and balancing all of the relevant factors and interests, this Court should decline to lift the stay to allow the Younger Action to proceed. Lifting the stay would undermine the purpose of the automatic stay, would not promote judicial efficiency and would result in prejudice to IdleAire, Insurers, and other potential insurance claimants, as well as to the Youngers. This Court should, instead, resolve the coverage issues first through the adversary proceeding filed by Insurers simultaneously with this Objection. Resolving the coverage issues within the context of the bankruptcy proceeding is the fairest and most efficient way to proceed.

**WHEREFORE**, Insurers respectfully request that this Court enter an order denying the Youngers' request to modify the automatic stay to allow them to prosecute their claims now against IdleAire.

Dated: August 13, 2008
      Wilmington, Delaware

BAYARD, P.A.

_/s/ illegible signature_
Charlene D. Davis (No. 2336)
Eric M. Sutty (No. 4007)
Mary E. Augustine (No. 4477)
222 Delaware Avenue
Suite 900
Wilmington, DE 19801
(302) 655-5000

-and-

Laura A. Foggan, Esquire
Karalee C. Morell, Esquire
Parker J. Lavin, Esquire
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
(202) 719-7000

Counsel for Wausau Business Insurance Company and Employers Insurance of Wausau Company