# EXHIBIT 6

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| IDLEAIRE TECHNOLOGIES CORPORATION, | ) | Case No. 08-10960 (KG) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| WAUSAU BUSINESS INSURANCE COMPANY and EMPLOYERS INSURANCE OF WAUSAU COMPANY, | ) ) ) | |
| | ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) | Adv. Pro. No. 08-51227 (KG) |
| | ) | |
| v. | ) | |
| | ) | |
| IDLEAIRE TECHNOLOGIES CORPORATION, | ) | |
| | ) | |
| Debtor/Defendant/ Counterclaim Plaintiff, | ) ) | |
| and | ) | |
| | ) | |
| NANCY YOUNGER and ESTATE OF WILLIAM YOUNGER, | ) ) | |
| | ) | |
| Claimants/Youngers/Defendants. | ) ) | |

## PLAINTIFFS/COUNTERCLAIM DEFENDANTS WAUSAU BUSINESS INSURANCE COMPANY AND EMPLOYERS INSURANCE OF WAUSAU COMPANY'S MOTION FOR LEAVE TO FILE APPEAL OF INTERLOCUTORY ORDER

Plaintiffs/Counterclaim Defendants Wausau Business Insurance Company ("Wausau") and Employers Insurance of Wausau Company ("Employers") (collectively, the "Insurers"), by and through their attorneys, pursuant to 28 U.S.C. §158(a)(3) and Rule 8003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), move for leave to appeal the Order denying Insurers' Motion for Summary Judgment, entered on February 18, 2009 [Docket No. 29] (the "Order").

## INTRODUCTION

This case presents clear circumstances where an interlocutory appeal is desirable. In particular, guidance is needed on unresolved and controlling questions of law, including a highly controverted issue concerning the application of pollution exclusions to the bodily injury and death claims of two commercial truckers arising from the presence and migration of carbon monoxide. The scope of the pollution exclusion's reach outside "traditional" hazardous waste settings has never been decided under Tennessee law, which controls in this case, and the Bankruptcy Court's Order on this issue should be reviewed now because it could be case dispositive.

The important, unsettled, and highly-controverted nature of the scope of pollution exclusions and their application to facts such as those presented here has repeatedly been noted by state high courts around the country. For instance, the Alaska Supreme Court recently stated "[o]ne of the most contested and highly litigated issues in the field of liability insurance is the scope of pollution exclusion clauses." *Whittier Props., Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84, 89 (Alaska 2008). Further, in another example, the Alabama Supreme Court recognized that "[r]arely has any issue spawned as many, and as variant in rationales and results, court decisions as has the pollution- exclusion clause. 'The scope of the pollution exclusion is an evolving area of law, subject to differing interpretations. The pollution exclusion is one of the most frequently litigated exceptions found in a staple insurance industry product – the comprehensive general liability policy.'" *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 800 (Ala. 2002) (*quoting Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869 (Ky. 2002)).

Recognizing the desirability of more guidance on the outcome of the dispositive issues presented, Judge Gross specifically noted that the disputed pollution exclusion issues would be most appropriate for certification to the Tennessee Supreme Court, an option not available to him under the Tennessee rules. Accordingly, Judge Gross proceeded to decide the parties' motions, ruling that the pollution exclusions were inapplicable to the carbon monoxide poisoning claims of these commercial truckers. In several respects, his pollution exclusion ruling is in tension with the better reasoned authority in Tennessee and elsewhere. Further, his order also addressed important, disputed questions about the application of prejudice standards for the insured's breach of policy provisions governing notice, cooperation and voluntary assumption of liability.

Interlocutory appeal is warranted because there are both unsettled issues of law and substantial grounds for a difference of opinion on the issues decided, which could be dispositive of this case. An immediate appeal of the important legal issues could save the parties and the court substantial unnecessary time and expense, because the case will otherwise proceed now to discovery and trial on fact issues relating to the coverage defenses concerning notice, cooperation and voluntary assumption of liability. Moreover, the standards for proceeding on these issues, in addition to the application of the pollution exclusions, support immediate review because their resolution would materially advance the ultimate resolution of this case.

## STATEMENT OF FACTS

### A. Insurance Policies

1.     For the period from January 1, 2007 to January 1, 2008, Wausau issued to IdleAire a Commercial Package Policy, Policy No. YYK-Z41-435246-027, containing a

Commercial General Liability coverage part ("the CGL Policy"). Among other provisions, the CGL Policy contains a Total Pollution Exclusion Endorsement. *See* Docket No. 12, Exhibit B, Att. 1.

    2.    Employers issued for the period from January 1, 2007 to January 1, 2008 an Umbrella Excess Liability policy (the "UEL Policy") to IdleAire, Policy No. THC-Z41-435246-057, which provides Excess Follow Form Liability coverage under Coverage A. The UEL also contains a pollution exclusion. *See* Docket No. 12, Exhibit B, Att. 2.

    3.    The CGL Policy's Total Pollution Exclusion Endorsement states, in part, that:

> This insurance does not apply to:
>
> f. (1) The "contamination" of any "environment" by "pollutants" that are introduced at anytime, anywhere, in any way.
>
> (2) Any "bodily injury," "personal and advertising injury" or "property damage" arising out of such "contamination."
>
> . . . .
>
> Definition 15. of SECTION V - DEFINITIONS is deleted and replaced by the following:
>
> 15.    "Pollutant" means any irritant, including noise or sound, or any solid, liquid, gaseous or thermal "contaminant", including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.
>
> As used in this endorsement, the following terms have the following meanings:
>
> "Contamination" means any unclean or unsafe damaging or injurious or unhealthful condition arising out of the presence of "pollutants," whether permanent or transient in any "environment."
>
> "Environment" includes any person, any man-made object or feature, animals, mops and vegetation, land, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated, including, but not limited to any of the above, owned, controlled or occupied by the insured.

CGL Policy, Total Pollution Exclusion Endorsement.

4.     The UEL Policy provides a Pollution Exclusion, which states, as amended,

that:

> This insurance does not apply to:
>
> 1. Pollution
>
> a.     "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged, potential or threatened discharge, dispersal, seepage, migration, release, escape or presence of "pollutants" at any time and whether occurring indoors or outdoors; or
>
> b.     "Pollution cost or expense".
>
> c.     This exclusion does not apply if injury or damage arises or is sustained as described below in paragraphs (1), (2), (3) or (4) and if valid "scheduled underlying insurance" applies or would have applied but for the exhaustion of the limits of "scheduled underlying insurance":[1]

UEL Policy, Section IV(A)(1).

5.     The Policies also contain conditions precedent to coverage requiring that

that the insured, IdleAire, provide notice of any occurrence "as soon as practicable," that

IdleAire cooperate with the Insurers in the investigation of a claim, and that IdleAire not

make any voluntary payment or assume any obligations without the Insurers' consent.

See CGL Policy, Section IV(2); UEL Policy, Section V(G).

**B.     Procedural History**

6.     Nancy Younger and the Estate of William Younger filed suit against

IdleAire Technologies Corporation ("IdleAire" or Debtor) on or about April 30, 2008 in

the Circuit Court for Knox County, Tennessee, captioned *Younger v. IdleAire*

*Technologies Corp.*, No. 1-183-08 (Tenn. Cir. Ct., Knox County) (the "Underlying

Matter" or the "Younger action").

---

[1]     Subparagraphs (1), (2), (3) and (4) are not applicable.

7.      The underlying complaint alleges injuries, including the eventual death of William Younger, from carbon monoxide poisoning allegedly caused by the malfunctioning of an IdleAire HVAC delivery system while the Youngers were sleeping in the cab of their truck at a truck stop in Knoxville, Tennessee on or about July 12, 2007.

8.      Shortly after the incident, the Youngers asserted a claim against IdleAire, but IdleAire did not provide notice of the Youngers' claim to Insurers until telephone notification and correspondence dated January 18, 2008.  Insurers denied coverage for the claim by letter dated February 14, 2008.  Subsequently, the Youngers filed their April 30, 2008 suit against IdleAire.  The Insurers first received notice from IdleAire of the Youngers' action on May 1, 2008.  The coverage disclaimer was reiterated by letter dated April 14, 2008.

9.      On May 12, 2008, IdleAire filed a Chapter 11 Voluntary Petition in this Court, captioned *In re IdleAire Technologies Corporation*, No. 08-10960(KG) (Bankr. D. Del.).  IdleAire continues to operate its business and assets as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

10.      The Underlying Matter has been stayed pursuant to the automatic stay issued by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

11.      On August 13, 2008, Insurers filed an Adversary Proceeding, seeking declaratory relief with respect to the availability of coverage for the Younger action under the primary and umbrella insurance policies issued to IdleAire (collectively, the "Policies").

12.    On September 29, 2008, the Bankruptcy Court approved a joint Stipulation by IdleAire and the Youngers by which IdleAire assigned any potential insurance proceeds with respect to the Younger action to the Youngers and continued to stay the Younger action in the Tennessee state court pending resolution of this adversary proceeding/declaratory judgment action. *See* Case No. 08-10960 (KG), Docket No. 380.

13.    On October 27, 2008, Insurers filed the Motion to Dismiss and for Summary Judgment, contending that the Youngers' claims are excluded from coverage under the pollution exclusions in the Policies and that IdleAire breached the conditions precedent to coverage by allegedly admitting liability for the Youngers' claims and offering to make payments to the Youngers prior to providing notice to the Insurers as required by the Policies' terms. On December 3, 2008, the Youngers filed an Opposition to the Insurers' Motion and also filed a Cross-Motion for Summary Judgment solely on the pollution exclusion issues. The parties completed briefing on December 22, 2008, and oral argument was held on January 22, 2009.

14.    On February 18, 2009, the Bankruptcy Court entered an Order and Opinion denying the Insurers' Motion for Summary Judgment. A true and correct copy of the Order and Opinion are attached hereto as Exhibit A. In the Opinion, the Bankruptcy Court held that the pollution exclusions did not bar coverage for the Youngers' claims. In addition, the Bankruptcy Court held that the Insurers did not make an "adequate showing" of prejudice to sustain their breach of contract claim. Therefore, the Bankruptcy Court denied the Insurers' Motion for Summary Judgment and granted the Youngers' Cross-Motion for Summary Judgment.

## STATEMENT OF QUESTIONS PRESENTED AND RELIEF SOUGHT

15.     The questions to be presented upon appeal are:

(i) whether pollution exclusions barring coverage for bodily injury arising out of "'contamination' of any 'environment' by 'pollutants' that are introduced at anytime, anywhere, in any way" and "'[bodily injury' . . . which would not have occurred in whole or part but for the actual, alleged, potential or threatened discharge, dispersal, seepage, migration, release, escape or presence of 'pollutants' at any time and whether occurring indoors or outdoors" eliminate coverage for bodily injuries arising out of the toxic exposure to carbon monoxide as issue in this case;

(ii) whether the Bankruptcy Court erred in relying on the reasonable expectations doctrine to circumvent the clear and unambiguous terms of the policies;

(iii) whether the Bankruptcy Court erred in reading into the plain language of the pollution exclusions a requirement that the insured must possess the property on which the contamination occurred or create the contamination, a limitation not contained in the terms of the pollution exclusions; and

(iv) whether the Bankruptcy Court erred in holding that genuine issues of material fact precluded summary judgment for the Insurers despite evidence that the policyholder clearly breached the notice, cooperation and voluntary assumption of liability provisions in the policies.

16.     Insurers seek an order reversing the Bankruptcy Court and instructing the Bankruptcy Court to vacate the Order and grant Insurers' Motion for Summary Judgment.

## REASONS WHY LEAVE TO APPEAL SHOULD BE GRANTED

17.     The district court may review interlocutory orders of the bankruptcy court under 28 U.S.C. § 158(a)(3) "for such cause as found by the district court." *In re Bertoli*, 812 F.2d 136, 139 (3d Cir. 1987); *In re Marvel Entm't Group, Inc.*, 209 B.R. 832, 837 (D. Del. 1997).

18.     Because neither Section 158(a)(3) nor Bankruptcy Rule 8003 sets forth the criteria for permitting an interlocutory appeal, district courts often look to the standard

governing interlocutory appeals under 28 U.S.C. § 1292(b), including whether: (1) the appeal involves a controlling question of law; (2) there is a substantial ground for difference of opinion as to the controlling question of law; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *Marvel*, 209 B.R. at 837; *In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 473 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). These factors all strongly support immediate review in the present case.

### A. The Appeal Involves Controlling Questions of Law

19. "A controlling question of law at the very least encompasses a ruling which, if erroneous, would be reversible error on final appeal." *Marvel*, 209 B.R. at 837; *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (en banc). Here, if this Court concludes that the Youngers' claims are barred by the straightforward terms of the pollution exclusions, then the Bankruptcy Court's Order must be reversed. Therefore, a controlling issue of law is presented.

### B. Substantial Ground Exists for A Difference of Opinion as to the Controlling Question of Law

20. Substantial ground for difference of opinion exists where the bankruptcy court's decision is contrary to well-established law, *Marvel*, 209 B.R. at 837, or when a proposed intermediate appeal presents one or more difficult questions of law not settled by controlling authority. *See In re Bank of New England Corp.*, 218 B.R. 643, 652 (1st Cir. 1998); *see also In re Duke & Benedict, Inc.* 278 B.R. 334, 343-44 (S.D.N.Y. 2002). This case is governed by Tennessee law. As Judge Gross notes in the Order, the issues presented are unsettled under Tennessee law and "would have been appropriate to certify to the Tennessee Supreme Court for determination." Order at 8 n.15. *See also* Order at 8 ("[N]o Tennessee court has had the opportunity to evaluate [the Total Pollution

Exclusion] under its state law."). Accordingly, at a minimum this case presents issues not settled by controlling authority.

21. In this case, the issues presented not only are unsettled, but there is substantial ground for difference of opinion. In contrast to the Bankruptcy Court's Order, many courts have held that pollution exclusions bar coverage for claims other than "traditional" hazardous waste claims. *See, e.g., Federated Mut. Ins. Co. v. Abston Petroleum, Inc.*, 967 So. 2d 705 (Ala. 2007) (ruling that pollution exclusion barred coverage for liabilities arising out of leaks from a gasoline supplier's storage tanks); *Whittier Props., Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84 (Alaska 2008) (the pollution exclusion barred coverage for gasoline leaks from underground storage tanks); *Reed v. Auto-Owners Ins. Co.*, No. S07G1768, 2008 WL 4286606 (Ga. Sept. 22, 2008) (exclusion barred coverage for carbon monoxide claim); *Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.*, 728 N.W.2d 216 (Iowa 2007) (pollution exclusion barred coverage for carbon monoxide claims); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517 (Tex. 1995) (pollution exclusion barred coverage for bodily injuries caused by the release of hydrofluoric acid fumes); *Columbia Cas. Co. v. Ga. & Fla. Railnet, Inc.*, 542 F.3d 106 (5th Cir. 2008) (pollution exclusion barred from coverage claim for bodily injury arising from exposure to high levels of diesel exhaust fumes and hazardous dusts due to defective and poorly maintained locomotives).

22. Moreover, important recent cases have specifically held that carbon monoxide constitutes a pollutant and that the pollution exclusion therefore bars coverage for claims arising from carbon monoxide poisoning, such as the Youngers' claims here. *See Reed*, 2008 WL 4286606, at *2 (carbon monoxide released inside a residence

10

constitutes a "pollutant" and thus the exclusion precludes coverage for a lawsuit filed against the policyholder, a landlord, that alleged carbon monoxide poisoning); *Sand Livestock Sys., Inc.*, 728 N.W.2d at 221 (holding that "carbon monoxide falls within the extremely broad language of the policies' definition of 'pollutants'"); *Matcon Diamond, Inc. v. Penn Nat'l Ins. Co.*, 815 A.2d 1109, 1113-14 (Pa. Super. Ct. 2003) ("Carbon monoxide is a substance or compound which, upon inhalation, may reasonably be anticipated to cause death or physiological malfunctions . . . . the trial court did not err as a matter of law in determining that carbon monoxide was a 'pollutant' under the policy"); *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1006 (4th Cir. 1998) (interpreting Maryland law) (the "broad, but clear, pollution exclusion . . . . unambiguous[ly] . . . bars coverage for the injuries allegedly caused by carbon monoxide poisoning"); *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 901 (3d Cir. 1997) (pollution exclusion unambiguously bars coverage for damage or injury resulting from the release of carbon monoxide fumes); *see also League of Minn. Cities Ins. Trust v. City of Coon Rapids*, 446 N.W.2d 419, 421 (Minn. Ct. App. 1989) (pollution exclusion precluded coverage for nitrogen dioxide release). Thus, under the plain terms of the pollution exclusions, the Youngers' claims are barred.

23. Further, contrary to the Bankruptcy Court's Order, courts have found that where, as here, the terms of the contract are unambiguous, they must be enforced without resort to doctrines such as the "reasonable expectations" approach applied by Judge Gross. *See, e.g., Heyman Associates No. 1 v. Ins. Co. of Pa.*, 653 A.2d 122, 136 n.22 (Conn. 1995) (rejecting the use of extrinsic drafting history evidence to vary the "unambiguous" terms of an absolute pollution exclusion because "any extrinsic evidence

11

purporting to establish that the exclusions do not exclude coverage . . . would necessarily serve to contradict or vary the exclusions, rather than provide mere interpretive gloss."); *CBI Indus., Inc.*, 907 S.W.2d at 521-22 (refusing to permit consideration of alleged insurance industry representations in the interpretation of a pollution exclusion because the contractual language was clear and unambiguous); *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 742 (Wash. 2005) ("Where, as here, the exclusion unambiguously applies to the facts of the case at hand, the plain language must be applied without reference to extrinsic evidence regarding the intent of the parties.").

24.     Even if Tennessee were to look to the reasonable expectations doctrine, there could be no coverage here. Expectations that contradict clear exclusionary language are not reasonable. *See Abston Petroleum*, 967 So. 2d at 714 ("Other courts have limited the use of the doctrine of reasonable expectations to situations in which an insurance policy is ambiguous. Furthermore, expectations that contradict a clear exclusion are not 'objectively reasonable.' Such a limit on the doctrine of reasonable expectations is necessary. Otherwise, this Court would be faced with the strong temptation to substitute its notion of equity for the unambiguous terms of a contract and the doctrine could be used to invalidate every policy exclusion.") (quoting *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 311-12 (Ala. 1999)) (internal citations omitted).

25.     Moreover, the Bankruptcy Court erred in requiring that the insured be the source of the pollution or that the insured be in possession of the pollution in order for the pollution exclusion to apply. *See* Order at 23-25. To the contrary, numerous courts have specifically noted that the insured need not be the source of pollution for the pollution

12

exclusion to apply. *See, e.g., Park-Ohio Indus., Inc. v. Home Indem. Co.*, 975 F.2d 1215, 1222 (6th Cir. 1992) (holding that the correct analysis is to refuse "the view that the pollution exclusion applies only where the insured was an active and immediate participant in the pollution activity at issue."); *Resure, Inc. v. Chem. Distribs., Inc.*, 927 F. Supp. 190, 193 (M.D. La. 1996) (rejecting insured's argument that the newer pollution exclusion is "generally directed at the insured's own polluting activities."), *aff'd*, 114 F.3d 1184 (5th Cir. 1997); *Guilford Indus. Inc. v. Liberty Mut. Ins. Co.*, 688 F. Supp. 792, 795-96 (D. Me. 1988) (rejecting insured's argument that newer pollution exclusion did not apply because pollution was not caused by insured's conduct), *aff'd*, 879 F.2d 853 (1st Cir. 1989); *Larsen Oil Co. v. Federated Serv. Ins. Co.*, 859 F. Supp. 434, 438 (D. Or. 1994) ("That the exclusion applies to any property damage caused by the discharge of pollution, regardless of the cause, is consistent with case law interpreting similar pollution exclusions."), *aff'd*, 70 F.3d 1279 (9th Cir. 1995).

26.     For all of the above reasons, appeal is warranted here where the Bankruptcy Court's decision on the pollution exclusion presents an unsettled issue on which there is substantial ground for difference of opinion.

## C.     An Immediate Appeal Would Materially Advance the Ultimate Termination of This Litigation

27.     Under 28 U.S.C. § 1292(b), for an appeal to materially advance the ultimate termination of the litigation, it should "dramatically change the nature of the litigation." *In re Cendant Corp. Sec. Litig.*, 166 F. Supp. 2d 1, 18 (D.N.J. 2001). This third prong of 28 U.S.C. § 1292(b) is satisfied where it would further the goals of judicial economy to decide a controlling issue rather than waiting for an order to become final. *Marvel*, 209 B.R. at 836; *see also In re Pappas*, 207 B.R. 379 (2d Cir. 1997). Here, the

reversal of the ruling in the Order and the granting of summary judgment in favor the of Insurers would be case dispositive. Therefore, judicial economy will be served by granting Insurers leave to file the appeal to prevent the parties and the courts from incurring unnecessary time and expense further litigating this case. In addition, reviewing the extent to which prejudice must be shown by the Insurers to support summary judgment due to breach of the notice, cooperation and voluntary payment provisions would either be case dispostive (if a sufficient showing has been made) or would provide essential guidance for the continuation of this dispute through extensive discovery and trial. Appealing these issues after the case proceeds to trial would be wasteful of the time and resources of the parties and the Court.

28. For all of the foregoing reasons, Insurers respectfully suggest that ample cause exists to hear the instant interlocutory appeal.

## CONCLUSION

WHEREFORE, Insurers respectfully requests that pursuant to 28 U.S.C. § 158(a)(3) and Bankruptcy Rule 8003, the Court grant leave to appeal the Order.

Dated: March 2, 2009
Wilmington, Delaware

Laura A. Foggan, Esq. (admitted *pro hac vice*)
Karalee C. Morell, Esq.
Parker J. Lavin, Esq.
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
(202) 719-7000

/s/ Charlene D. Davis
Charlene D. Davis, Esq. (No. 2336)
BAYARD, P.A.
222 Delaware Avenue
Suite 900
Wilmington, DE 19801
(302) 655-5000

Counsel for Wausau Business
Insurance Company and Employers
Insurance of Wausau Company

14

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 7 |
| IDLEAIRE TECHNOLOGIES CORPORATION, | : | Case No. 08-10960 (KG) |
| | : | |
| Debtor. | : | Reference Docket Nos. 487, 503 |

**REPLY IN SUPPORT OF RENEWED MOTION OF NANCY YOUNGER**
**AND THE ESTATE OF WILLIAM YOUNGER FOR RELIEF FROM STAY**
**UNDER SECTION 362 OF THE BANKRUPTCY CODE**

Nancy Younger and the Estate of William Younger (the "Youngers"), through their

undersigned counsel, hereby submit this reply in support of their Renewed Motion for Relief

from Stay Under Section 362(d) of the Bankruptcy Code (the "Renewed Motion") and, in

support thereof, state the following:

THE WAUSAU INSURERS DO NOT HAVE STANDING
TO OPPOSE THE REQUESTED RELIEF FROM STAY

1.      As a threshold consideration, this Court should disregard the opposition of the

Wausau Business Insurance Company and Employers Insurance of Wausau Company

(collectively, the "Wausau Insurers") to the Youngers' Renewed Motion because the Wausau

Insurers are without standing to oppose the requested relief from stay.

2.      The purpose of the automatic stay is "to afford the debtor a 'breathing spell' by

halting the collection process.  It enables the debtor to attempt a repayment or reorganization

plan with an aim toward satisfying existing debt." In re Schaefer Salt Recovery, Inc., 542 F.3d

90, 100 (3d Cir. 2008) (quoting In re Siciliano, 13 F.3d 748, 750 (3d Cir.1994)).  It also is

intended to forestall depletion of the debtor's assets due to legal costs incurred to defend

proceedings against it, to prevent certain creditors from gaining a preference for their claims and

to generally avoid interference with the debtor's orderly liquidation or rehabilitation. See

Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d

Cir. 1982).  Because the Wausau Insurers are not the debtor, IdleAire Technologies Corp.

("IdleAire"), or creditors of IdleAire in this proceeding (they are merely IdleAire's liability and

excess insurers) and the Youngers are not seeking to recover estate assets, the Youngers'

Renewed Motion does not implicate or threaten any legally protected interest of the Wausau

Insurers.  With no legally protected interest at stake, the Wausau Insurers are without standing to

oppose the Youngers' renewed request for relief from stay.

       3.     The decision of the Bankruptcy Court for the Eastern District of New York in In

re Grace Industries, Inc. is instructive in this regard.  In Grace, the debtor was sued in various

state court matters and, in several instances, consented to relief from the automatic stay to permit

the plaintiffs in those matters to pursue their claims in state court, but with the proviso that any

recovery be limited to the proceeds from the debtor's available liability insurance coverage.  341

B.R. 399, 401 (Bankr. E.D.N.Y. 2006).  The liability insurer commenced an adversary

proceeding in the bankruptcy court seeking, among other things, a declaration that it had no

obligation under the policy to provide the debtor with such coverage.  Id.  In support, the insurer

argued that the debtor breached the policy's cooperation clause by agreeing to lift the automatic

stay to the extent of available insurance coverage.  Id. at 404.  The Bankruptcy Court disagreed:

> The automatic stay does not shield issuers of liability insurance policies from
> making payments which would otherwise be due under the policy by reason of
> the insured's bankruptcy.  The purpose of the automatic stay is to protect property
> of the estate from being seized by individual creditors, so that assets will be
> available for proper distribution to the creditor body.  Where, as here, the
> plaintiffs have agreed that they will not seek any recovery from estate assets,
> there is no basis for continuing the automatic stay.  Put differently, **where a
> plaintiff seeks relief from the stay to pursue a claim in another forum, the
> interests or desires of the insurance company which provides coverage of the
> claim are not considered in determining whether the stay should be lifted.**

Id. at 405 (emphasis added) (internal citation omitted).

4.     Several other courts have concluded that, when a state court litigant seeks relief from the automatic stay to pursue a judgment against a debtor that it intends satisfy exclusively from the debtor's liability insurance, the liability insurer is **without standing** to oppose such relief. See, e.g., In the Matter of New Era, Inc., 135 F.3d 1206, 1210 (7th Cir. 1998) ("Nor would [the liability insurer] have had standing to submit even a timely opposition to the lifting of the stay, since the stay is for the protection of the debtor and its creditors.") (citing *Collier on Bankruptcy* ¶ 362.03 (15th ed., Lawrence P. King ed.1996)); In re Malone Properties, Inc., 1992 WL 611459, *3 (Bankr. S.D. Miss. June 17, 1992) (attached as Exhibit A) (finding that debtor's liability insurer had no standing to appear at hearing on motion to lift stay because any policy defenses it had to coverage "would not... have been an appropriate matter to raise at a hearing on the motion to lift stay"); see also In re Clemmer, 178 B.R. 160, 167 (Bankr. E.D. Tenn. 1995) (finding that debtor's liability insurer did not have standing to challenge state court plaintiff's alleged violation of automatic stay by garnishing annuity funds payable to debtor by insurer).

5.     As set forth in the stipulation approved by this Court on September 29, 2008 (the "IdleAire-Younger Stipulation"), IdleAire assigned to the Youngers its rights under the insurance policies and the Youngers agreed to defend IdleAire in the Adversary Proceeding and expressly waived their right to receive any distribution from IdleAire or its estate, thereby preventing them from executing against IdleAire's assets on any ultimate judgment obtained in the Tennessee State Court Action[1] except to the extent of available insurance coverage. Pursuant to that stipulation, IdleAire withdrew its objection to the relief from stay the Youngers now seek in the instant motion. Moreover, no creditors of IdleAire have objected to the Renewed Motion.

---

[1]     The "Tennessee State Court Action" refers to the lawsuit brought by the Youngers in the Circuit Court for Knox County in the State of Tennessee, styled; *Nancy Younger, individually and as surviving spouse of William Younger, Deceased, and the estate of William Younger, through surviving spouse Nancy Younger, v. IdleAire Technologies Corporation, a for profit corporation*, Case No. 1-183-08.

6.      The only parties heard to complain about the Youngers' request for relief from stay are the Wausau Insurers, but they simply "have no horse in this race," as they are not the debtor or creditors of the debtor, and do not hold assets to which the debtor's bankruptcy estate is entitled.  The Wausau Insurers' lack of standing is exemplified by the nonsensical suggestion in their opposition papers that, if the Tennessee State Court Action were to proceed now, the Wausau Insurers would somehow suffer prejudice in the form of litigation expenses to be incurred by persons **other than themselves** – *i.e.*, the parties to the Tennessee State Court Action (the Youngers and IdleAire) and the Tennessee State Court.  See the Wausau Insurers' Joint Objection at ¶¶ 11, 14.  In reality, the Wausau Insurers will suffer no prejudice, as they can choose to provide or not provide a defense to IdleAire in the Tennessee State Court Action as they see fit in order to best protect their business interests.  Moreover, the risk that a judgment might be entered against their insured, IdleAire, in that action does not constitute prejudice or implicate their legally protected interests, as allowing that action to proceed would in no way increase the Wausau Insurers' coverage obligations under their policies or otherwise expose them to risks they did not already assume when they issued those policies.  As such, the Wausau Insurers have no standing to oppose the Youngers' renewed request for relief from stay, and their opposition to that request should be stricken.

### THE STIPULATED SCHEDULING ORDER DOES NOT BAR THE REQUESTED RELIEF FROM STAY

7.      On September 29, 2008, the parties submitted a Stipulated Scheduling Order setting forth a schedule for briefing and oral argument of summary judgment motions in the Adversary Proceeding and stating, among other things, that the "Stay Relief Motion" (which is defined therein as the Motion for Relief from Stay filed by the Youngers on July 28, 2008) "shall be deferred pending the final resolution of the Adversary Proceeding."  In their opposition

4

papers, the Wausau Insurers contend that this Court must strictly interpret the Stipulated Scheduling Order "according to its plain terms," which they claim requires denial of the Renewed Motion. The Wausau Insurers are mistaken.

8.    The plain terms of the Stipulated Scheduling Order, in fact, call for deferral of **only** the Youngers' July 28, 2008 Motion for Relief from Stay, which was resolved (along with the objections filed by IdleAire and the Wausau Insurers to that motion) when this Court entered its Order approving the IdleAire-Younger Stipulation on September 29, 2009.[2] Nowhere does the Stipulated Scheduling Order, by it terms, prohibit the Youngers from subsequently requesting relief from stay, as they have done in the Renewed Motion. Thus, if the Court is inclined to indulge the Wausau Insurers' demand that it strictly enforce the express terms of the Stipulated Scheduling Order, those terms in no way compel denial of the Renewed Motion or prevent the Youngers from exercising their right under the Federal Rules of Bankruptcy Procedure to request relief from stay.

9.    To the extent the Court is not inclined to take such a formalistic approach in interpreting the Stipulated Scheduling Order, the context in which the parties reached the Stipulated Scheduling Order must be considered. The Youngers agreed to the Wausau Insurers' request that the coverage issues be decided **by this Court** based on the Wausau Insurers' expressed desire to obtain a prompt resolution of those issues by way of summary judgment. The Youngers agreed to entry of the Stipulated Scheduling Order in furtherance of that objective, as evidenced by the representations made to this Court by the Wausau Insurers' counsel that

---

[2]    The Certification of Counsel accompanying the IdleAire-Younger Stipulation states that "[a]ttached hereto is a stipulation which resolves the [Youngers' July 28, 2008 Motion for Relief from Stay and the objections thereto by IdleAire and the Wausau Insurers], along with a proposed form of order approving the stipulation. The stipulation has been circulated among the parties in interest, including the Committee, the Purchaser, and counsel for Wausau, and there are no remaining objections to the terms of the stipulation." See Exhibit B.

"[the Wausau Insurers] would like to have the adversary proceeding resolved **promptly** and in advance of the lift stay motion.... **Accordingly**, the concept is that we would have an agreed schedule **for a summary judgment motions** [sic] on the adversary proceeding." See Transcript of Sept. 18, 2008 hearing on the Youngers' July 28, 2008 Motion for Relief from Stay, attached as Exhibit C, at page 17 (emphasis added).

10.     Once this Court denied the Wausau Insurers' motion for summary judgment and granted the Youngers' cross-motion for summary judgment as to the main coverage issue (*i.e.*, the Wausau Insurers' pollution exclusions), the Wausau Insurers unceremoniously abandoned their prior commitment to a prompt resolution of the issues by way of summary judgment. Instead, the Wausau Insurers sought leave to pursue a piecemeal appeal of the ruling as to one of the two coverage issues, seeking to appeal that coverage ruling to the United States District Court, thereafter to the United States Third Circuit Court of Appeal, and then to seek certification to the Tennessee Supreme Court,[3] a process that was not proposed by the Wausau Insurers or in any of the parties' contemplation when they entered the Stipulated Scheduling Order. In fact, the Wausau Insurers' current scheme to place this Court's coverage ruling before the Tennessee Supreme Court by way of the most circuitous and time-consuming route possible totally alters the landscape of this litigation and frustrates the very purpose of the Stipulated Scheduling Order – *i.e.*, to have **this Court** promptly decide the coverage issues by way of summary judgment.

11.     The Wausau Insurers' argument is based **solely** on a phrase they included in the Stipulated Scheduling Order they drafted, to wit, "final resolution of the Adversary Proceeding."

---

[3]     The Wausau Insurers do not deny in their opposition papers, and therefore concede, that they intend to drag this Court's coverage ruling through the District Court, the Third Circuit Court of Appeal and the Tennessee Supreme Court. In fact, they have already begun that process by filing with the District Court a Motion for Leave to Appeal.

However, the "final resolution" that the Stipulated Scheduling Order was designed to facilitate was a summary judgment ruling **from this Court** on coverage issues. It is only after the fact that the Wausau Insurers propose that the phrase "final resolution" is ambiguous in that regard, and that what they **really** meant was that "final resolution" includes their unstated intention to appeal any adverse rulings on coverage (1) to the United States District Court; (2) thereafter to the United States Third Circuit Court of Appeal; and (3) then through the process of seeking certification to the Tennessee Supreme Court.[4]

12. At best for the Wausau Insurers, the meaning of the term "final resolution" as used in the Stipulated Scheduling Order – which they drafted - is ambiguous. The oldest of contract construction principles, however, dictates that any ambiguities in a contract be construed against the drafter. RESTATEMENT (SECOND) OF CONTRACTS § 206 (1981); Arthur L. Corbin, et al., *Corbin on Contracts*, § 559, supp. at 337 (1960 & Supp. 1996); Allstate Ins. Co. v. Watson, 195 S.W.3d 609 (Tenn. 2006); Hanover Ins. Co. v. Haney, 425 S.W.2d 590, 592 (Tenn. 1968); Twin City Fire Ins. Co. v. Delaware Racing Ass'n, 840 A.2d 624 (Del. 2003). The Youngers submit that, in the context in which the Wausau Insurers proposed the Stipulated Scheduling Order, "final resolution" meant entry of a summary judgment ruling on coverage from this Court, just as all of the other portions of that Order pertained to summary judgment. If, however, and as the Wausau Insurers' current argument suggests, that phrase is ambiguous, then it must be construed against the Wausau Insurers as the drafters of the Stipulated Scheduling Order.

13. In conclusion, the Youngers submit that they have in no way violated either the letter or the spirit of the Stipulated Scheduling Order, which is more than can be said for the

---

[4] As evidenced by the Wausau Insurers' pending motion to take a separate appeal just as to the first coverage ruling *via* the three-tiered appellate process they propose, the Wausau Insurers would now have the phrase "final resolution" interpreted to include **two** such three-tiered appellate processes.

Wausau Insurers. If the Wausau Insurers' goal was truly to have a Tennessee state court determine the coverage issues, they would have intervened in the Tennessee State Court Action to raise those issues or filed their declaratory relief action in Tennessee state court rather than before this Court. Instead, they filed the instant Adversary Proceeding, baselessly opposed relief from stay after they were dealt an unexpected loss on summary judgment, and now threaten to proceed through three layers of federal courts and the Tennessee Supreme Court, all with the goal of avoiding or delaying their payment obligations under their policies. This Court should not countenance such gamesmanship and inequitable conduct.

WHEREFORE, the Youngers respectfully request that this Court enter an order modifying the automatic stay to allow them to prosecute their claims against Debtor IdleAire Technologies Corporation in order to liquidate their claims as stated in their Tennessee Circuit Court Action and to collect the liquidated value of their claims from any applicable insurance.

Respectfully submitted,

/s/ John C. Phillips
JOHN C. PHILLIPS, JR, ESQUIRE (#110)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
Counsel to Nancy Younger and the Estate of
William Younger

Dated: June 30, 2009

# EXHIBIT A



Not Reported in B.R.
Not Reported in B.R., 1992 WL 611459 (Bkrtcy.S.D.Miss.)
(Cite as: 1992 WL 611459 (Bkrtcy.S.D.Miss.))

Page 1

H Only the Westlaw citation is currently available.

United States Bankruptcy Court, S.D. Mississippi,
Southern Division.
In re MALONE PROPERTIES, INC.
Bankruptcy No. 8607364 SGR.

June 17, 1992.

*OPINION*

EDWARD R. GAINES, Bankruptcy Judge.

*1 Insurance Company of North America filed a motion in this proceeding for reconsideration of an agreed order lifting the automatic stay that allowed parties to proceed in a lawsuit against the debtor, who was the insured, to the extent of insurance coverage. The matter was submitted to the Court on briefs for determination. After review of the pleadings and briefs, the Court concludes that the motion filed by Insurance Company of North America should be denied.

*I. BACKGROUND* [FN1]

1. On December 3, 1983, Carroll D. Malone, Jr. died as a result of injuries in an aircraft accident. Malone was President and sole stockholder of Malone Properties, Inc.

2. On March 11, 1986, Malone Properties, Inc. filed a petition for relief under Title 11 of the United States Code.[FN2]

3. The Estate of Carroll D. Malone, Jr. filed suit against Malone Properties, Inc. and General Electric Credit Corporation on December 1, 1989 in the Circuit Court of Harrison County, Mississippi. The suit was subsequently removed to the United States District Court for the Southern District of Mississippi.

4. Insurance Company of North America (INA) was the carrier of an insurance policy for Malone Properties, Inc.

5. On April 2, 1990, William N. Malone, Executor of the Estate of Carroll D. Malone, Jr., filed a motion to lift the automatic stay to proceed with the lawsuit. The movant asserted that, "INA is insuring and is to defend Malone Properties, Inc. and is required by law to pay the claims of the Plaintiff up to the limits allowed by law." The motion was not served on INA.

6. On April 3, 1990 a notice of preliminary hearing on the motion to lift the automatic stay filed by the Estate of Carroll D. Malone, Jr. was issued from this Court. INA was not listed on the notice as a party to be served.

7. An agreed order was entered on May 9, 1990 lifting the automatic stay to enable pursuit of the lawsuit against Malone Properties, Inc. The order provided that there existed a policy of insurance issued by INA insuring Malone Properties, Inc. which would satisfy the judgment or a part thereof. The order further stated that the stay "is hereby terminated solely to the extent of any insurance coverage". The agreed order was signed by the attorney for the Trustee and the attorney for the Estate of Carroll D. Malone, Jr.

8. Ten months later, on March 14, 1991, a Final Judgment by default was entered against Malone Properties, Inc. in the District Court action in the amount of $3,091,157.00. The judgment provided that, "[T]he automatic stay has been lifted to the extent of insurance coverage and a Final Judgment should be entered and execution may issue to the extent of insurance coverage". Writ of Garnishment was issued against INA in October of 1991.

9. On February 2, 1992, INA filed its motion for reconsideration of the agreed order lifting the automatic stay in this Court claiming that INA did not receive notice that the stay had been lifted and alleging deprivation of property without due process of law in violation of the Fourteenth Amendment.

*2 10. The Trustee responded to the motion claiming that the motion is not timely filed, that INA lacks **standing** to seek the requested relief, and that the **insurance** carrier is not entitled to notice on application for relief from stay. Additionally, the Trustee

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in B.R.
Not Reported in B.R., 1992 WL 611459 (Bkrtcy.S.D.Miss.)
(Cite as: 1992 WL 611459 (Bkrtcy.S.D.Miss.))

Page 2

responded that counsel for the trustee and claimant had requested INA to undertake a defense on behalf of the Trustee on numerous occasions and that INA did nothing.

11. The Estate of Carroll D. Malone, Jr. responded to the motion of INA by stating that the contract for insurance was binding whether the debtor was in bankruptcy or not, that INA had been aware of the lifting of the stay for quite some time, and that no rights under the Fourteenth Amendment had been violated.

12. Briefs were subsequently filed on the issues raised and the matter was submitted to the Court for determination.

## II. CONCLUSIONS

The matter before the Court is a core proceeding under 28 U.S.C. § 157. The Court has jurisdiction pursuant to 28 U.S.C. § 1334.

Section 362(d) of Title 11 of the United States Code provides that:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-

(1) for cause, ...

11 U.S.C. § 362(d). Notice and hearing is defined in Section 102 of Title 11 as follows:
In this title-

(1) "after notice and a hearing", or a similar phrase-

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; ...

11 U.S.C. § 102(1)(A).

Pursuant to Federal Rule of Bankruptcy Procedure 4001 a motion for relief from an automatic stay shall be made in accordance with Rule 9014. Rule 9014 provides that:

In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing, shall be afforded the party against whom relief is sought.

Fed.R.Bankr.P. 9014. Additionally, Rule 9013 provides that:
Every written motion other than one which may be considered ex parte shall be served by the moving party on the trustee or debtor in possession and on those entities specified by these rules or, if service is not required or the entities to be served are not specified by these rules, the moving party shall serve the entities the court directs.

Fed.R.Bankr.P. 9013.

These rules provide a basis upon which the Court may coordinate notice requirements with particular circumstances surrounding a motion, such as a motion for relief from the automatic stay. The circumstances here are that the debtor's insurer claims that it should have been provided with notice of a motion for relief from the stay and the subsequent order granting such relief in which a party was allowed to proceed against the debtor to the extent of insurance coverage. There is some question based on the pleadings filed by the parties as to whether the insurer, Insurance Company of North America, received a copy of the order lifting the stay, although there is no dispute that INA was not noticed of the motion or the hearing thereon.

*3 The Court cannot conclude that INA was entitled to such notice where there has been no showing of an injury that resulted to INA which was specifically caused by a lack of notice of the motion or order granting relief from the automatic stay. The damage that INA claims resulted from a deprivation of due process stems from a default judgment that was entered, subsequent to the order granting relief from the stay, in another court. The order lifting the stay here only provided the parties with the authority to obtain relief in another forum. The issue of deprivation of notice, if any, in the entry of the default judgment is not before this Court.[FN3]

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in B.R.
Not Reported in B.R., 1992 WL 611459 (Bkrtcy.S.D.Miss.)
(Cite as: 1992 WL 611459 (Bkrtcy.S.D.Miss.))

Page 3

In addition, the Court cannot conclude that a party is required to have notice of a motion or the hearing thereon, if the party would not have standing to appear before the Court at that hearing. In *In re Bird,* 1990 U.S.Dist. LEXIS 2298 (D.Kan.1990), the District Court stated that:

Rule 9014 does not call for notice to anyone other than "the party against whom relief is sought." It is important to remember that the Motion for Relief from Stay is only to determine whether the protection of the automatic stay, which became effective upon the filing of the Bankruptcy Petition by [the debtor], should continue to protect the [Property in question]. Relief from Stay would simply return the parties to whatever legal relationship existed before commencement of the case. (citations omitted) ... Therefore, based on the above, there is no basis to conclude, ... that Prudential was entitled to notice of the motion for relief from the stay ...

*Id.* at 20. Any defense that INA could have brought in a proceeding to determine whether or not INA would be contractually bound under the insurance policy with Malone Properties [FN4] would not, under the circumstances here, have been an appropriate matter to raise at a hearing on the motion to lift stay by the Estate of Carroll Malone.[FN5] Moreover, the order granting relief from the stay did not preclude INA from asserting any defenses in the court in which suit was pending, and therefore, did not deny INA a forum in which those obligations could have been adjudicated, as argued.[FN6]

Regardless of whether or not INA was entitled to notice of the motion or order granting relief from the stay, the Court further concludes that the motion requesting this Court to reconsider the order was not timely filed. As set out in the chronology of pleadings, the order granting relief was entered in May of 1990. The Final Judgment was entered in the District Court in March of 1991. The motion for reconsideration of the order entered in this Court was not filed until February of 1992. There is no indication in the pleadings that INA was not aware that the stay had been lifted prior to entry of the Final Judgment. As stated in *In re Bird,* 1990 U.S.Dist. LEXIS 2298 (D.Kan.1990):

Thus, Prudential either knew or should have known that an order lifting the automatic stay had been entered in favor of PSB and PCA. There does not appear in the record before this court a reason which would justify Prudential's failure to raise the issue for more than one year.

*4 *Id.* at 21.

Based on the above analysis the Court concludes that INA has not shown a sufficient basis upon which the Court should grant relief in its favor, and that INA has not been timely in its request. The motion for reconsideration of the agreed order lifting the stay should be denied.

An order will be entered consistent with these findings and conclusions pursuant to Federal Rule of Civil Procedure 58 and Federal Rule of Bankruptcy Procedure 9021.

> FN1. Factual background is taken from pleadings and memoranda submitted by the parties.

> FN2. The original petition was filed under Chapter 11 of Title 11. On January 25, 1990 the case was converted to Chapter 7.

> FN3. The pleadings indicate that the trustee or his attorney made numerous demands on INA to defend the suit prior to entry of the Final Judgment by default.

> FN4. As noted in the briefs, the Trustee and the Estate of Carroll D. Malone, Jr. have asserted that the debtor's discharge would not affect INA's liability under its policy pursuant to 11 U.S.C. § 524. *See also, In re White,* 73 B.R. 983 (Bankr.D.Dist.Col.1987); *In re Traylor,* 94 B.R. 293 (Bankr.E.D.N.Y.1989)

> FN5. The Court does not by this conclusion preclude the possibility that there could be some circumstance in which an insurer would have **standing** to appear and be heard on a motion for **relief** from stay. Such circumstances are not present here.

> FN6. *See also, In re Pointer,* 952 F.2d 82 (5th Cir.1992) on requirements of standing under the constitution and under the Bank-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in B.R.
Not Reported in B.R., 1992 WL 611459 (Bkrtcy.S.D.Miss.)
(Cite as: 1992 WL 611459 (Bkrtcy.S.D.Miss.))

Page 4

ruptcy Code.

Bkrtcy.S.D.Miss.,1992.
In re Malone Properties, Inc.
Not Reported in B.R., 1992 WL 611459
(Bkrtcy.S.D.Miss.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.